UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:20-cr-97-Orl-31LRH

JOEL MICAH GREENBERG

## NOTICE OF INTENT TO INTRODUCE EVIDENCE UNDER
## RULE 404(B) OF THE FEDERAL RULES OF EVIDENCE

The United States of America, files this Notice of its intent to introduce evidence under Rule 404(b) of the Federal Rules of Evidence, as follows:

## Overview of Indictment

1.      On July 15, 2020, a federal Grand Jury returned a Superseding Indictment charging the defendant, Joel Micah Greenberg, with stalking, in violation of 18 U.S.C. § 2261A (Count One); unlawful use of a means of identification of another person, in violation of 18 U.S.C. § 1028(a)(7) (Count Two); production without lawful authority of an identification document and a false identification document, in violation of 18 U.S.C. § 1028(a)(1) (Counts Three and Four); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts Five and Six).   Doc. 28.

## Overview of Counts One and Two

2.      The charges arise out of the Greenberg's former position as the elected Seminole County Tax Collector.   Count One alleges that Greenberg

engaged in a course of conduct that caused and attempted to cause substantial emotional distress to a political opponent who worked at a school located in the Middle District of Florida (referred to herein as the "school employee"). As part of that course of conduct, Greenberg caused letters to be sent to the school where the school employee worked. The letters falsely represented that they were being sent by an anonymous "very concerned student" of the school who had information that the school employee had engaged in sexual misconduct with a particular student, which Greenberg knew was false.

3.     As part of his course of conduct, Greenberg caused a Facebook account to be set up that claimed to belong to a "very concerned teacher" at the school where the school employee worked. Greenberg caused postings to be made using that account that falsely alleged that the school employee had engaged in sexual misconduct with a student. Those postings falsely represented, among other things, that the school employee had been involved in the "rape of a male student who came to [the school employee] to seek counsel on the student's sexuality" and that the school employee had videotaped one of the "sexual encounter[s]" with the student.

4.     Greenberg also caused an imposter Twitter account to be set up using the name and photograph of the school employee, without that person's knowledge, consent, or authorization. Greenberg caused postings to be made using that account that falsely represented that the school employee was a

segregationist and in favor of white supremacy. Greenberg's use of an imposter Twitter account using the school employee's identity is part of the course of conduct covered by Count One of the Superseding Indictment, and it also forms the basis for the identity theft-related charged set out in Count Two of the Superseding Indictment.

5. After investigating the matter, local authorities found that there was no evidence that the school employee had committed any criminal activity against a child and concluded the allegations were unfounded.

## Overview of Counts Three through Six

6. The school employee has not been the only victim of Greenberg's identity theft. As alleged in Counts Three through Six of the Superseding Indictment, Greenberg produced fake driver's licenses using licenses that had been surrendered to the Seminole County Tax Collector's Office. The licenses produced by Greenberg had his photograph and the stolen personal information of the victims whose surrendered driver's licenses he had stolen.

7. One of the services provided by some of the branches of the Seminole County Tax Collector's Office is the issuance of Florida driver licenses and Florida identification cards. These services include renewal of Florida driver licenses and Florida identification cards, replacement of Florida driver licenses and Florida identification cards, and transfers of out-of-state and certain out-of-country licenses to Florida.

8. Some customers who came to the Seminole County Tax Collector's Office to obtain a Florida driver license would surrender their old or existing driver licenses to the Seminole County Tax Collector's Office. The Seminole County Tax Collector's Office would shred surrendered driver licenses at a later time.

9. During the time when he was the Seminole County Tax Collector, Greenberg used his position and his access to the Seminole County Tax Collector's Office to take surrendered driver licenses before they were shredded. Greenberg used the surrendered driver licenses that he had taken to cause fake driver licenses to be produced that had his photograph but the personal information of the victims whose driver licenses he had taken.

10. During the execution of a federal search warrant at Greenberg's residence on June 23, 2020, the Secret Service found in Greenberg's wallet two of the fake driver's licenses that Greenberg had made. Both licenses had a photograph of Greenberg, but the personal information of the victims whose driver licenses Greenberg had stolen after the victims had surrendered their licenses to the Seminole County Tax Collector's Office. The victim's personal information included their name, address, signature, and date of birth, among other things.

11. Both victims have been interviewed. They advise that they surrendered their licenses to the Seminole County Tax Collector's Office when

they obtained new licenses.   Neither of them knows Greenberg, and neither of them authorized Greenberg to make licenses using their personal information.

### Other Licenses and Personal Information Stolen By Greenberg/ Efforts By Greenberg to Improve His Production of False Identifications

12.     Those are not the only driver's licenses that Greenberg has stolen from the Seminole County Tax Collector's Office.   During the execution of a federal search warrant for the work vehicle that Greenberg was using, agents found three driver's licenses in Greenberg's backpack.   The three licenses are from Canada, Virginia, and Florida.   Each of them was issued to someone other than Greenberg.   According to a search of driver's licenses records, each of the three licenses belong to individuals who obtained Florida driver's licenses in December 2019 or February 2020.   The addresses for the three victims for their new Florida driver's licenses are in Seminole County.

