UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                      Case Number: 6:20-cr-97-Orl-31LRH

v.

JOEL MICAH GREENBERG,

      Defendant.

_____/

## JOEL MICAH GREENBERG'S MOTION TO DISMISS COUNTS ONE & TWO ON THE GROUNDS THAT THE PROVISION OF 18 U.S.C. § 2261A(2) CHARGED IS UNCONSITUTIONALLY OVERBROAD AND VAGUE AND THAT THE INDICTMENT FAILS TO STATE AN OFFENSE, AND MEMORANDUM OF LAW

Defendant Joel Micah Greenberg, through counsel, moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b), to dismiss counts one and two of the Superseding Indictment ("indictment"), dkt. 28. Count two cannot stand as charged without count one. The statute charged in count one violates the Free Speech Clause of the First Amendment because it is overbroad and implicates a broad range of otherwise constitutionally protected speech. The statute is also unconstitutional as applied to Mr. Greenberg. Further, the statute is unconstitutionally vague, violating Mr. Greenberg's Due Process Rights guaranteed by the Fifth Amendment because it does not give notice as to what specific conduct is unlawful. Furthermore, Mr. Greenberg respectfully requests this Court to dismiss counts one and two because they failed to state a criminal offense.

I.   **S**TATEMENT OF **F**ACTS[1]

1.      On July 16, 2020, Mr. Greenberg was charged with violating federal law six times. Count one alleges Mr. Greenberg, and maybe others, committed interstate stalking,[2] in violation of 18 U.S.C. § 2261A(2),[3] by posting offensive things on social media and writing offensive letters. Count two alleges Mr. Greenberg used the political opponent's name on a Twitter account to commit the crime alleged in count one. The remaining counts deal with means of identification and are not the subject of this motion.

2.      From January 2017 until April 2020, Mr. Greenberg was the elected Tax Collector for Seminole County. Before the indictment, Mr. Greenberg had planned to run for re-election against several others.

3.      While the indictment is devoid of specific allegations as to how Mr. Greenberg committed acts charged in count one, the allegations make one thing clear – the government has charged Mr. Greenberg for his speech. Part of his speech allegedly involved posting on social media and the other part involved mailing letters.

_____

[1] Mr. Greenberg does not admit any of the allegations in the indictment. However, when considering a motion to dismiss the Court is confined to the allegations in the indictment. *See United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).

[2] Other than using the Internet, all acts were intrastate.

[3] While the indictment fails to identify subsection (A) or (B), the indictment does not allege a reasonable fear of death or serious bodily injury occurred. Therefore, the government must be proceeding under (B), which proscribes conduct that can "be reasonably expected to cause substantial emotional distress…" Section 2261A(2)(A) makes it a crime to place a person in "reasonable fear of death or serious bodily injury." This type of speech clearly encompasses unprotected speech as it would be a true threat and speech integral to criminal conduct.

4.     The government has alleged that on Twitter[4] Mr. Greenberg used a political opponent's first and last name and wrote that the political opponent was a segregationist.

5.     The government has alleged that in mailings Mr. Greenberg wrote that his political opponent had sex with a student.

6.     The government has alleged that on Facebook[5] Mr. Greenberg purported to be a teacher and wrote that he was concerned that the political opponent might have had sex with a student.

7.     The political opponent, like all modern politicians, uses various social media platforms to advertise his candidacy, encourage others to vote for him, and discourage others from voting for his opponents.

**II.     MEMORANDUM OF LAW**

The government has charged provisions of interstate stalking, specifically 18 U.S.C. § 2261A(2)(B), that violates both the Free Speech Clause of the First Amendment and the Due Process Clause of the Fifth Amendment. Even if that provision of the statute could withstand constitutional scrutiny in some cases, it is unconstitutional as applied to Mr. Greenberg. Finally, irrespective of the constitutionality of the statute, counts one and two of the indictment must be dismissed because they fail to state an offense.

---

[4] Twitter is a social networking platform that permits users to interact with messages, referred to as "tweets." Registered users can post, like, and retweet tweets, but unregistered users can only read them.

[5] Facebook is a social media platform that permits users to post text, images, videos, and other types of data.

When analyzing a motion to dismiss, the court is confined to the face of the indictment and cannot consider gratuitous facts outside the indictment, even when proffered by the government. *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). The Court may grant a pretrial motion to dismiss on certain issues "capable of determination without the trial of the general issue." Fed. R. Crim. P. 12(b). This includes a claim that "the applicable statute is unconstitutional or that the indictment fails to state an offense." *United States v. Ferguson*, 142 F. Supp. 2d 1350, 1354 (S.D. Fla. 2000) (quoting *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir.1989)).

