# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
George C. Young Courthouse and Federal Building
401 West Central Boulevard
Orlando, FL 32801
www.flmd.uscourts.gov

Elizabeth M. Warren                                               Benjamin C. Wynn
Clerk of Court                                               Orlando Division Manager

**DATE:**     July 6, 2017

**TO:**       Clerk, U.S. Court of Appeals for the Eleventh Circuit

---

**GEORGE WILLIAM GIRTMAN,**

      **Petitioner,**

**v.**                                    **Case No:  6:15-cv-1722-Orl-28KRS**

**SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY GENERAL,
STATE OF FLORIDA,**

      **Respondents.**

---

**U.S.C.A. Case No.:**        **TBD**

- Honorable John Antoon II, United States District Judge appealed from.

- Appeal filing fee was not paid. Upon filing a notice of appeal, the appellant must pay the district clerk all required fees. The district clerk receives the appellate docket fee on behalf of the court of appeals.  If you are filing informa pauperis, a request for leave to appeal in forma pauperis needs to be filed with the district court.

- Certificate of Appeal ability was denied. In Order being appealed.

- Copy of Notice of Appeal, docket entries, judgment and/or order appealed from.


ELIZABETH M. WARREN, ACTING CLERK

By:     s/S. Manuel, Deputy Clerk

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
2017 JUL -5 PM 2:51
US DIS
MIDDLE DIST   COURT
OF FLORIDA
ORLAND   FLORIDA

PROVIDED TO GULF CI
MAILROOM

JUN 27 2017

FOR MAILING  G.G.
INMATE'S INITIALS

GIRTMAN, GEORGE,
        Petitioner,

V.                              Case No. 6:15-CV-1722-Orl-28KRS

JULIA JONES, SECRETARY OF
DEPARTMENT OF CORRECTIONS, et al.,
        Respondent.

## NOTICE OF APPEAL

NOTICE IS HEARBY GIVEN that the Petitioner George Girtman, pro se, appeals to the 11th Cir. Court of Appeal, the final Order of this Court rendered May 23, 2017. The nature of the Order appealed is a Final Order: Denying Petition for Writ of Habeas Corpus.

## CERTIFICATE OF SERVICE

I HEARBY CERTIFY that on this 21st day of June 2017 I placed a copy of the above and foregoing in the hands of Gulf C.I.-Annex prison officials for the purpose of mailing prepaid first class postage by U.S. Mail to: The Office of the Attorney General, Pamala Jo Bondi at 444 Seabreeze Blvd. Suite 500, Daytona Beach, FL 32118 On this ___ day of June 2017.

/s/ Girtman, George
Girtman, George 059203
Gulf Correctional Institution-Annex
699 Ike Steele Rd.
Wewahitchka, FL 32465

APPEAL, CLOSED, HABEAS, OrlP-5

# U.S. District Court
## Middle District of Florida (Orlando)
## CIVIL DOCKET FOR CASE #: 6:15-cv-01722-JA-KRS

| | |
|---|---|
| Girtman v. Secretary, Department of Corrections et al | Date Filed: 10/13/2015 |
| Assigned to: Judge John Antoon II | Date Terminated: 05/24/2017 |
| Referred to: Magistrate Judge Karla R. Spaulding | Jury Demand: None |
| Cause: 28:2254 Petition for Writ of Habeas Corpus (State) | Nature of Suit: 530 Habeas Corpus (General) |
| | Jurisdiction: Federal Question |

**Petitioner**

| | | |
|---|---|---|
| **George William Girtman** | represented by | **George William Girtman** |
| | | 059203 |
| | | Gulf Correctional Institution -Annex |
| | | 699 Ike Steele Road |
| | | Wewahitchka, FL 32465 |
| | | PRO SE |

V.

**Respondent**

| | | |
|---|---|---|
| **Secretary, Department of Corrections** | represented by | **Barbara Debelius-Enemark** |
| | | Florida Department of Corrections |
| | | 501 S Calhoun St |
| | | Tallahassee, FL 32399-6548 |
| | | 850/717-3605 |
| | | Email: debelius.barbara@mail.dc.state.fl.us |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Rebecca Rock McGuigan** |
| | | Office of the Attorney General |
| | | Suite 500 |
| | | 444 Seabreeze Blvd |
| | | Daytona Beach, FL 32118 |
| | | 386/238-4990 |
| | | Fax: 386/238-4997 |
| | | Email: Rebecca.Mcguigan@myfloridalegal.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Respondent**

