UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                        CASE NO. 6:20-cr-97-Orl-31LRH

JOEL MICAH GREENBERG

### UNITED STATES' RESPONSE IN OPPOSITION
### TO DEFENDANT'S MOTION TO DISMISS

## I.    INTRODUCTION

The stalking charge against the defendant does not arise from his speech about a political opponent's fitness for office. Rather, it is based on his conduct of falsely accusing a teacher of probably the worst allegation that a teacher can be falsely accused of, which is sexual misconduct with a student.

The defendant did not make that false allegation as part of any public debate. Instead, the defendant, assuming the false identity of a "very concerned student" at the school where the teacher worked, claimed to have information about a crime. In letters that were sent privately to nine members of the administration and faculty of the school in October 2019, the defendant falsely alleged that the teacher had engaged in oral and anal sex with a student and had even recorded it on his cell phone. As support for his false allegations, the defendant included a fake Facebook post with the letters (that was never

1

published publicly and was only included to further defame the teacher and falsely accuse the teacher of a crime) that purported to include a statement from the teacher imploring his victim, "Please remember to keep this a secret. I could go to jail."

None of this was done in public. All of the letters were sent privately to the school. And none of it involved anything about the teacher's candidacy for any election or statement about any issue. The entire focus of the private letters was on falsely accusing the teacher of a crime to get law enforcement to investigate and the teacher fired from his job. The defendant's false letters succeeded, and law enforcement began investigating the teacher.

In November 2019, the defendant, using another false identity, created a Facebook profile falsely representing to be a "very concerned teacher" at the school. The defendant used this imposter Facebook account to repeat the same false allegations that the defendant had made in the nine letters by the "very concerned student" and to publicize them.   In a further effort to defame the teacher and bring attention that would make it more likely that the teacher would be investigated by law enforcement and fired from his job, the defendant created a Twitter account using the teacher's name and photograph, which the defendant used to make posts that falsely portrayed the teacher as being a racist.

"False factual statements are not protected under the First Amendment, even if expressed within the context of political debate." *Bennett v. Hendrix*, 325 Fed. App'x 727, 741 (11th Cir. 2009); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues.") (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). In this case, the defendant did not even make any statements "within the context of political debate." Instead, using the fake identities of a student and a teacher, the defendant falsely accused the teacher of a crime and defamed him. The defendant's conduct is not speech, but falls within the categories of conduct that may be prosecuted without offending the First Amendment.

## II.   <u>STATEMENT OF FACTS</u>

On July 15, 2020, the defendant, JOEL MICAH GREENBERG, was charged in a Superseding Indictment with stalking, in violation of 18 U.S.C. §§ 2261A(2) 2261(b)(5), and 2 (Count One); unlawful use of a means of identification of another person, in violation of 18 U.S.C. § 1028(a)(7) (Count Two); production without lawful authority of a false identification document, in violation of 18 U.S.C. § 1028(a)(1) (Counts Three and Four); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts Five and Six). Doc. 28.

Count One alleges that from on or about a date unknown, but not later than on or about October 10, 2019, and continuing through and including on or about November 15, 2019, the defendant (Doc. 28 at 3),

> with the intent to harass and intimidate another person, that is the school employee, did knowingly use the mail, an interactive computer service, an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate commerce to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to a person, that is, the school employee.

The defendant's course of conduct consisted of three parts. *Id.* at 1-3. First, the defendant caused letters to be mailed to the school where the teacher was employed. The letters falsely represented that they were being sent by an anonymous "very concerned student," and falsely claimed that the "very concerned student" had information that the teacher had engaged in sexual misconduct with a student. These letters specifically accused the teacher, by name, of repeatedly sexually assaulting a student, both orally and anally, and recording one of the assaults using a cell phone. Second, the defendant caused a Facebook account to be set up that falsely claimed to belong to a "very concerned teacher" at the school, and again falsely alleged that the teacher had engaged in sexual misconduct with a student. These postings falsely represented, among other things, that the victim had been involved in the "rape of a male student who came to [the teacher] to seek counsel on the student's

4

sexuality" and that the teacher had videotaped one of the "sexual encounter[s]" with the student. Third, the defendant caused a Twitter account to be set up using the name and photograph of that teacher, without his knowledge or consent, and caused postings to be made using that account that falsely portrayed the teacher as being a segregationist in favor of white supremacy.