13.     Greenberg stole surrendered driver's licenses on other occasions. Employees of the Seminole County Tax Collector's Office advise that an employee observed Greenberg take surrendered licenses from the shred basket prior to them being shredded.   When Greenberg was confronted about what he had done by one employee, Greenberg gave the employee an excuse that had something to do with "demographics," which was a lie.

14.     Greenberg's thefts of surrendered driver's licenses continued until his last day in office.   On June 24, 2020, an employee of the Seminole County

Tax Collector's Office saw some surrendered licenses in Greenberg's office. The employee asked Greenberg why he had those surrendered licenses. Greenberg responded that the collection of licenses was a "lost and found," which was another lie.

15. Greenberg's abuse of his position to commit identity theft also involved his use of the Florida Driver and Vehicle Information Database (DAVID) to conduct inappropriate and unauthorized searches of various individuals using his account and another employee's account. One of the employees advised Greenberg to use a database other than DAVID. That employee's advice went unheeded. Included in one of the documents that Greenberg left in his former office after his last day is a copy of a DAVID printout for an individual with a Seminole County address who obtained a driver's license on December 12, 2019. The date that the document from DAVID was printed was December 13, 2019, which is consistent with Greenberg researching another potential identity theft victim.

16. Greenberg's abuse of his position to commit identity theft also involved his use of the card stock and security holograms for concealed weapons permits. The Seminole County Tax Collector's Office issues concealed weapons permits. During the time when the part of the office that issues concealed weapons was closed due to COVID-19, Greenberg called one of the employees to help him fix a problem with the printer that produces

concealed weapons permits. Given that the concealed weapons portion of the office was closed, there was no need for Greenberg to be using that printer. Another employee reported that a different employee also witnessed Greenberg "messing" with the computer equipment used to print concealed weapons permits.

17. After he left the Seminole County Tax Collector's Office, Greenberg left in his former office pieces of card stock for concealed weapons permits that he had taken from the part of the office where concealed weapons permits are issued. Some of the cards left by Greenberg in his former office prove that Greenberg was practicing at producing identifications using concealed weapons permit cardstock and that he was experimenting in using the security stipe for concealed weapons permits in an effort to make the identifications that he was producing appear to be legitimate.

## Notice

18. The United States intends on introducing this evidence in its case-in-chief at trial as proof of motive, intent, identity, preparation, plan, knowledge, identity, and absence of mistake or accident as is permitted under Federal Rule of Evidence 404(b). In particular, the United States will argue that such evidence demonstrates that the Defendant had a common scheme and plan to use his position as the Seminole County Tax Collector to access the areas of the office where surrendered licenses were kept so that he could steal

surrendered licenses; that the Defendant had a common scheme and plan to use his position as the Seminole County Tax Collector to steal surrendered licenses that he would use to produce fake driver's licenses for himself; that the Defendant has a common scheme and plan to pretend to be people other than himself and to assume their identities; that the Defendant had a common scheme and plan to use his position as the Seminole County Tax Collector to use the equipment and supplies of the Tax Collector's Office to produce fake driver's licenses and identification cards; that the Defendant was the one who committed the identity theft-related offenses charged in the Indictment; that the Defendant's motive was to use other people's identities without their permission to advance his own personal interests; that the Defendant was aware of the fraudulent nature of his scheme due to being confronted by employees of the Seminole County Tax Collector's Office; that the Defendant was not acting in good faith; and that the Defendant's actions were not done by mistake or accident but were done knowingly and willfully.

19.     Although it has filed this Notice, the United States reserves its right to argue that the evidence described in this Notice is not governed by Federal Rule of Evidence 404(b) and is admissible without having to satisfy any of the requirements imposed by that Rule.   *See generally United States v. Weeks*, 716 F.2d 830, 832 (11th  Cir. 1983) (per curiam) (noting that "[e]vidence of criminal activity other than the charged offense is not considered extrinsic

within the proscription of Rule 404(b) of the Federal Rules of Evidence if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, * * *, if it was inextricably intertwined with the evidence regarding the charged offense, * * *, or if it is necessary to complete the story of the crime of trial. . . .") (citations omitted).

20.     In particular, the fact that the Defendant was caught stealing surrendered licenses and possessing surrendered licenses in his office is relevant to prove his criminal intent, to establish that he knew that what he was doing was wrong (which is why he lied), and to prove that he is the one who stole the licenses that form the basis of Counts Three through Six.   The evidence also is inextricably intertwined with the evidence regarding the charged offense and is necessary to complete the story of the crimes of trial, because it, among other things, proves that Greenberg was able to produce false driver's licenses and identification documents, that he had access in his office to the information and supplies to produce such false driver's licenses and identification documents, and that his interest in producing false driver's licenses and identification documents was not due to some idle curiosity but was something that he was actively pursuing and attempting to perfect.

Date:  July 20, 2020

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney


By:   *s/ Roger B. Handberg*
ROGER B. HANDBERG.
Assistant United States Attorney
Florida Bar No. 0241570
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:(407) 648-7500
Facsimile:(407) 648-7643
E-mail:   roger.handberg@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2020, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a

notice of electronic filing to the following:

Mark L. Horwitz
Vincent A. Citro

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:  *s/ Roger B. Handberg*
ROGER B. HANDBERG.
Assistant United States Attorney
Florida Bar No. 0241570
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:(407) 648-7500
Facsimile:(407) 648-7643
E-mail:  roger.handberg@usdoj.gov