A. Section 2261A(2)(B) Is Facially Unconstitutional Because it Prohibits a Wide Range of Speech That Would Otherwise be Protected Under the Free Speech Clause of the First Amendment

The First Amendment states that "Congress shall make no law…abridging the freedom of speech or of the press." U.S. Const. Amend. I. At its core, the First Amendment prohibits the government from "restrict[ing] expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). The First Amendment, "presupposes that right conclusions are more likely to be gathered out of the multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly, but we have staked upon it our all." *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964) (citation omitted). Of course, First Amendment protection is not absolute, and the Supreme Court has defined narrow categories of speech, "the prevention of which has never thought to raise any constitutional problem." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). Those exceptions are speech integral to criminal conduct, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949),

defamatory speech in some circumstances, *Beauharnais v. Illinois*, 343 U.S. 250, 254-55 (1952); obscenities, *Roth v. United States*, 354 U.S. 476, 483 (1957), incitement, *Brandenburg v. Ohio*, 395 U.S. 444, 447-449 (1969), and true threats, *Watts v. United States*, 394 U.S. 705 (1969).

The Supreme Court has rejected attempts to broaden these well-defined and narrowly limited classes of speech. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011) (invalidating a state statute that restricted the sale or rental of violent video games to minors and imposed a civil fine as a penalty); *cf. United States v. Stevens*, 559 U.S. 460 (2010) (invalidating federal statute that sought to criminalize the creation, sale, or possession, of certain depictions of animal cruelty). The *Brown* Court admonished, "whatever the challenges of applying the constitution to ever advancing technology, 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary' when a new and different medium for communication appears." 564 U.S. at 790 (quoting *Joseph Burnstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952)).

1. The Court Should Not Approve the Government's Attempt to Criminalize Constitutionally Protected Speech

This Court should reject the government's attempt to broaden the traditional categories of speech unprotected by the First Amendment. The provision of the statute charged in the indictment provides numerous ways in which an individual can violate it. In relevant part it provides:

Whoever—
…
(2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system

of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—

… 

(B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described [above]…

The indictment charges Mr. Greenberg with intent to harass and cause substantial emotional distress. Count One alleges that the use of the mail and interactive computer service resulted in a political opponent experiencing substantial emotional distress. The criminalization of speech intended to "cause substantial emotional distress" and "harass" a political opponent are unconstitutionally overbroad and do not comport with the protections guaranteed by the First Amendment.[6] These provisions were added in a 2006 amendment to the Violence Against Women's Act ("VAWA").[7] House Report Number 109-233. Legislative history accompanying the statute deals primarily with other provisions. *Id*. One sentence of the voluminous house report is devoted to the amendments here. *Id*. It states that the legislation "amends title 18 to prevent stalking over the Internet by allowing Federal prosecutors more discretion and charging stalking cases that occur entirely over the Internet." However, there is no indication in the legislative history that the amendment was intended to apply to speech questioning a political opponent's fitness to hold office.

---

[6] As alternative ways to violate the statute were not alleged, challenges to those provisions are beyond the scope of this motion.

[7] VAWA became law in 1994 and was primarily addressed gender-motivated crimes, such as domestic violence, stalking, and sexual assault. The act was also instrumental in funding the National Domestic Violence Hotline and in allocating resources to state and local governments to provide essential training to law enforcement and advocates regarding domestic violence and sexual assault. RAINN, How VAWA Protects Victims, March 27, 2013, available at http://www.rainn.org/news/how-vawa-protects-victims (last visited July 18, 2020).

However, there is no indication in the legislative history that the amendment was intended to apply to speech questioning a political opponent's fitness to hold office, particularly since the public's interest extends to anything which might touch on and officials fitness for office. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344–45 (1974).