**Attorney General, State of Florida**                represented by   **Rebecca Rock McGuigan**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/13/2015 | 1 | PETITION for Writ of Habeas Corpus -State filed by George William Girtman.(MAL) (Entered: 10/14/2015) |
| 10/13/2015 | 2 | MOTION for leave to proceed in forma pauperis/affidavit of indigency by George William Girtman. (Attachment: # 1 Letter)(MAL) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 10/14/2015) |
| 10/19/2015 | 3 | **ORDER denying without prejudice 2 Motion for leave to proceed in forma pauperis. Petitioner must submit a computer printout or notarized statement that contains all the transactions in his prisoner account for the period from July 13, 2015, through October 13, 2015 within 20 days. Signed by Magistrate Judge David A. Baker on 10/19/2015. (LAK)** (Entered: 10/19/2015) |
| 11/03/2015 | 4 | **RELATED CASE ORDER AND NOTICE of designation under Local Rule 3.05 - track 1. Notice of pendency of other actions due within 14 days from the date of this order. Signed by Judge John Antoon II on 11/3/2015. CTP(DJD)** (Entered: 11/03/2015) |
| 11/12/2015 | 5 | NOTICE of Compliance by George William Girtman re 3 Order on motion for leave to proceed in forma pauperis/affidavit of indigency (IGC) (Entered: 11/12/2015) |
| 11/13/2015 | 6 | **ORDER. Petitioner shall have 20 days to file a prisoner account statement containing transactions from the period of July 13, 2015, through October 13, 2015. Signed by Magistrate Judge Karla R. Spaulding on 11/13/2015. (LAK)** (Entered: 11/13/2015) |
| 11/19/2015 | 7 | NOTICE of pendency of related cases re 4 Related case order and track 1 notice per Local Rule 1.04(d) by George William Girtman. Related case(s): no (IGC) (Entered: 11/20/2015) |
| 11/20/2015 | 8 | MEMORANDUM in support re 1 Petition for writ of habeas corpus filed by George William Girtman. (IGC) (Entered: 11/20/2015) |
| 12/07/2015 | 9 | MOTION to Compel FDOC Officials to provide petitioner with computer printout of bank account by George William Girtman. (IGC) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 12/07/2015) |
| 12/18/2015 | 10 | **ORDER directing the Administrator of the Inmate Trust Fund Account for the Florida Department of Corrections to respond to 9 MOTION to compel within 14 days. Signed by Magistrate Judge Karla R. Spaulding on 12/17/2015. (LAK)** (Entered: 12/18/2015) |

| | | |
|---|---|---|
| 01/15/2016 | 11 | **ORDER. Within 14 days the Warden of the Gulf Correctional Institution, Annex where Petitioner is incarcerated shall respond to 9 MOTION to compel. Signed by Magistrate Judge Karla R. Spaulding on 1/15/2016. (LAK)** (Entered: 01/15/2016) |
| 02/01/2016 | 12 | RESPONSE to Motion re 9 MOTION to Compel FDOC Officials to provide petitioner with computer printout of bank account, 2 MOTION for leave to proceed in forma pauperis/affidavit of indigency filed by Secretary, Department of Corrections. (Debelius-Enemark, Barbara) (Entered: 02/01/2016) |
| 02/08/2016 | 13 | NOTICE of inquiry by George William Girtman (MAL) (Entered: 02/09/2016) |
| 02/09/2016 | 14 | **ORDER denying as moot 9 Motion to Compel. Petitioner's 2 Motion to Proceed in Forma Pauperis is granted. Respondents shall file a "Response to Petition" within sixty days from the date of this Order.. Signed by Magistrate Judge Karla R. Spaulding on 2/9/2016. (RDO)** (GJS). (Entered: 02/09/2016) |
| 02/10/2016 | 15 | NOTICE of compliance re 11 Order, 12 Response to motion *RE-SERVICE OF INMATE ACCOUNT* by Secretary, Department of Corrections (Debelius-Enemark, Barbara) (Entered: 02/10/2016) |
| 02/19/2016 | 16 | NOTICE of compliance by George William Girtman (Attachment: # 1 Account Statement)(MAL) (Entered: 02/19/2016) |
| 06/03/2016 | 17 | **ORDER directing Respondents to show cause within 11 days why sanctions should not be imposed for failure to comply with the Court's Order (Doc. No. 14 ). Signed by Magistrate Judge Karla R. Spaulding on 6/3/2016. (SR)(ctp)** (Entered: 06/03/2016) |
| 06/06/2016 | 18 | NOTICE of Appearance by Rebecca Rock McGuigan on behalf of Attorney General, State of Florida, Secretary, Department of Corrections (McGuigan, Rebecca) (Entered: 06/06/2016) |
| 06/06/2016 | 19 | NOTICE of pendency of related cases re 4 Related Case Order per Local Rule 1.04(d) by Attorney General, State of Florida, Secretary, Department of Corrections. Related cases: yes. (McGuigan, Rebecca) Modified on 6/7/2016 (JET). (Entered: 06/06/2016) |
| 06/06/2016 | 20 | CERTIFICATE of interested persons and corporate disclosure statement by Attorney General, State of Florida, and Secretary, Department of Corrections. (McGuigan, Rebecca) Modified on 6/7/2016 (JET). (Entered: 06/06/2016) |
| 06/14/2016 | 21 | RESPONSE to 1 Petition for writ of habeas corpus by Attorney General, State of Florida, Secretary, Department of Corrections. (Attachments: # 1 Appendix bookmarked document)(McGuigan, Rebecca) (Entered: 06/14/2016) |
| 06/14/2016 | 22 | RESPONSE TO ORDER TO SHOW CAUSE re 17 Order to show cause and MOTION to Accept as Timely Filed filed by Attorney General, State of Florida, Secretary, Department of Corrections. (McGuigan, Rebecca) Modified on 6/16/2016 (JET). (Entered: 06/14/2016) |
| 06/20/2016 | 23 | MOTION for sanctions by George William Girtman. (LMM) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 06/21/2016) |