Count Two charges the defendant with identity theft, in violation of 18 U.S.C. § 1028(a)(7), for his use of the name of the teacher on Twitter to aid and abet, and in connection with, the stalking conduct alleged in Count One.

## III.   ARGUMENT AND CITATION OF AUTHORITIES

### A.   § 2261A(2)(B) Is Not Unconstitutionally Overbroad on Its Face

The offense defined in § 2261A(2)(B) is not facially overbroad. Under the First Amendment overbreadth doctrine, a Court may only find a statute to be facially overbroad based on a showing that the law "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep[.]'" *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). The defendant has not, and cannot, make such a showing.

The statute penalizes whoever:

> with the intent to kill, injure, harass, [or] intimidate . . . another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate

5

commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that -- causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to that person, an immediate family member of that person, [or] a spouse or intimate partner of that person.

18 U.S.C. § 2261A(2)(B). The statute requires proof of four elements: (1) the defendant engaged in a course of conduct[1]; (2) the defendant acted with the intent to kill, injure, harass, or intimidate another person; (3) the defendant used the mail or a facility of interstate commerce; and (4) the defendant's course of conduct caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress. *United States v. Ackell*, 907 F.3d 67 (1st Cir. 2018).

All three United States courts of appeals that have considered facial overbreadth challenges to 18 U.S.C. § 2261A(2)(B) have rejected those challenges. *Id.* at 71-74; *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014); *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014); *United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2012); *see also United States v. Gonzalez*, 905 F.3d 165, 190 n.10 (3rd Cir. 2018). These courts have done so for the same two reasons.

First, the statute is directed towards "courses of conduct," not speech. "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or conduct necessarily

---

[1] Course of conduct is defined as, "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).

6

associated with speech." *Hicks*, 539 U.S. at 124. "By its own terms, § 2261A(2)(B) regulates not speech, but … 'course[s] of conduct.'" *Ackell*, 907 F.3d at 73; *see also Petrovic*, 701 F.3d at 856; *Osinger*, 753 F.3d at 944. As recognized in *Ackell*, while § 2261A(2)(B) could theoretically reach expressive conduct, the plain terms of the statute cover "countless amounts of unprotected conduct," including non-speech conduct (such as mailing envelopes of white powder). 907 F.3d at 73. As a result, "it does not necessary follow that the statute targets speech" just because it can be committed using a means of communication. *Id. Cf. United States v. Eckhardt*, 466 F.3d 938 (11th Cir. 2006) (rejecting facial challenge to statute criminalizing telephone calls made with intent to abuse, threaten, or harass).

Second, to the extent § 2261A(2)(B) does proscribe speech, the statute's criminal intent requirements narrow the statute's scope to speech that is unlikely to be constitutionally protected. "Because the statute requires both malicious intent on the part of the defendant and substantial harm to the victim, '[i]t is difficult to imagine what constitutionally-protected speech would fall under these statutory provisions.' Most, if not all, of the [statute's] legal applications are to conduct that is not protected by the First Amendment." *Petrovic*, 701 F.3d at 856 (citation omitted); s*ee also Osinger*, 753 F.3d at 944 ("We agree with the Eighth Circuit's rationale [in *Petrovic*] that, because 18 U.S.C. § 2261A

7

proscribes harassing and intimidating conduct, the statute is not facially invalid under the First Amendment."). Indeed, § 2261A(2)(B) "is clear in that it targets conduct, specifically 'conduct performed with serious criminal intent,' rather than speech protected by the First Amendment." *Ackell*, 907 F.3d at 74. In particular, the terms "harass" and "intimidate" refer to conduct that amounts to criminal harassment and intimidation, which constitute either "true threats" or speech that is "integral to proscribable criminal conduct," both of which are categories of speech beyond the First Amendment's protection. *Id*. at 76. In an analogous context, the Eleventh Circuit, reviewing a conviction for a statute that criminalized harassing and threatening telephone calls, similarly concluded that phone calls made with "an overarching purpose…to harass and frighten" were "not constitutionally protected." *Eckhardt*, 466 F.3d at 944.