Courts have found § 2261A(2) constitutional when addressing provisions subsection (2)(A). Subsection (2)(A) involves matters much more serious than those addressed in subsection (2)(B), under which Mr. Greenberg was charged. *See United States v. Shrader*, Crim. No. 1:09-0270, 2010 WL 2179572 (S.D.W.V. 2010); *United States v. Curley*, 639 F.2d 50 (2d Cir. 2011); *United States v. Casite*, Crim. No. 09-668, 2011 WL 1755701 (E.D. Penn. 2011); *United States v. Infante*, 782 F. Supp. 2d 815 (D. Ariz. 2010); *United States v. Jordan*, 591 F. Supp. 2d 686 (S.D.N.Y. 2008); *United States v. Wills*, 346 F.3d 476 (4th Cir. 2003); *United States v. Grob*, 625 F.3d 1209 (9th Cir. 2010); *United States v. Bell*, 303 F.3d 1187 (9th Cir. 2002); *United States v. Bowker*, 372 F.3d 365 (6th Cir. 2004), *judgment vacated on other grounds*, 543 U.S. 1182 (2005). These cases interpreting subsection (2)(A) do not address the issues in this motion, addressing subsection (2)(B).

The provisions of the statute that have been invoked in this case have not been held to pass constitutional muster by any court when used in this context and during a bitterly fought political campaign. As noted *infra*, two district courts have found the statute unconstitutional as applied in similar cases and, therefore, declined to address the question of whether the statute on its face criminalizes constitutionally protected speech. *See United States v. Cook*, No. 3:20CR19, 2020 WL 3958194 (N.D. Miss. July 13, 2020); *United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011).

"The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). "The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter." *PSI Net v. Chapman*, 362 F.3d 227, 241 (4th Cir. 2004) (Davis, J., concurring) (Affirming the enjoinment of a statute that criminalizes disseminating material harmful to minors over the Internet on First Amendment grounds).

Showing that the law punished a substantial amount of protected speech, "judged in relation to the statute's plainly legitimate sweep" is sufficient to invalidate all enforcement of the law, "until and unless a limiting construction or partial invalidation so narrows if as to remove the seeming threat or deterrence to constitutionally protected expression." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). This remedy arises out of concern that "the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech - especially when the overbroad statute imposes criminal sanctions." *Id*. (citing *Shamburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980)).

2.   Section 2261A (2)(B) Creates a Criminal Prohibition of "Alarming Breadth"

Section 2261A(2)(B) represents a criminal statute of unprecedented and "alarming breadth." *Stevens*, 559 U.S. at 474. The statute plane sweep encompasses a substantial amount of protected speech. The overbreadth doctrine focuses on the need for Congress to use precision in drafting statutes so that they may not affect protected speech. *See NAACP v. Button*, 371 U.S. 415, 432-33 (1963). Under the portion of § 2261A (2)(B) charged, any

individual who "engages in a course of conduct" "with the intent to…harass" or "to cause substantial emotional distress" uses "any interactive computer service" in a way that "causes substantial emotional distress" to anyone is guilty of interstate stalking, punishable for up to five years imprisonment. Statute does not define what constitutes "substantial emotional distress," nor does the statute define "harass." The failure to define these terms presents both a First Amendment violation and a Due Process violation under the Fifth Amendment, as discussed *infra*.

Certainly, not all speech intended to cause a listener substantial emotional distress falls outside the protection of the First Amendment. One need only look to political advertising as examples of speech the government could charge as meaning to cause the intended target substantial emotional harm; despite the intended was to cause the target to lose an election. Modern political advertising is certainly protected by the Constitution. *Cook*, 2020 WL 3958194 * 7-8.

For example, the statute would cover a voter who believes it is wrong for an elected official to use law enforcement to clear protestors from in front of a church and who writes harshly worded posts accusing the elected official of being a fool and tyrant. This voter wants the elected official to know that his actions will not be forgotten come election day. Under the plain reading of section, the voter would be subjected to criminal penalties because he used an interactive computer device to engage in a course of conduct with the intent to harass or cause substantial emotional distress to the elected official and those who intend to vote for the him.

Unquestionably, the speech in this example constitutes protected speech. However, this individual could face imprisonment under this overbroad statute. As the Supreme Court held, "even when a speaker or writer is motivated by hatred or ill will, his expression [is] protected by the First Amendment." *Garrison v. Louisiana*, 379 U.S. 64 (1964) (invalidating a state criminal libel statute). *See also Snyder v. Phelps*, 562 U.S. 443 (2011) (holding that fundamentalist church members who picketed funerals of fallen military soldiers with signs of hateful speech, such as "Thank God for Dead Soldiers" and "Fags Doom Nation," were shielded from civil liability under First Amendment even though the speech "inflicted great pain").