| | | |
|---|---|---|
| 07/18/2016 | 24 | **ORDER granting 22 Motion to Accept Response as Timely; denying 23 Motion for Sanctions. Signed by Magistrate Judge Karla R. Spaulding on 7/18/2016. (RDO)** (Entered: 07/18/2016) |
| 07/18/2016 | | Set/reset deadlines/hearings: Reply to Response to Petition due by 9/18/2016. (RDO) (Entered: 07/18/2016) |
| 07/25/2016 | 25 | MOTION for Extension of Time to File Response/Reply as to 22 Response to Order to Show Cause by George William Girtman. (JEV) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 07/26/2016) |
| 07/27/2016 | 26 | **ORDER denying as moot 25 Motion for Extension of Time to File Response/Reply. Signed by Magistrate Judge Karla R. Spaulding on 7/27/2016. (RDO)** (Entered: 07/27/2016) |
| 09/21/2016 | 27 | MOTION for Extension of Time, an additional 30 days, to File Reply as to 21 Response to habeas petition by George William Girtman. (CLB) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 09/21/2016) |
| 09/22/2016 | 28 | **ORDER granting 27 Motion for Extension of Time to File Reply to 21 Response. Petitioner shall have thirty days from the date of this Order to file a Reply. Signed by Magistrate Judge Karla R. Spaulding on 9/22/2016. (RDO)** (Entered: 09/22/2016) |
| 10/27/2016 | 29 | MOTION for Extension of Time (30 days) to File Reply as to 21 Response to habeas petition by George William Girtman. (JEV) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 10/27/2016) |
| 10/31/2016 | 30 | **ORDER granting 29 Motion for Extension of Time an additional thirty days to File a Reply to the Response to Petition. Signed by Magistrate Judge Karla R. Spaulding on 10/31/2016. (RDO)** (Entered: 10/31/2016) |
| 12/05/2016 | 31 | REPLY re 21 Response to habeas petition by George William Girtman. (JEV) (Entered: 12/06/2016) |
| 05/24/2017 | 32 | **ORDER denying 1 Petition for Writ of Habeas Corpus; dismissing case with prejudice; denying Petitioner a Certificate of Appealability; directing the Clerk to enter judgment and to then close this case. Signed by Judge John Antoon II on 5/23/2017. (BRS)** (Entered: 05/24/2017) |
| 05/24/2017 | 33 | JUDGMENT is entered in favor of Respondents and against Petitioner, George William Girtman, this case is DISMISSED WITH PREJUDICE. (Signed by Deputy Clerk) (SPM) Modified on 5/25/2017 (SPM). (Entered: 05/24/2017) |
| 07/05/2017 | 34 | NOTICE OF APPEAL as to 33 Judgment - prisoner, 32 Order by George William Girtman. Filing fee not paid. (SPM) (Entered: 07/06/2017) |
| 07/05/2017 | 35 | MOTION for certificate of appealability (construed from Notice of Appeal). by George William Girtman. (SPM) (Entered: 07/06/2017) |

**PACER Service Center**

**Transaction Receipt**

| 07/06/2017 11:07:09 | | | |
|---|---|---|---|
| **PACER Login:** | suzannamanuel:5271984:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:15-cv-01722-JA-KRS |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GEORGE WILLIAM GIRTMAN,

      Petitioner,

v.                                  Case No. 6:15-cv-1722-Orl-28KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

    Petitioner initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Respondents filed a response (Doc. 21), to which Petitioner replied. (Doc. 31). For the reasons set forth below, the petition is denied.

### I.   PROCEDURAL HISTORY

    Petitioner was charged with sexual battery with a deadly weapon or physical force, robbery with a deadly weapon, and burglary of a dwelling with an assault or battery. (Doc. 21-1 at 5-7). Although the crimes occurred in 1990, Petitioner's involvement was not discovered until 2009 when a cold case detective matched DNA evidence obtained from the victim to Petitioner. (Doc. 21-1 at 11, 94-95).[1]

---

[1]Because DNA databanks were less robust at the time, law enforcement was unable to connect Petitioner to the crimes using the rape kit evidence obtained from the victim. The victim contacted police in 2009 to inquire about the status of the investigation and, following her inquiry, the original evidence was submitted to FDLE for testing. This testing resulted in the extraction of a DNA profile that was ultimately connected to Petitioner. (Doc. 21-1 at 11).

Petitioner entered a plea of no contest on the morning of trial, albeit after substantial vacillation in which he flip-flopped several times regarding his plea. (Doc. 21-1 at 29-30, 42-45, 50). For his part, Petitioner pleaded no contest to sexual battery with a deadly weapon and also to burglary of a dwelling with an assault or battery. For its part, the court promised that the sentence would not be more than concurrent life terms with a possibility of parole after twenty-five years. (Doc. 21-1 at 26-27). Importantly, Petitioner made the following written representations in connection with the plea:

- I understand that if the Court accepts my plea(s) there will be no trial and the Court will impose sentence(s) based upon my plea(s).

- No one has pressured or forced me to enter the plea(s). I am entering the plea(s) because . . . I believe it is in my own interest. I enter the plea(s) voluntarily of my own free will.

- I have read every word in this plea, have discussed it with my lawyer, and fully understand it. I am fully satisfied with the way my lawyer has handled this case for me. He/she has done everything I have asked him/her to do.