Because the statute targets conduct, not speech, and the speech that it does proscribe is speech made with a criminal intent, the statute does not punish a substantial amount of protected free speech in relation to the statute's plainly legitimate sweep. Therefore, the statue is not facially overbroad.

### B.   The Statute is Constitutional As Applied to the Defendant

The statute is constitutional as applied to the defendant and his course of conduct. The Superseding Indictment charges the defendant with engaging in a multi-faceted, defamatory stalking campaign against the teacher. The gravamen

8

of the charges involve levying numerous anonymous false allegations, transmitted via the mail and the internet, that the teacher sexually assaulted a student at the school where he works. These allegations were directed to the teacher's co-workers and employer, and anyone who would come across the fictitious social media account where these false allegations were posted.

The defendant's conduct that formed the basis of the § 2261A charge, to the extent that it involved speech, did not involve protected speech. Courts look first to the nature of and content of the speech at issue to determine whether it is protected by the First Amendment. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) (speech integral to criminal conduct unprotected); *see also United States v. Clum*, 607 F. App'x 922, 928 (11th Cir. 2015) (speech integral to criminal conduct "may be restricted and punished without raising a Constitutional problem") (citing *Giboney*). Likewise, defamatory speech can be proscribed without implicating the First Amendment. *United States v. Stevens*, 559 U.S. 460, 468–69 (2010). Thus, the defendant's effort to cast § 2261A as a content-based restriction on speech is unavailing. The Supreme Court has held that defamatory statements are not protected by the First Amendment, reasoning that "[r]esort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument."

9

*Beauharnais v. Illinois*, 343 U.S. 250, 257 (1952). "And while statements of personal opinion are protected under the First Amendment, 'there is no constitutional value in false statements of fact.'" *Gonzalez*, 905 F.3d at 191-92 (citing *Gertz*, 418 U.S. at 339-40).

Similarly, speech integral to criminal conduct is unprotected. *Ackell*, 907 F.3d at 75. As the First Circuit explained in rejecting as-applied and facial challenges to the statute in *Sayer*, "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because it was in part initiated, evidenced, or carried out by means of language." 748 F.3d at 433-34. Relatedly, as the First Circuit also held, criminal harassment is likewise not protected by the First Amendment. *Ackell*, 907 F.3d at 76 (noting that "criminal harassment" is "unprotected because it constitutes true threats or speech that is integral to proscribable criminal conduct.").

Applying these principles to § 2261A prosecutions, the First Circuit and other courts have repeatedly rejected as-applied challenges to § 2261A in similar instances. In *Gonzalez*, the Third Circuit rejected an as-applied challenge to § 2261A, where the defendants publicly (and falsely) accused the victim (the defendants' ex-wife and ex-sister-in-law) of, among other things, sexually molesting her children. 905 F.3d at 192. The defendants sent letters to media outlets, posted YouTube videos online, and created websites containing these

allegations. *Id.* at 175. They argued that their conduct was protected speech because they were expressing sincerely held beliefs. *Id.* at 190. The Court rejected their arguments and held that the conduct was unprotected because it was both defamatory and speech-integral to criminal conduct. *Id.* at 191–92. The Court reasoned that the defendants' speech served "no legitimate purpose other than to harass and intimidate," conduct that is illegal under § 2261A. *Id.* at 193; *see also Osinger*, 753 F.3d at 947 (rejecting as-applied challenge where defendant sent text messages and emails with sexually-explicit photographs of and demeaning content about the victim (his ex-girlfriend) to the victim and others and posted them on his Facebook page, reasoning that "any expressive aspects of Osinger's speech were unprotected as 'integral to criminal conduct' in intentionally harassing, intimidating or causing substantial emotional distress to [the victim]."); *Petrovic,* 701 F.3d at 855-856 (rejecting as-applied challenge where defendant posted sexually explicit images of his victim (his ex-wife) on his website and mailed postcards of these images, along with abusive messages like "I am just a whore 4 sale," to her workplace and acquaintances, reasoning that the speech was integral to criminal conduct and therefore unprotected).