Under the government's theory, the statute charged in this case can be used against speech that is clearly protected by the First Amendment. For instance, posting more than one comment on an Internet retailer's website, such as Amazon.com, could also put an individual in jeopardy of being charged. Indeed, individuals have strong feelings about books, movies, and other products. No doubt, an excessively critical comment causes "substantial emotional distress" in the creator of the critiqued product.  Moreover, a student of the political opponent should take heed against posting about this teacher on academic rating websites, lest the comment be so critical that it causes the teacher too much emotional distress and warrant federal prosecution.

The popular social media site Facebook hosts countless posts intended to harass and/or cause substantial emotional distress. Posts range from unflattering or embarrassing portrayals of people to attempts to boycott an organization or company with the hopes that it will change some policy the user does not like. Those critical of public figures and regimes

use various social media platforms precisely because they hope it will cause individuals or governments enough distress to change their practices. This type of speech clearly falls within the ambit of both the statute and First Amendment protections. In such a clash, the statute must yield.

These are a few examples of the ways in which the statute punishes conduct that is protected by the First Amendment. Considering the millions of people who use Twitter, Facebook, and other social media platforms, the reach of § 2261A(2)(B) is limitless. This Court should strike down the portions of the statute prohibiting speech that is "harassing" and/or causes "substantial emotional distress."

B.  SECTION 2261A(2)(B) IS UNCONSTITUTIONAL AS APPLIED TO MR. GREENBERG BECAUSE IT IMPOSES CRIMINAL SANCTIONS ON PROTECTED SPEECH

1.  Mr. Greenberg is Being Prosecuted for His Speech, Not Conduct

Even if this Court declines to rule that the provisions of § 2261A(2)(B) charged in this case are unconstitutional on its face, the Court should find that the statute is unconstitutional as applied to Mr. Greenberg. However, First Amendment protections apply in equal force when "'[c]onduct'…is significantly imbued with elements of communication." *Ackell*, 907 F.3d at 73 (citing *Johnson*, 491 U.S. at 404). The only conduct alleged is Mr. Greenberg's speech, specifically things written in a letter and on the social media platforms Twitter and Facebook.

There is no allegation that Mr. Greenberg ever traveled in interstate commerce (or attempted to travel in interstate commerce) to engage in any criminal behavior against his political opponent. Nor is there any allegation that Mr. Greenberg ever emailed, called, faxed, texted, or wrote the political opponent, or otherwise tried to communicate directly

with the political opponent. Instead, the government only alleges that his writings are criminal speech, subjecting him to punishment. Thus, Mr. Greenberg is being prosecuted solely for his speech.

> 2. <u>The Government Is Prosecuting Mr. Greenberg Based on Speech Protected by the First Amendment</u>

As *supra*, the Supreme Court has unequivocally stated that there are only a few limited exceptions to First Amendment protections. The speech charged in this case does not fall into any of these exceptions. The government does not allege that Mr. Greenberg's speech was obscene, or that it incited anyone to action, or that it was a true threat. Finally, there is no federal criminal defamation statute. Indeed, the Supreme Court has said, "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974).

The government must rely on this speech being integral to a violation of a valid criminal statute. This case rests on Mr. Greenberg's posting on social media and writings in letters. However, the Supreme Court has

> consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious, or public concern. This is because "in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide 'adequate breathing space' to the freedoms protected by the First Amendment."

*United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011) (quoting *United States v. Stevens*, 559 U.S. 460 (2010)); *see also N.A.A.C.P. v. Clairbourne Hardware Co.*, 458 U.S. 886, 910 (1982) ("Speech does not lose its protected character…simply because it may embarrass others or coerce them into action"). The Supreme Court has never construed a criminal statute as valid simply because the protected speech offended a listener. Indeed, the

Supreme Court has long held that the First Amendment protects unpleasant, offensive, and caustic speech. *Hustler Magazine v. Falwell*, 485 U.S. 46, 51 (1988). Speech cannot be punished because it "may have an adverse emotional impact upon the audience." *Id*. At 55.