(Doc. 21-1 at 26-27). Petitioner separately acknowledged in court, and under oath, that he entered the plea "freely" and "voluntarily," and he answered "Yes, sir" when asked by the trial judge, "Do you understand that by entering this plea we're not going to have a trial?" (Doc. 21-1 at 48, 53). Counsel corroborated these representations and acknowledgements, certifying: "I believe the defendant fully understands this written plea, the consequences of entering it, and the plea is entered of the defendant's own free

will." (Doc. 21-1 at 27).

Four days later, the court held a sentencing hearing at which Petitioner made a motion to withdraw his plea. (Doc. 21-1 at 62-63, 66-67). Petitioner explained that he was under a great deal of pressure at the time he entered the plea; that he was confused by the simultaneous conversations he had with counsel regarding how to plead; and that the trial judge implied that he could change his mind prior to sentencing. (Doc. 21-1 at 71-72, 74-75). Petitioner made this motion – and made these statements – notwithstanding his earlier acknowledgement, both orally and in writing, that there would not be a trial if there were a plea. (Doc. 21-1 at 26, 53).

The court denied the motion. (Doc. 21-1 at 77). In so doing, the trial judge expressed his belief that Petitioner was "playing the system;" that Petitioner lacked credibility given the representations he previously made regarding his willingness to plead "no contest" and the reasons for doing so; and that the motion appeared motivated by an interest in delaying the trial and/or obtaining a continuance. (Doc. 21-1 at 76-77).

Petitioner was sentenced consistently with the earlier plea (Doc. 21-1 at 128-130), and he appealed. (Doc. 21-1 at 132). Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), in which he conceded that Petitioner did not have good cause to withdraw the plea. (Doc. 21-1 at 143). The Fifth DCA denied the appeal *per curiam*. (Doc. 21-1 at 152). Petitioner made a motion for a rehearing. (Doc. 21-1 at 154). The Fifth DCA denied the motion. (Doc. 21-1 at 158).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 21-1 at 162-68). The motion identified *five*

*grounds* for relief: (a) counsel provided ineffective assistance insofar as they failed to make a motion to disqualify the trial judge; (b) counsel provided ineffective assistance insofar as they failed to make a motion to suppress the rape kit evidence; (c) counsel provided ineffective assistance insofar as they failed to investigate his claims of corruption and cover-up by the Orlando Sherriff's Department; (d) counsel provided ineffective assistance insofar as they coerced him to plead no contest; and (e) counsel provided ineffective assistance insofar as they failed to advise him of a possible defense based on the State's alleged inability to lay a foundation for the rape kit evidence. (Doc. 21-1 at 162). The court entered an order striking the motion and directed Petitioner to file an amended motion. (Doc. 21-1 at 177-78).

Petitioner filed an amended motion. (Doc. 21-1 at 181-86). The amended motion raised only *three grounds* for relief: (a) counsel provided ineffective assistance insofar as they failed to make a motion to disqualify the trial judge; (b) counsel provided ineffective assistance insofar as they failed to interview certain witnesses and determine the source of certain fingerprints found at the scene; and (c) counsel provided ineffective assistance insofar as they failed to make a motion to suppress the rape kit evidence. (Doc. 21-1 at 181). The court denied the amended motion. (Doc. 21-1 at 194-99).

Petitioner appealed. (Doc. 21-1 at 202). The Fifth DCA affirmed *per curiam*. (Doc. 21-1 at 240).

A petition for a writ of habeas corpus followed.

-4-

## II.   LEGAL STANDARDS

### A.   Habeas Relief Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

AEDPA provides, among other things, that habeas relief cannot be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). AEDPA thus provides two primary avenues for relief: one based on a determination that the outcome was itself contrary to clearly established federal law; the other based on a determination that the outcome was infected by an unreasonable application of such law to the facts. As the Supreme Court explained:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Regardless of the avenue taken, however, a prisoner "must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### B.   Ineffective Assistance of Counsel

The standard for relief based on ineffective assistance of counsel is also clear and

unambiguous: a person is entitled to relief only when counsel's conduct fell below an objective standard of reasonableness and, in addition, there is a reasonable probability that the outcome would have been different if counsel had acted reasonably (*i.e.*, that the departure from objective reasonableness prejudiced the case and, by extension, the client). *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

When evaluating performance, courts apply a "strong presumption" that the representation "fell within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104. As the Eleventh Circuit explained:

> [The test for ineffective assistance] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

When evaluating prejudice, courts do not look for mere foot-faults that may have "some conceivable effect on the outcome of the proceeding." *Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005) (internal quotation marks omitted). Instead, they look for serious errors that undermine confidence in the outcome. *Smith v. Wainwright*, 777 F.2d 609, 616 (11th Cir. 1985) (citing *Strickland*, 466 U.S. at 694-95). The Eleventh Circuit previously explained that a showing of prejudice is necessary because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a

particular case as they are to be prejudicial." *Butcher v. United States*, 368 F.3d 1290, 1293

(11th Cir. 2004).

And, when examining a particular case, courts are not obligated to evaluate

performance before evaluating prejudice. "If it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, which we expect will often be so, that

course should be followed." *Smith*, 777 F.2d at 616. A court can, in effect, assume deficient

performance but nevertheless deny a claim because any such deficiency did not prejudice

the case. After all, lawyers are sometimes dealt tough hands and there will be situations

in which substandard representation could not have affected the outcome given the facts

or governing law.