A central component of this case is the defendant's repeated publication of false and defamatory statements anonymously alleging that the teacher sexually assaulted, both orally and anally, a student under his care. Contrary to

the defendant's position, the defamatory allegations were not speech "questioning a political opponent's fitness to hold office." Doc. 35 at 6-7.

"False factual statements are not protected under the First Amendment, even if expressed within the context of political debate." *Hendrix*, 325 Fed. App'x at 741; *see also Gertz*, 418 U.S. at 340 ("[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues.") (citation omitted). In this case, the defendant did not make any statements "within the context of political debate." Instead, using the fake identities of a student and a teacher, the defendant falsely accused the teacher of a crime. As the Third Circuit found in *Gonzalez*, the defendant's speech is "unquestionably defamatory" and thus holds no constitutional value. 905 F.3d at 192. His conduct therefore falls within the categories of conduct that may be prosecuted without offending the First Amendment.

The defendant did not publicly proclaim any of these allegations himself. Contrary to the defendant's assertion, the anonymous nature of the allegations does, in fact, "tip the scales" in determining whether the conduct is protected under the First Amendment; not because anonymous speech is not protected, but because the anonymous nature of completely fabricated criminal allegations is evidence of the defendant's criminal intent to harass and intimidate, rather

than to simply question one's fitness for office. The baseless, unfounded, and anonymous allegations concerning the rape of a child serve no legitimate purpose other than to harass and intimidate his victim, in a misguided and desperate attempt to win an election and get his victim arrested and fired.

Next, the defendant argues that two district court cases—*United States v. Cook,* 2020 WL 3958194 (N.D. Miss. Jul. 13, 2020) and *United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011) —have "already found" that § 2261A is unconstitutional as applied to similar circumstances. Doc. 35 at 15. But those cases are readily distinguishable from this case, and do not support the defendant's argument.

First, in *Cook*, Cook, who had been prosecuted and acquitted, made a number of posts on his personal Facebook page criticizing the criminal justice system. He criticized by name several judges, prosecutors, and law enforcement officers, and made a number of ominous-sounding posts referencing guns and disclosing information about his targets' families and their home addresses. 2020 WL 3958194 at *1–*3. The court concluded that the posts did not fall under the "true threat" category of speech that is unprotected by the First Amendment because, "when read in context," the posts "lack[ed] entirely the specificity required" to remove the speech from constitutional protection. *Id*. at *6–*7. The court concluded that Cook's posts were "an attempt by Mr. Cook

13

to expose what he viewed as misconduct within the [justice system]" and therefore were protected as speech relating to matter of public concern. *Id.* at *7. Unlike the instant case, the district court did not consider whether Cook's posts fell under the "speech integral to criminal conduct" exception to the First Amendment. Here, the defendant is not being prosecuted for making intemperate public remarks about a public figure on social media. Rather, he is being prosecuted for stealing the victim's identity and sending false, defamatory statements to the victim's employer. The defendant's speech was not public, and did not touch on the victim's fitness for public office; he sent anonymous letters, privately, making false allegations to the victim's employer. His speech was defamatory and integral to his criminal conduct, and thus is unprotected by the First Amendment.