The Supreme Court further limited a public figure from recovering damages for the tort of intentional infliction of emotional distress. *See id*. At 57. The fact that the caustic comments concern a religious figure does not immunize them from the protections of the First Amendment. *See id*. Indeed, "[t]he very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech, and religion." *Thomas v. Collins*, 323 U.S. 516, 544 (Jackson, J., concurring). The indictment conspicuously omits the speech that allegedly violates § 2261A(2), it does include "rhetorical hyperbole," which may violate§ 2261A(2)(B). Rhetorical hyperbole, however, has long been constitutionally protected. *Milkovich v. Lorain Journal*, 497 U.S. 1, 17 (1990). The fact that Mr. Greenberg used a *nom de guerre* does not tip the scales to favor the government, as the First Amendment protects anonymous speech. *See Watchtower Bible & Tract Soc'y of New York, Inc. v. Vill. of Stratton*, 536 U.S. 150, 166-67 (2002); see also *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 248 (4th Cir. 2009) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–43, 343 n. 6 (1995): "The First Amendment does appear to include some aspect of anonymity in protecting free speech. The quintessential example is provided by the anonymous speech of the Federalist Papers, published by James Madison, Alexander Hamilton, and John Jay under the pseudonym 'Publius.'").

Mr. Greenberg served as an elected state constitutional officer and was running for re-election. The political opponent voluntarily entered the race against Mr. Greenberg, and

13

therefore was subject to criticism as a matter of public concern. "The First Amendment protects those engaged in speech that can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Cook*, 2020 WL 3958194 * 7 (quoting *Snyder*, 562 U.S. at 453). Whether speech is inappropriate or controversial is irrelevant to whether it deals with a matter of public concern. *See Snyder*, 562 U.S. at 453. Candidates for public office are matters of public concern. *Sullivan*, 376 U.S. 254, 281-82 (1964).

This prosecution is more troubling because it is premised on statements that Mr. Greenberg made on the Internet to the general public or in letters to third parties, rather than direct communications between Mr. Greenberg and his political opponent. *See State v. Ellison*, 900 N.E. 2d 228, 230-31 (Ohio App. 2008) (reversing defendant's conviction for harassment because a message, involving allegations of child molestation, was posted on a social media platform, rather than directly communicated to the victim). The concurring opinion in *Ellison* succinctly summed up the problem with prosecutions based on speech, but not conduct: "It is a scary thought that someone could go to jail for posting a comment on the Internet. If so, we could not build jails fast enough." *Id*. (Painter, J., concurring).

There is no allegation in the indictment that Mr. Greenberg ever sent direct communications to his political opponent. Mr. Greenberg's postings on social media platforms were not directed to a specific person, and his letters were addressed to people other than his political opponent. *See Bowker*, 372 F.3d at 379 (contrasting direct communication from public speech because of an individual's "option of ignoring" the latter form); *Watts*, 394 U.S. at 707-08 (relying in part on the fact that the threatening speech at issue was made in public and concluding it was worthy of First Amendment protection).

Further, even if Mr. Greenberg's alleged speech violated the terms of service for Twitter or Facebook, that could not be the basis for a federal criminal prosecution. *See United States v. Drew*, 259 F.R.D. 449 (C.D. Cal. 2009) (finding a defendant who intentionally violated the terms of service of a social media platform that resulted in a minor committing suicide could not be criminally prosecuted); *see also United States v. Chandler*, 388 F.2d 796 (11th Cir. 2004) (reversing a federal conspiracy conviction, in part, because violating the rules of a McDonald's promotional game could not form the basis of a federal prosecution).

Two district courts have already found § 2261A(2) unconstitutional as applied on First Amendment grounds in similar cases. Most recently, in *United States v. Cook*, No. 3:20cr19, 2020 WL 3958194 (N.D. Miss. Jul. 13, 2020), a district court found § 2261A(2)(B) unconstitutional as applied to a defendant who posted the home address of an undercover law enforcement officer, the identities of his immediately family members, and "And God willing I'm going to take them out." *See id*. at *3. The government indicted the defendant using § 2261A(2)(B) for using "an interstate social media website, to engage in a course of conduct that caused and would reasonably be expected to cause substantial emotional distress…" *United States v. Cook*, No. 3:20cr19, dkt. 18 (N.D. Miss. Feb. 26, 2020). As here, "…the government has not alleged [the defendant] ever directly contacted any of the subjects of his Facebook post. Rather, [the defendant] is being prosecuted solely on the <u>content of his public post</u> - not the <u>act posting</u>." *Cook* at *4. The court noted that other courts had determined that § 2261A(2)(B):

> could have an unconstitutional application, and remaining cognizant of the chilling-effect-related concerns…[s]hould situations arise where the statute is

applied to courses of conduct that are sufficiently expressive to implicate the First Amendment, we are confident that as applied challenges will properly safeguard the rights that the First Amendment enshrines.

*Id*. (quoting *United States v. Ackell*, 907 F.3d 67, 77 (1st Cir. 2018)); *see also United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011) (dismissing an indictment because the government, using § 2261A(2), charged speech the First Amendment enshrined).