### C.     AEDPA's "Unreasonable Application" Standard and Ineffective Assistance of Counsel Claims

A state court's application of *Strickland* to a post-conviction claim of ineffective

assistance is subject to review in a habeas proceeding. But establishing that a state court's

application of *Strickland* was unreasonable for purposes of AEDPA is especially difficult.

As the Supreme Court noted:

> The standards created by *Strickland* and § 2254(d) are both "highly
> deferential" and when the two apply in tandem, review is "doubly so." The
> *Strickland* standard is a general one, so the range of reasonable applications
> is substantial. Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with unreasonableness under
> § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any reasonable argument that
> counsel satisfied Strickland's deferential standard.*

*Harrington*, 562 U.S. at 105 (emphasis added). More to the point:

-7-

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under ADEPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* at 101 (citation omitted).

### D. Exhaustion of State Remedies

AEDPA separately provides that a person seeking relief must exhaust all remedies available in state court before challenging the constitutionality of a conviction in federal court. 28 U.S.C. § 2254(b)(1). This exhaustion requirement ensures that the state will have an opportunity to consider (and, if necessary, remedy) an alleged violation of a state prisoner's federal rights. *Picard v. Connor*, 404 U.S. 270, 275 (1971). To exhaust a claim, "the petitioner must afford the State a full and fair opportunity to address and resolve the claim on the merits." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The petitioner must therefore identify the federal right at stake. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (*per curiam*) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). As the Eleventh Circuit explained:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar

state-law claim was made. The petitioner must present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim."

*Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004) (quoting *Picard*, 404

U.S. at 277). The Eleventh Circuit continued:

We are not so draconian or formalistic as to require petitioners to give a separate federal law heading to each of the claims they raise in state court to ensure exhaustion for federal review. We simply require that petitioners present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation.

*Id.* at 1344-45. But the Eleventh Circuit cautioned:

[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon *must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory maybe lurking in the woodwork will not turn the trick.*

*Id.* at 1345 (*quoting Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)) (emphasis added).

When a petitioner fails to exhaust state court remedies, and the time to do so has passed, he is deemed to have procedurally defaulted his claim and will be unable to pursue habeas relief in federal court unless he can demonstrate (a) cause for the default and actual prejudice as a result of the alleged violation of federal law or, alternatively, (b) failure to consider the claim would result in a fundamental miscarriage of justice. *Sullivan v. Sec'y Dept. Corr.*, 837 F.3d 1195, 1201 (11th Cir. 2016). The "cause" that excuses a procedural default must result from "some objective factor external to the defense that prevented the prisoner from raising the claim and which cannot be fairly attributable to his own conduct," *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992), while the

"prejudice" that flows from the default must actually and substantially disadvantage the defense "so that [the prisoner] was denied fundamental fairness." *Id.* at 1261. A fundamental miscarriage of justice occurs when "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Wright v. Hopper*, 169 F.3d 695, 705 (11th Cir. 1999) (*quoting Schlup v. Delo*, 513 U.S. 298, 321 (1995)).

## III.   ANALYSIS

### A.   *Ground One*

Petitioner contends counsel provided ineffective assistance insofar as they failed to seek disqualification of the trial judge. Petitioner contends the trial judge lacked impartiality, which then manifested itself in (a) coercing Petitioner to change his plea to "no contest" and (b) denying Petitioner's motion to withdraw the plea. Petitioner contends counsel should have protected him from the trial judge by seeking disqualification and that counsel's failure in this regard prevented him from going to trial. (Doc. 1 at 5; Doc. 8 at 1-2; & Doc. 21-1 at 163, 170, 182, 188-89, 215-16).

The state court denied relief on this ground, explaining that the trial judge's statements "read in their entirety do not reveal that the Judge was not neutral or impartial." (Doc. 21-1 at 196). As such, the state court concluded "there was no reason for Defendant's trial counsel to move to disqualify the judge" or otherwise "object as to the Judge's statements or actions." (Doc. 21-1 at 196).

The state court's rejection of this ground for relief constitutes a reasonable application of *Strickland*.

-10-

## (1) Petitioner's Contemporaneous Statements Undercut This Claim

As a threshold matter, Petitioner's contemporaneous statements undercut this claim. When changing his plea to "no contest," Petitioner stated "no one has pressured or forced me to enter the plea(s)" and "I am entering the plea(s) because . . . I believe it is in my own interest." (Doc. 21-1 at 26). These statements were themselves the result of a voluntary choice, as evidenced by counsel's certification that "the defendant fully understands this written plea, the consequences of entering it, and the plea is entered of the defendant's own free will." (Doc. 21-1 at 27). Petitioner's statements – coupled with counsel's certification – preclude any credible claim that the plea was something other than a knowing and voluntarily decision. As such, these statements undermine Petitioner's claim that counsel failed to provide effective assistance.