*Cassidy* also involved social media posts criticizing a well-known public figure—in that case, a religious leader with whom Cassidy had had a falling out. After his ouster from a religious community, Cassidy created thousands of posts on a blog and on Twitter in which he challenged the religious leader's character and qualifications for her position. 814 F. Supp. 2d. at 582–83. The district court noted that the indictment was "not limited to categories of speech that fall outside of First Amendment protection—obscenity, fraud, defamation, true threats, incitement or speech integral to criminal conduct." *Id.* at 583. Thus, the

14

court concluded that Cassidy's speech was protected, and, like the *Cook* court, analyzed the constitutionality of the indictment as a content-based restriction. *Id*. The Cassidy case, like the Cook case, has no bearing on the indictment in the instant case, which plainly concerns unprotected speech that is defamatory and integral to criminal conduct.

The defendant seems to argue that only messages that are sent directly to a victim can support stalking charges and that since his speech was directed at the public and at individuals other than the teacher, his conduct is protected because the victim can simply "avert his eyes from the social media platforms, and his ears from rumor and innuendo [sic]." Doc 35 at 14, 17.

This misstates the facts and the law. As alleged in the Superseding Indictment, the defendant made anonymous posts on Facebook, mailed anonymous allegations to the teacher's employer, and impersonated the teacher on Twitter. As a result of these allegations, the teacher was investigated by law enforcement and took administrative leave from his job as a school-teacher. The defendant's allegations went well beyond speech in a public forum. The victim could not avert his eyes and ears from the real-life consequences of being a teacher under criminal investigation for alleged sexual abuse of a student.

His argument also ignores the law. The defendant cites no support for the proposition that online postings cannot form the basis of a § 2261A charge.

15

Indeed, many of the cases described above and elsewhere involved defendants who primarily or exclusively made public comments about the victim online, whether via YouTube videos and websites in the victim's name in *Gonzalez* or the fake Facebook pages in the victim's name in *Osinger*. Online comments regularly form the basis of cyberstalking charges - indeed the very name of the crime, cyberstalking, highlights the centrality of the online aspects of the crime.

### C.   The Statute Is Not Void for Vagueness

Section 2261A(2) is not unconstitutionally vague. A statute is void for vagueness only where (1) it fails "to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits," or (2) it authorizes or encourages "arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). A statute need not define the offense with "mathematical certainty." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).

As an initial matter, the defendant cannot challenge § 2261A(2)(B) for vagueness because his conduct clearly falls within the ambit of the statute's prohibitions. *See Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). In *Bowker*, the court found that the defendant's threatening and harassing conduct "clearly fell within the statute's prohibition" and was the type of conduct that "lies at the core" of what the harassment statute was designed

16

to prohibit. *United States v. Bowker*, 372 F.3d 365, 383 (6th Cir. 2004).[2] The situation is the same in this case where the defendant stalked his victim over the course of several weeks by falsely accusing the victim of sexual misconduct with a student in an effort to get the victim investigated by law enforcement and fired.

The defendant cannot credibly argue that his behavior falls outside the core illegal activity that § 2261A(2) attempts to prevent simply because he now claims that he was engaged in political campaigning. The fact that his victim was a political opponent does not diminish the applicability of the statute to his criminal conduct. It simply explains his motive for stalking in the first place.

Five circuits – the Third, Fourth, Fifth, Sixth, and Ninth – have found that § 2261A(2) is not unconstitutionally vague. *See Gonzalez*, 905 F.3d at 190 n.10; *United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015); *Osinger*, 753 F.3d at 944-45; *United States v. Shrader*, 675 F.3d 300, 309-12 (4th Cir. 2012); *Bowker*, 372 F.3d at 372. Section 2261A(2) provides sufficient notice of its prohibitions "because citizens need not guess what terms such as 'harass' and 'intimidate' mean." *Bowker*, 372 F.3d at 380. Instead, the meaning of words like "harass" and "intimidate" used in the stalking statute "can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words

---

[2] Judgment vacated on other grounds, (543 U.S. 1182 (2005)), and pertinent sections reinstated. 125 F. App'x 701 (6th Cir. 2005).