Although the court did not approve of the contents of the posts, the court found that it was protected because it discussed matters of public concern. *Cook*, at *7-*8. The court recounted two social media posts from President Donald J. Trump, one of which ended "Now he will have bombs dropped on him." *See id*. at *8. "If prosecutors choose to tolerate the above grievances coming from the highest office in the land, then surely a…citizen should likewise be allowed to vent his grievances. Their complaints are cut from the same cloth. Otherwise, our criminal justice system suffers the appearance of selective enforcement." *Id*.

The *Cook* Court relied heavily on Supreme Court jurisprudence and *Cassidy*. In *Cassidy*, the defendant posted on various Internet platforms, including Twitter, about the character and qualifications of a religious leader. 814 F. Supp. 2d at 578-79. The government charged that the defendant "intentionally caus[ed] substantial emotional distress to [the victim], specifically on Twitter and Blogs." *Id*. at 584. The court concluded that as applied to the defendant, the statute was a content-based restriction because it limited speech on the basis of whether that speech was emotionally distressing to another. *See id*. It is well established that a content-based restriction on speech must survive strict scrutiny, meaning the government must show that the content-based restriction "is necessary to serve a

compelling state interest." *Id.* Protecting others from emotional distress is not a compelling state interest. *See id.*

> [T]he decision in [*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000)], underscores the fact that the Government's interest is not a compelling one:
>
> Where the designed benefit of a content-based speech restriction is to shield the sensibilities of listeners, the general rule is that the right of expression prevails, even where no less restrictive alternative exists. We are expected to protect our own sensibilities simply by averting [our] eyes.

*Id.*; *see also R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992) (finding content-based restrictions "presumptively unconstitutional").

Here the political opponent simply needed to avert his eyes from the social media platforms, and his ears from rumor and inuendo.

In *United States v. Sergentakis*, No. 15 Cr. 33, 2015 WL 3763988 (S.D.N.Y. 2015) and *United States v. Sayer*, Criminal No. 2:11-CR-113-DBH, 2012 WL 1714746 (D. Me. 2012), courts rejected an as applied challenge to § 2261A(2). In *Sergentakis* and *Sayer*, the victims were not public figures. In *Sergentakis*, the defendant made direct contact with the victim, and *Sayer* involved a domestic violence situation (which the state was enacted to control) in which the defendant encouraged strangers to harm the victim. Therefore, the reasoning applied in *Sergentakis* and *Sayer* cannot be applied here. Instead, *Cook* and *Cassidy* should control.

### C. Provisions of § 2261A(2)(B) Are Unconstitutionally Vague Because They Fail to Provide Fair Warning of What Conduct is Proscribed

The Due Process Clause of the Fifth Amendment requires that any statute imposing criminal liability must give potential defendants fair warning of what conduct is proscribed.

*See City of Chicago v. Morales*, 527 U.S. 41, 52 (1999). Criminal liability cannot be imposed without "fair warning…in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *United States v. Lanier*, 520 U.S. 259, 265 (1997) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)).

The Due Process Clause requires criminal statutes to define an offense: [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402–03 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). When a law fails to do either, it is impermissibly vague. *See Morales*, 527 U.S. at 56. "The general test of vagueness applies with particular force in review of laws dealing with speech." *Hynes v. Mayor and Counsel of Borough of Oradell*, 426 U.S. 610, 620 (1976). Without sufficiently precise laws, "the legislature impermissibly delegates basic policy decisions to the personal predilections of police, prosecutors, and juries." *Florida Businessman for Free Enterprise v. City of Hollywood*, 673 F.2d 1213, 1218 (11th Cir 1982) (citing *Smith v. Goguen*, 415 U.S. 566, 576 (1976)). Criminal laws require a great deal of precision. *Winters v. New York*, 333 U.S. 507, 515 (1945).

The provisions of § 2261A(2) charged here neither provide notice of what conduct is prohibited nor discourages arbitrary enforcement, much less survives the more rigorous test for statutes criminalizing speech. Indeed, the undersigned could find no case where the government, acting through the Departments of Justice and Homeland Security, used this criminal statute where a political figure engaged in speech concerning a political opponent.

Those engaging in political campaigns have not been given <u>effective</u> notice that the government may disapprove of their strategies and summon a statute, codified in Chapter 110A – Domestic Violence and Stalking, to lob federal criminal charges.