## (2) Counsel's Failure to Seek Disqualification Was Not Deficient

Putting aside Petitioner's statements, the relevant transcripts do not evidence the sort of judicial misbehavior that would warrant disqualification.[2] As such, counsel cannot

---

[2]A motion to disqualify is granted only when it is deemed "legally sufficient," a standard that requires "facts that would create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial." *R.M.C. v. D.C.*, 77 So. 3d 234, 236 (Fla. 1st DCA 2012) (*per curiam*). In particular, such a motion "'must contain an actual factual foundation for the alleged fear of prejudice.' A mere 'subjective fear' of bias will not be legally sufficient; rather, the fear must be objectively reasonable." *Id.* (quoting *Fischer v. Knuck*, 497 So. 2d 240, 242 (Fla. 1986)). The required well-grounded fear can be difficult to establish when based on a trial judge's comments. *Mansfield v. State*, 911 So. 2d 1160, 1171 (Fla. 2005), denied disqualification based on the trial judge's comments questioning propriety of state's post-trial offer to allow defendant to avoid death penalty by pleading to life imprisonment and waiver of appellate rights because they did not indicate "any bias or any predisposition concerning future rulings"); *Nassetta v. Kaplan*, 557 So. 2d 919, 921 (Fla. 4th DCA 1990), denied disqualification because "[a] judge's remarks that he is not impressed with a lawyer's or his client's behavior are not, without more, grounds for recusal." *Strasser v. Yalamanchi*, 783 So. 2d 1087, 1092 (Fla. 4th DCA 2001), denied disqualification explaining that trial judge's comments "express the understandable frustration and concern that the trial judge must have experienced" when confronted with a litigant's apparent misbehavior during discovery. *Oates v. State*, 619 So. 2d 23, 26 (Fla. 4th DCA 1993), denied disqualification because the trial judge's comment that the defendant was "being a jerk" was consistent with the behavior that prompted the remark and because the meaning of the

-11-

be criticized for failing to make a motion seeking disqualification.

With respect to the trial judge's actions on the morning of trial, his statements do not reflect bias, partiality or prejudgment. The trial judge plainly wanted Petitioner to make a decision about how he wished to proceed so a plea of "no contest" could be entered or, alternatively, a jury selected – and he clearly admonished Petitioner that he would be unable to plead "no contest" once jury selection began. (Doc. 21-1 at 30, 34, 43). Petitioner may have felt pressured to make a decision, but that pressure resulted from the immediacy of trial rather than any hostility from the trial judge. Petitioner was not entitled to place the trial judge, the prosecutor, the witnesses, and the prospective jurors "on hold" while he flip-flopped between pleading "no contest" and going to trial. A motion for disqualification, based on these facts, would have been legally insufficient because Petitioner would have been unable to establish the required well-grounded fear that he would not receive a fair trial.

With respect to the trial judge's actions at the sentencing hearing, his statements again do not reflect bias, partiality or prejudgment. Instead, they reflect his understandable frustration with Petitioner's continued inability to decide whether to plead or go to trial. The trial judge's frustration appears to have been magnified by Petitioner's belief that the trial judge implied he could change in plea prior to sentencing for any reason. The frustration was not surprising given that:

---

term is amorphous). *Doyle v. Maruszczak*, 834 So. 2d 307, 310 (Fla. 5th DCA 2003), denied disqualification because the trial judge's characterization of real estate broker's actions as more akin to a used car salesman was based on evidence presented in court and did not rise to the level of a "personal attack".

- Petitioner gave an affirmative answer to the question, "Do you understand that by entering this plea we're not going to have a trial? and signed a written plea that contained the affirmation, "I understand that if the Court accepts my plea(s) there will be no trial."

- Petitioner signed a plea providing, "No one has pressured or forced me to enter the plea(s). I am entering the plea(s) because . . . I believe it is in my own interest. I enter the plea(s) voluntarily of my own free will" and "I have read every word in this plea, have discussed it with my lawyer, and fully understand it.

(Doc. 21-1 at 26-27, 53). A motion for disqualification, based on these facts, would have been legally insufficient. Petitioner's situation is analogous to that in *Nassetta, Strasser, Oates* and *Doyle* and a motion for disqualification on his behalf would have been unavailing just as it was in each of those cases.

### (3)   Counsel's Failure to Seek Disqualification Did Not Prejudice Petitioner

Assuming a motion to disqualify had been made – and further assuming it would have been granted – there is still no reason to believe a successor judge would have allowed Petitioner to withdraw his plea and go to trial. As such, Petitioner cannot establish any prejudice from counsels' failure to seek disqualification.

Rule 3.170(f) of the Florida Rules of Criminal Procedure establishes the standards for withdrawing or changing a plea. The rule provides that a court must allow a

-13-

defendant to withdraw his plea if he establishes "good cause" and may allow a defendant to do so in all other circumstances.[3]

Petitioner cannot demonstrate that a successor judge would have granted such a motion for cause given that he entered the plea voluntarily and with full knowledge of the consequences.[4] As noted above, Petitioner's written plea memorialized that he was acting "voluntarily of my own free will" and that counsel explained the penalties associated with each charge if convicted following a trial. (Doc. 21-1 at 26-27). In addition, Petitioner acknowledged in court, and under oath, that he signed the plea "freely" and "voluntarily" and that the plea ensured he would receive concurrent sentences, rather than potential consecutive sentences, for the two crimes. (Doc. 21-1 at 48, 51). Against this, Petitioner would have been unable to establish good cause for withdrawing his plea even if a motion were made to a different, successor judge.