themselves because they possess a common and generally-accepted meaning." *Id.* at 380-81 (citation omitted); *see also Conlan*, 786 F.3d at 386 ("[§ 2261A] need not define 'harass' and 'intimidate' because they are not obscure words and are readily understandable by most people. Any vagueness concerns are further alleviated by the list of easily understood terms surrounding 'harass' and 'intimidate'—'kill, injure . . . or cause substantial emotional distress[.]'"); *Shrader*, 675 F.3d 311 ("[A] common sense reading of the statute adequately defines the prohibited conduct. 'Harass' and 'intimidate' are not obscure words."); *Osinger*, 753 F.3d at 945 (same).

Two other aspects of § 2261A(2) support the conclusion that the statute is not vague. First, § 2261A(2) contains a specific intent requirement, which vitiates concerns that might otherwise exist about the vagueness of the statute. *See Conlan*, 786 F.3d at 386 ("Any vagueness concerns are further alleviated . . . by the statute's scienter requirement, which narrows its scope and mitigates arbitrary enforcement."); *Shrader*, 675 F.3d 311 (finding that § 2261A's intent requirements weighed against striking down the statute on vagueness grounds, since "'a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.'") (citation omitted); *Osinger*, 753 F.3d at 945 (finding that the "scienter requirement . . . thoroughly undermines Osinger's contention that he

18

was unable to discern that his harassment of V.B. was proscribed by 18 U.S.C. § 2261A."); *Bowker*, 372 F.3d at 383 ("the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid") (citation omitted). Second, the concrete harm requirement of § 2261(A)(2)(B), which requires that the charged conduct causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress, further circumscribes the conduct prohibited by the statute and puts the public on notice as to what conduct is forbidden. *Bowker*, 372 F.3d at 381-82.

Because the defendant's conduct falls within the core of conduct prohibited by § 2261A(2), and the statute's language is sufficiently precise to put the public on notice as to what conduct is proscribed and to guard against arbitrary and discriminatory enforcement, the defendant's vagueness challenge must be rejected.

**D.   <u>The Indictment Adequately States an Offense</u>**

The defendant's criticism of the Indictment is foreclosed by the very precedent cited in his motion. "For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (citation omitted). "An indictment not framed

to apprise the defendant with reasonable certainty, of the nature of the accusation against him is defective, although it may follow the language of the statute." *Id.* "Furthermore, if the indictment tracks the language of the statute, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id.*

The indictment in this case specifies the time period of the defendant's stalking behavior (beginning no later than October 10, 2019 through November 15, 2019) and identity theft (November 2, 2019), the facilities of interstate commerce the defendant used (the mail, an interactive computer service, and an electronic communication service), and alleges all of the elements necessary to make out violations of 18 U.S.C. §§ 2261A(2)(B) and 1028(a)(7). Paragraphs one through five of the Superseding Indictment provide such a statement of the facts and circumstances to inform the defendant of the specific offense with which he is charged, as is prescribed by *Sharpe*. Nothing more is required.

In sum, the stalking statute is constitutional, both on its face and applied to the defendant's conduct. The Superseding Indictment also adequately alleges violations of 18 U.S.C. §§ 2261A(2)(B) and 1028(a)(7). For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's Motion to Dismiss Counts One & Two.

20

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney


By:   */s/ Jennifer M. Harrington*
JENNIFER M. HARRINGTON
Assistant United States Attorney
Florida Bar No. 0117748
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:     (407) 648-7500
Facsimile:      (407) 648-7643
E-mail: jennifer.harrington2@usdoj.gov

21

**U.S. v. JOEL MICAH GREENBERG      Case No. 6:20-cr-97-Orl-31LRH**

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mark L. Horwitz, Esquire

Vincent A. Citro, Esquire

*/s/ Jennifer M. Harrington*
JENNIFER M. HARRINGTON
Assistant United States Attorney
Florida Bar No. 0117748
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:      (407) 648-7500
Facsimile:      (407) 648-7643
E-mail: jennifer.harrington2@usdoj.gov