    1.    <u>The Provisions of § 2261A(2) Charged Do Not Provide the Public with Fair Notice of What Conduct is Prohibited</u>

The government has alleged that Mr. Greenberg committed interstate stalking by posting messages on social media platforms and mailing letters to people other than his political opponent "with the intent to harass" and "caused, attempted to cause, [or] would be reasonably expected to cause substantial emotional distress." Dkt. 28.

The essential terms "intent to harass," and "substantial emotional distress" are not defined. The one term that is defined is "course of conduct." This "means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2). However, this definition only raises more questions than it answers because it is plagued by a lack of clarity. Do two postings on either Twitter or Facebook constitute a course of conduct? Do they need to be related to the same topic? If 50% of the posts are about holding office, 30% are about politics, and 20% about a political opponent's fitness to hold office, does that constitute a course of conduct? To the "acts" in the definition section refer to accessing a facility of interstate commerce or to speech?

The failure to define key terms charged in this case is fatal to the statute. *See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (invalidating a city ordinance on vagueness grounds and observing that "the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensive normative standard, but rather in the sense that no standard of conduct is specified at all"). What causes substantial emotional

distress to one person may cause moderate, little, or no substantial emotional distress to another. Similarly, what one person views as harassing (political jokes, chain letters, comments on appearance) may be amusing or merely annoying to another. Applying the standards set forth by the Supreme Court, individuals of ordinary intelligence must necessarily guess at the meaning of these undefined and standard-less statutory terms.

Because it is simply impossible for ordinary people to understand what conduct is permitted under the statute charged in this case, let alone ordinary lawyers to understand how to advise others about what is criminal and what is lawful conduct on the Internet and in mailings, the portion of the statue charged should be voided on vagueness grounds. *See Doe v. University of Michigan*, 721 F. Supp. 852 (E.D. Mich. 1989) (striking down a school harassment policy for vagueness and overbreadth); *State v. Bryan*, 910 P.2d 212, 220 (Kan. 1996) (voiding a stalking statute on vagueness grounds because "harass" was undefined and lacked any objective measure to proscribed conduct).

Justice Scalia's observation about the Armed Career Criminal Act is apt here:

We face a Congress that puts forth an ever-increasing volume of laws in general, and of criminal laws in particular. It should be no surprise that as the volume increases, so do the number of imprecise laws. And no surprise that our indulgence of imprecisions that violate the Constitution encourages imprecisions that violate the Constitution. Fuzzy, leave-the-details-to-be-sorted-out-by-the-courts legislation is attractive to the Congressman who wants credit for addressing a national problem but does not have the time (or perhaps the votes) to grapple with the nitty-gritty. In the field of criminal law, at least, it is time to call a halt.

*Sykes v. United States*, 564 U.S. 1, 35 (2011) (Scalia, J., dissenting), overruled by *Johnson v. United States*, 135 S. Ct. 2551 (2015).

More recently, Justice Gorsuch wrote:

In our constitutional order, a vague law is no law at all. Only the people's elected representatives in Congress have the power to write new federal criminal laws. And when Congress exercises that power, it has to write statutes that give ordinary people fair warning about what the law demands of them.

Vague laws transgress both of those constitutional requirements. They hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges, and they leave people with no sure way to know what consequences will attach to their conduct. When Congress passes a vague law, the role of the courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again.

*United States v. Davis*, 139 S. Ct. 2319, 2326 (2019).

    2.   The Provisions of § 2261A(2) Charged Fail to Establish Standards That Are Sufficient to Guard Against Arbitrary Enforcement

Lacking any meaningful standards for determining what conduct is lawful and what conduct is unlawful, the provisions charged here are particularly susceptible to arbitrary enforcement. While prosecutorial discretion always accounts for some variation in enforcement, this discretion is reined in by clear and precise statutory standards to guide law enforcement and prosecutors. In the absence of these standards, controversial or unsavory speech, or speakers such as Mr. Greenberg, may be targeted by law enforcement or prosecutors even though the speech does not fall within the narrow categories of speech unprotected by the First Amendment. Most troubling here, the government brought these charges between political opponents shortly before the contested election to ensure Mr. Greenberg could not effectively retain public office. Given the "standardless sweep" that results from undefined laws, "federal law enforcement entities would be improperly free to

pursue their personal predilections." *Kolendar*, 461 U.S. at 358 (citation omitted).[8] The

absence of even minimal guidelines to govern the enforcement of § 2261A(2) requires that it

be invalidated on vagueness grounds.