Nor can he demonstrate that a successor judge would have exercised her discretion and allowed him to withdraw his plea. Petitioner can *speculate* that this *might*

---

[3]To establish cause, "the defense must offer proof that the plea was not voluntarily and intelligently entered." *Robinson v. State*, 761 So. 2d 269, 274 (Fla. 1999) (*per curiam*). "[N]aked allegations contained in a motion to withdraw, unsupported by any proof, can never constitute a basis for withdrawal of a plea." *Brown v. State*, 428 So. 2d 369, 371 (Fla. 5th DCA 1983). The situations in which cause has been found to exist involve erroneous advice by defense counsel, misleading statements by the trial judge regarding the probable length of the sentence, and improperly calculated scoresheets. *See Catinella v. State*, 732 So. 2d 444, 445-46 (Fla. 4th DCA 1999) (collecting cases). In contrast, good cause does not exist when "the record reflects that before accepting the plea, the trial court insured that [the defendant] understood the plea, the charges he was facing, the possible sentences he was facing, as well as determined that he was not coerced or misinformed" and that "the plea was entered freely and voluntarily with the effective assistance of counsel." *Collins v. State*, 858 So. 2d 1197, 1199 (Fla. 4th DCA 2003).

[4]Counsel conceded this point in the *Anders* brief filed with the Fifth DCA: "The appellant's explanation to the trial court for why he wished to withdraw his plea did not rise to the level of good cause where the appellant gave a vague statement stating that he entered a plea, although he wanted to go to trial." (Doc. 21-1 at 143).

-14-

have occurred, but such speculation is insufficient to warrant relief. *See Duran v. Walker*, 223 F. App'x 865, 875 (11th Cir. 2007) *(per curiam)* (speculative and conclusory statements that court would have granted relief if counsel took particular action were insufficient); *see also Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) *(per curiam)* ("'Conclusory allegations of ineffective assistance are insufficient.') (citation omitted); *Maharaj v. State*, 778 So. 2d 944, 951 (Fla. 2000) ("Postconviction relief cannot be based on speculation or possibility.").

Ground one is therefore denied.

### B.    *Ground Two*

Petitioner contends counsel provided ineffective assistance insofar as they failed to: (a) interview a witness who purportedly saw "an unknown person" in the neighborhood at the approximate time of the crime and who "might help identify a person of interest;" (b) interview the victim's neighbor who allegedly awakened the victim by making sounds outside her window and who himself might therefore be a suspect; and (c) determine the source of certain fingerprints found at the crime scene. (Doc. 1 at 7; Doc. 21-1 at 183; Doc 31 at 3-4). Petitioner contends that he was forced to plead no contest as a result of this deficiency. (Doc. 31 at 3). The state court denied relief on this ground, explaining:

> When a defendant has entered a plea of guilty or nolo contendere, the claim that counsel failed to conduct an adequate pre-trial investigation, take depositions, develop defenses, etc. is common, but is an insufficient attack on the plea bargain and should be denied. Further, in the instant case, at the change of plea hearing the Judge discussed with Defendant the rights that he was giving up by entering the plea as stated in the plea form including the right to call witnesses, to have the State prove its case and so forth.

> Defendant acknowledged that he understood the rights he was giving up
> and acknowledged that he signed the plea form freely, voluntarily, and
> understanding everything in the plea form.

(Doc. 21-1 at 197).

The state court's rejection of this ground for relief constitutes a reasonable application of *Strickland*.

As a threshold matter, Petitioner's contentions are contradicted by his earlier statements. Petitioner revealed in the written plea that "I am fully satisfied with the way my lawyer has handled this case for me. He/she has done everything I have asked him/her to do." (Doc. 21-1 at 27). Petitioner also stated in court, and under oath, that he was satisfied with counsels' services. (Doc. 21-1 at 52). Petitioner's statements are presumed true and Petitioner has not demonstrated any basis for the Court to overlook or disregard them. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("the representations of the defendant . . . [at a plea proceeding] constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."). As such, Petitioner cannot properly claim that counsels' performance was deficient.

Moreover, Petitioner fails to provide any detail about what these witnesses would have said or how their testimony would have helped. He does not, for example, provide affidavits, declarations or other written statements from these witnesses. Instead, he merely raises the possibility that they might have seen something, or might have done something, that might have been exculpatory. It is well settled, however, that "mere speculation that missing witnesses would have been helpful is insufficient to meet the

petitioner's burden of proof." *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) (*per curiam*) (*citing Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001)). As such, Petitioner cannot demonstrate that counsels' perceived failure caused any harm.

Finally, Petitioner does not explain how the potential presence of someone else's fingerprints at the crime scene creates doubt about his own culpability. Even assuming the fingerprints were tested, and even assuming they were from someone else, it does not follow that this evidence would have improved his chances. Petitioner would have still been confronted with the DNA evidence taken from the victim that connected him to the crimes. Again, Petitioner cannot demonstrate that counsels' perceived deficiency caused any harm.

Ground two is therefore denied.