D. CANNONS OF STATUTORY CONSTRUCTION FAVOR MR. GREENBERG

The government's interpretation of the statute is undermined by settled canons of

statutory construction. First, the doctrine of constitutional avoidance requires the Court to

construe the statue in a manner that does not chill in the individual's right to free speech,

right to fair warning of what contact is prohibited, or right to be free from arbitrary

enforcement of statutes. *See Zadvyadas v. Davis*, 533 U.S. 678, 689 (2001). While the Court

must endeavor to construe the statute narrowly when there are serious doubts about its

constitutionality, the Court must not add omitted terms or redefine existing ones. *See Reno v.

American Civil Liberties Union*, 521 U.S. 844, 884-85 (1997). A court cannot "rewrite

a…law to conform it to constitutional requirements." *Id*. Drafting and fixing constitutionally

infirm statutes is a legislative, not judicial, function. *See United States v. Lanier*, 520 U.S.

259, 267 n.6 (1997).

> It would be certainly be dangerous if the legislature could set a net large enough
> to catch all possible offenders, and leave it to the courts to step inside and say
> who could be rightfully detained, and who should be set at large. This would, to
> some extent, substitute the judicial for legislative department of the government.

---

[8] It was not long ago that the Department of Justice, using the cover of federal law, engaged in wiretaps on Reverend Martin Luther King, Jr. Although § 2261A was not then law, Reverend King engaged in a course of conduct, in speeches and during protests, designed to harass the white establishment and cause the white establishment substantial emotional distress. For example, Reverend King called "completely ineffectual in resolving the continued mayhem and brutality inflicted upon the Negro in the deep South." Stamford University, The Martin Luther King Jr. Research and Education Institute, https://kinginstitute.stanford.edu/encyclopedia/federal-bureau-investigation-fbi (last visited July 21, 2020).

*Reno*, 521 U.S. at 885 n.49 (quoting *United States v. Reese*, 92 U.S. 214, 221 (1875)).

Finally, the rule of lenity favors Mr. Greenberg. The rule of lenity requires that any ambiguity in a criminal statute be resolved in the defendant's behalf. *See Abbott v. United States*, 562 U.S. 8, 28 n. 9 (2010). Resolving them in favor of Mr. Greenberg requires the Court to dismiss counts one and two of the indictment.

E.   The Indictment Fails to State an Offense

Regardless of the validity of the charged provisions of § 2261A(2), this Court should dismiss the in counts one and two of the indictment for the following fundamental reason: it fails to state an offense. A motion that an indictment fails to state in offense may be made before trial or at any time during pendency of the case. Fed. R. Crim. P. 12(b)(2), (b)(3)(B)(v). "It is perfectly proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983).

An indictment cannot simply track the statutory language, but omit the factual gravamen of the offense. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (citing *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir.2003)). Yet, this information is completely missing. As a result, counts one and two fail to allege facts which state a prosecutable offense. The proper remedy is dismissal of counts one and two.

III.   Certification of Conferring with Opposing Counsel

Pursuant to the Court's Criminal Scheduling Order (doc. 22), undersigned certifies that (1) the undersigned counsel conferred with opposing counsel; (2) the undersigned

counsel have been unable to resolve the motion by agreement; and (3) the motion concerns matters not covered by the scheduling order.

**IV.**     **CONCLUSION**

WHEREFORE, for the reasons stated herein, Mr. Greenberg respectfully requests this Court to dismiss counts one and two of the indictment.

Respectfully submitted on July 27, 2020.

**LAW OFFICES OF
HORWITZ & CITRO, P.A.**

*s/Mark L. Horwitz*
**MARK L. HORWITZ**
Florida Bar Number: 147442
mark@horwitzcitrolaw.com

*s/Vincent A. Citro*
**VINCENT A. CITRO**
Florida Bar Number: 0468657
vince@horwitzcitrolaw.com

17 East Pine Street
Orlando, Florida 32801
Telephone: (407) 843-7733
Facsimile: (407) 849-1321
Attorneys for Joel Micah Greenberg

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 27, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Roger B. Handberg, Assistant United States Attorney, at roger.handberg@usdoj.gov, and Jennifer M. Harrington, Assistant United States Attorney, at jennifer.harrington2@usdoj.gov.

*s/Vincent A. Citro*
**VINCENT A. CITRO**
Florida Bar Number: 0468657
Attorney for Joel Micah Greenberg