## C.   *Ground Three*

Petitioner contends counsel provided ineffective assistance insofar as they failed to challenge the State's motion in limine seeking to lay a foundation for the rape kit through a surrogate for the deceased physician who collected the samples. (Doc. 1 at 8). Petitioner failed to raise this ground for relief in his amended motion for post-conviction relief and the State argues he is therefore precluded from raising this ground in this Court. (Doc. 21 at 7-8).[5] Regardless, Petitioner is not entitled to relief because counsel did

---

[5]The State's argument regarding exhaustion is atypical. Petitioner raised this ground for relief in his *initial* motion for post-conviction relief (Doc. 21-1 at 167), but not in his *amended* motion for relief (Doc. 21-1 at 181). The state court's decision was based on the content of the amended motion. (Doc. 21-1 at 194).

not have a basis upon which to challenge the State's motion. *Fencher v. State*, 931 So.2d

184 (Fla. 5th DCA), fully supported the State's motion, which counsel acknowledged:

> I have had the case that [the State] is talking about for several weeks. And
> the case seems to be essentially on point with what we have here. I don't
> have a legal argument that I can make in good faith against the State's
> motion.

(Doc. 21-1 at 36). In this circumstance, Petitioner cannot demonstrate ineffective

assistance.

Ground three is therefore denied.

### D.    *Ground Four*

Petitioner contends counsel provided ineffective assistance insofar as they failed

to investigate potential grounds for excluding the rape kit. (Doc. 1 at 10; Doc. 21-1 at 163).

In particular, Petitioner contends:

> Trial counsel failed to explore possible issues that *might* have given rise to
> a suppression motion but failed to perform this duty. Counsel failed to
> make effort to explore whether failure to have available suspect(s) tested
> was the result of crime lab negligence, failure to adhere to proper protocol,
> chain of custody issues, carelessness in handling sensitive material
> evidence or bad faith issues to which any of such or other failures of duty
> could have been the subject of a suppression motion.

(Doc. 1 at 10) (emphasis added). Petitioner contends that he was forced to plead no

contest as a result of this deficiency. (Doc. 31 at 11). The state court rejected this

contention, reasoning:

> First, as addressed under Ground Two, Defendant's plea of nolo contendere
> also precludes [this claim]. Also, Defendant acknowledged that there was
> no DNA evidence that would acquit him. Lastly, during the motion to
> withdraw the plea addressed at the sentencing hearing, Defendant's trial
> counsel informed the Court that per Defendant's request, he had an
> investigator meet with Defendant to explore Defendant's concerns about

-18-

the DNA evidence. Counsel further stated that per the investigation, there was no evidence of bad faith or intentional malice by law enforcement or the State Attorney's Office toward Defendant that would provide a reason for the Court to allow Defendant to withdraw his plea.

(Doc. 21-1 at 198).

The state court's rejection of this ground for relief constitutes a reasonable application of *Strickland*.

As noted above, Petitioner's contentions regarding counsels' perceived deficiencies are contradicted by his earlier statements that he was "fully satisfied with the way my lawyer has handled this case for me. He/she has done everything I have asked him/her to do" (Doc. 21-1 at 27), and that he was satisfied with counsels' services. (Doc. 21-1 at 52). These statements are presumed true and Petitioner has not demonstrated any basis for the Court to overlook or disregard them. *Blackledge*, 431 U.S. at 73-74 ("the representations of the defendant . . . [at a plea proceeding] constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

Beyond this, Petitioner fails to provide any detail about what additional testing or evaluation would have established and merely speculates that this work would have been helpful. It is firmly established that a state "is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (*per curiam*); *see also Overton v. Jones*, 155 F. Supp. 3d 1253, 1305-06 (S.D. Fla. 2016) (alleged degradation or contamination of DNA

evidence due to pre-indictment delay was speculative and could not establish prejudice component of ineffective assistance claim); *Height v. McLaughlin*, No. CV 309-064, 2010 WL 4831577, at *5 (S.D. Ga. Oct. 26, 2010) (petitioner could not establish prejudice prong of ineffective assistance claim based on failure to conduct DNA testing because the "claim was based on speculation that the DNA testing would have come back in his favor, which was insufficient to show . . . prejudice".). Because Petitioner possesses only speculation about what additional testing and evaluation might have shown, he cannot demonstrate prejudice flowing from counsels' perceived deficiency. *Accord Finch v. Sec'y, Dep't of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016) ("Petitioner did not provide any evidence to support his conclusory assertion that an expert would testify that the DNA evidence was unreliable due to flawed laboratory methodology and protocols.").

Ground four is therefore denied.

## IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). Petitioner has not demonstrated that reasonable jurists would find this Court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petition has failed to make a substantial showing of the denial of a constitutional right. Thus, this Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 2 day of May, 2017.

JOHN ANTOON
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-5 5/22
Counsel of Record
George Girtman

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GEORGE WILLIAM GIRTMAN,**

      **Petitioner,**

**v.**                      **Case No: 6:15-cv-1722-Orl-28KRS**

**SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,**

      **Respondents.**
_____

## JUDGMENT IN A CIVIL CASE

**Decision by Court.**   This action came before the Court and a decision has been rendered.

      **IT IS ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus filed by GEORGE WILLIAM GIRTMAN is hereby DENIED and this case is DISMISSED WITH PREJUDICE.**

Date: May 24, 2017

                  ELIZABETH M. WARREN,
                  ACTING CLERK

                  s/S. Manuel, Deputy Clerk

# CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a) **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

   (b) **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c) **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d) **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5:** The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen V. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F. 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2. **Time for Filing:** The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).