FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2021 MAR 30  PM 4: 09

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

v.

JOEL MICAH GREENBERG

CASE NO. 6:20-cr-97-GAP-LRH
18 U.S.C. § 1591(a)
18 U.S.C. § 2722
18 U.S.C. § 1028(a)(7)
18 U.S.C. § 1028(a)(1)
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1343
18 U.S.C. § 1957
18 U.S.C. § 2261A(2)
18 U.S.C. § 371
18 U.S.C. § 201(b)(1)(B)
18 U.S.C. § 287
18 U.S.C. § 641

## THIRD SUPERSEDING INDICTMENT

The Grand Jury charges:

### Introduction

1.     In or about January 2017, JOEL MICAH GREENBERG assumed office
as the elected Tax Collector in Seminole County, in the Middle District of Florida.  As
set out herein, JOEL MICAH GREENBERG used his position as Seminole County
Tax Collector to engage in, and facilitate, the commission of federal offenses,
including sex trafficking of a child, illegally obtaining personal information from a
motor vehicle record, unlawful use of a means of identification of another person,
illegally producing identification and false identification documents, aggravated
identity theft, wire fraud, and money laundering.  JOEL MICAH GREENBERG also
stalked a political opponent.  After his arrest in this case, and while he was on

conditions of release, JOEL MICAH GREENBERG conspired with an employee of the Small Business Administration (SBA) and another individual to submit false claims for Economic Injury Disaster Loans and to bribe the SBA employee.

## COUNT ONE
### (Sex Trafficking of a Child)

### A. Introduction

At times relevant to this Third Superseding Indictment:

1.     As used herein, "Minor Victim" refers to a female who is known to the Grand Jury, and who had attained the age of 14 years but had not attained the age of 18 years at the time of the offenses alleged in Counts One, Two, and Four of this Third Superseding Indictment.

2.     As used herein, the term "motor vehicle record" means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles.

3.     As used herein, the term "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

4.     The Florida Driver and Vehicle Information Database (DAVID) was a database of motor vehicle records for the State of Florida.  Individuals with access to DAVID were able to obtain the personal information from the motor vehicle records

2

of millions of current and former residents of Florida.  DAVID was an Internet based system that could be accessed over the Internet, an instrumentality and facility of interstate commerce, from any secure computer using the Internet uniform resource locator of https://david.flhsmv.gov.  DAVID was used in and affecting interstate commerce.

5.      Some employees of the Seminole County Tax Collector's Office had access to DAVID.  During the time when he was the Seminole County Tax Collector, JOEL MICAH GREENBERG had a user account with DAVID.

6.      One of the services provided by some of the branches of the Seminole County Tax Collector's Office was the issuance of Florida driver licenses and Florida identification cards.  These services included renewal of Florida driver licenses and Florida identification cards, replacement of Florida driver licenses and Florida identification cards, and transfers of out-of-state and certain out-of-country licenses to Florida.

7.      Some customers who came to the Seminole County Tax Collector's Office to obtain a Florida driver license would surrender their old or existing driver licenses to the Seminole County Tax Collector's Office.  The Seminole County Tax Collector's Office would shred surrendered driver licenses at a later time.

8.      During the time when he was the Seminole County Tax Collector, JOEL MICAH GREENBERG used his access to the Seminole County Tax Collector's Office to take surrendered driver licenses before they were shredded.  JOEL MICAH GREENBERG also used his access to DAVID to run searches that were not for any

3

permissible use as permitted under 18 U.S.C. § 2721(b).  As a result of those searches of DAVID, JOEL MICAH GREENBERG obtained, disclosed, transferred, and used personal information of individuals whose personal information was in a motor vehicle record, including individuals with whom JOEL MICAH GREENBERG was engaged in "sugar daddy" relationships.

9.    JOEL MICAH GREENBERG used a surrendered driver license that he had taken and personal information that he obtained and disclosed from DAVID to cause fake driver licenses to be produced that had his photograph but the personal information of the victims.  JOEL MICAH GREENBERG also obtained and disclosed personal information from motor vehicle records in DAVID for uses not permitted under 18 U.S.C. § 2721(b), including to produce a false identification document and to facilitate his efforts to engage in commercial sex acts as defined by 18 U.S.C. § 1591(e)(3).

## B. The Charge

10.    On a date unknown to the Grand Jury, but between in or about May 2017 and in or about November 2017, in the Middle District of Florida, and elsewhere, the defendant,

### JOEL MICAH GREENBERG,

did knowingly, in and affecting interstate commerce, recruit, entice, obtain, maintain, patronize, and solicit by any means the Minor Victim, who had attained the age of 14 years but had not attained the age of 18 years, having had a reasonable opportunity to observe the Minor Victim, and knowing and in reckless disregard of the fact that the

4

Minor Victim had not attained the age of 18 years and would be caused to engage in a commercial sex act as defined by 18 U.S.C. § 1591(e)(3).

In violation of 18 U.S.C. §§ 1591(a), (b)(2), (c), (e)(3), and 2.

## COUNTS TWO AND THREE
### (Driver's Privacy Protection Act Violations)

1.     The Grand Jury hereby realleges paragraphs one through nine of Count One of this Third Superseding Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

2.     On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

### JOEL MICAH GREENBERG,

did knowingly obtain and disclose personal information from a motor vehicle record for a use not permitted under 18 U.S.C. § 2721(b), as follows:

| Count | Date | Personal Information Obtained and Disclosed |
|-------|------|---------------------------------------------|
| TWO   | September 4, 2017 | The photograph and driver identification number of the Minor Victim |
| THREE | November 18, 2017 | The photograph and driver identification number of R.Z. |

In violation of 18 U.S.C. §§ 2722, 2723, and 2.

## COUNT FOUR
### (Unlawful Use of Means of Identification of Another Person)

1.     The Grand Jury hereby realleges paragraphs one through nine of Count One of this Third Superseding Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

2.     On or about the date set forth below, in the Middle District of Florida, and elsewhere, the defendant,

**JOEL MICAH GREENBERG,**

did knowingly transfer, possess, and use in and affecting interstate commerce, without lawful authority, a means of identification of another person, specifically, the name of the victim identified below, knowing that such means of identification belonged to an actual person, with the intent to commit, to aid and abet, and in connection with, any unlawful activity that constitutes a violation of Federal law, namely, violations of 18 U.S.C. §§ 1591(a), (b)(2), (c), (e)(2), 2722 and 2723, as charged in Counts One and Two of this Third Superseding Indictment, as follows:

| Count | Date | Means of Identification |
|-------|------|------------------------|
| FOUR | September 4, 2017 | The name of the Minor Victim |

In violation of 18 U.S.C. §§ 1028(a)(7), 1028(b)(2), and 2.

**COUNT FIVE**
**(Production of an Identification Document)**

On or about November 11, 2015, in the Middle District of Florida, and elsewhere, the defendant,

**JOEL MICAH GREENBERG,**

did knowingly and without lawful authority produce an identification document, as defined in 18 U.S.C. § 1028(d)(3), that is and appears to be a driver's license, and the production of which was in and affected interstate and foreign commerce, and the identification document was transported in the mail in the course of the production,

in that, the defendant used the Internet, an instrumentality and facility of interstate commerce, to obtain a replacement Florida driver license of R.Z. that the defendant paid for over the Internet using a credit card belonging to the defendant and that was sent by United States Mail to an address in the Middle District of Florida.

In violation of 18 U.S.C. §§ 1028(a)(1), 1028(b)(1), and 2.

### COUNT SIX
**(Aggravated Identity Theft)**

On or about November 11, 2015, in the Middle District of Florida, and elsewhere, the defendant,

**JOEL MICAH GREENBERG,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically, the name and date of birth of the actual person identified below, during and in relation to a felony violation of production without lawful authority of an identification document, in violation of 18 U.S.C. § 1028(a)(1) as charged in Count Five of this Third Superseding Indictment, knowing that such means of identification belonged to an actual person, in that the defendant transferred, possessed, and used the name, date of birth, and address of R.Z. to access the Florida Department of Highway Safety and Motor Vehicle's Internet site to obtain a replacement license of R.Z.

In violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

## COUNTS SEVEN AND EIGHT
### (Production of Identification and False Identification Documents)

1.       The Grand Jury hereby realleges paragraphs two through nine of Count One of this Third Superseding Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

2.       On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

**JOEL MICAH GREENBERG,**

did knowingly and without lawful authority produce an identification document, as defined in 18 U.S.C. § 1028(d)(3), and a false identification document, as defined in 18 U.S.C. § 1028(d)(4), that is and appears to be a driver's license, and the production of which was in and affected interstate and foreign commerce, as follows:

| Count | Date | Identification Document/ False Identification Document |
|---|---|---|
| SEVEN | On a date unknown to the Grand Jury, but between on or about November 11, 2017 and on or about June 23, 2020 | Florida driver's license of R.Z. with the defendant's photograph |
| EIGHT | On a date unknown to the Grand Jury, but between on or about September 21, 2018 and on or about June 23, 2020 | Puerto Rico driver's license of E.J.C.C. with the defendant's photograph |

In violation of 18 U.S.C. §§ 1028(a)(1), 1028(b)(1), and 2.

8

## COUNTS NINE AND TEN
### (Aggravated Identity Theft)

1.      The Grand Jury hereby realleges paragraphs two through nine of Count One of this Third Superseding Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

2.      On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

### JOEL MICAH GREENBERG,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically, the names, dates of birth, and driver's license number of the actual people identified below, during and in relation to a felony violation of production without lawful authority of an identification document and a false identification document, in violation of 18 U.S.C. § 1028(a)(1) as charged in Counts Seven and Eight of this Third Superseding Indictment, knowing that such means of identification belonged to an actual person, as follows:

| Count | Date | Means of Identification |
|-------|------|-------------------------|
| NINE  | On a date unknown to the Grand Jury, but between on or about November 11, 2017 and on or about June 23, 2020 | The name, date of birth, and driver's license number of R.Z. |
| TEN   | On a date unknown to the Grand Jury, but between on or about September 21, 2018 and on or about June 23, 2020 | The name, date of birth, and driver's license number of E.J.C.C. |

In violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

9

## COUNTS ELEVEN THROUGH TWENTY
### (Wire Fraud)

### A. Introduction

At times relevant to this Third Superseding Indictment:

1.      JOEL MICAH GREENBERG was the elected Tax Collector of Seminole County, in the Middle District of Florida.

2.      "Entity A" was a digital asset exchange and custodian headquartered outside of Florida.  Entity A allowed both individual and institutional customers to buy, sell, and store digital assets, such as cryptocurrencies like Bitcoin.

3.      "Entity B" offered customers the ability to open accounts that could be used to purchase and trade cryptocurrency and other assets.

4.      On or about July 19, 2019, Articles of Organization were submitted to the Florida Secretary of State for Government Blockchain Systems, LLC ("Government Blockchain Systems").  JOEL MICAH GREENBERG and another individual were designated as managers of the company, and JOEL MICAH GREENBERG was designated as its registered agent.  Revised Articles of Amendment, dated September 23, 2019, were submitted to the Florida Department of State to make the Tax Collector's Office the sole member of the entity and to designate counsel of the Tax Collector's Office as the registered agent.

5.      Fifth Third Bank, Florida Capital Bank, and Silvergate Bank were federally financial institutions whose deposits were insured by the Federal Deposit

Insurance Corporation. Fairwinds Credit Union was a federally financial institution whose deposits were insured by the National Credit Union Share Insurance Fund.

## B. Scheme and Artifice

6.     Beginning on an unknown date, but beginning at least as early as in or about January 2017, and continuing thereafter through and including in or about June 2020, in the Middle District of Florida, and elsewhere, the defendant,

## JOEL MICAH GREENBERG,

did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

## C. Manner and Means of the Scheme

7.     The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

a.     It was part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did unlawfully devise and execute a scheme and artifice to defraud the Seminole County Tax Collector's Office and Seminole County of money and property by means of materially false and fraudulent pretenses, representations and promises.

b.     It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did use his position as Seminole County Tax Collector to embezzle and divert over $400,000 to benefit himself personally, including by:

11

(1)     using his access to the funds and accounts of the Tax Collector's Office to purchase cryptocurrency for himself;

(2)     using the funds, accounts, and assets of the Tax Collector's Office to operate a business that sold cryptocurrency mining machines to benefit himself;

(3)     using the funds, accounts, and assets of the Tax Collector's Office to mine cryptocurrency to benefit himself; and,

(4)     using his access to the funds and accounts of the Tax Collector's Office to purchase personal items for himself, such as autographed Michael Jordan and Kobe Bryant memorabilia.

c.     It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did use his American Express cards from the Tax Collector's Office to purchase cryptocurrency for himself, contrary to the policies of the Tax Collector's Office.

d.     It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did set up a bank account at Fifth Third Bank in the name of the Tax Collector's Office for which he was the sole signatory.

e.     It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did use the Fifth Third Bank account to receive funds from the Tax Collector's Office that JOEL MICAH GREENBERG had diverted from the Tax Collector's Office.

f.      It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did falsely represent in the memo lines of checks the purpose of the transactions in an attempt to conceal the true personal nature of the transactions.

g.      It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did use some of the diverted funds as loans to benefit himself personally, including by obtaining a $100,000 cashier's check that JOEL MICAH GREENBERG deposited into his personal account at Fairwinds Credit Union.

h.      It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did use $100,000 of funds of the Tax Collector's Office to purchase cryptocurrency for himself using an account that belonged to him at Entity A.

i.      It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did falsely represent that the diverted funds had been invested for the Tax Collector's Office.

j.      It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did conceal his use of Tax Collector's Office funds to purchase cryptocurrency for himself from the employees and auditors of the Tax Collector's Office, including by executing false management representation letters.

k.      It was a further part of the scheme and artifice to defraud that

13

JOEL MICAH GREENBERG would and did falsely represent that he was going to use $200,000 in funds for an investment for the Tax Collector's Office when, in truth and in fact, as the defendant then and there well knew, JOEL MICAH GREENBERG intended to use the funds to purchase cryptocurrency for himself.

l.    It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did set up an account at Entity A in the name of the Tax Collector's Office that was controlled by him.

m.    It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did divert, by use of an interstate wire, $200,000 in funds to the account at Entity A that he had set up in the name of the Tax Collector's Office and that he controlled.

n.    It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did use the $200,000 in funds that he had diverted to purchase cryptocurrency that he withdrew into wallets that were controlled by him.

o.    It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG, after becoming aware of the Secret Service investigation, would and did use funds obtained from a family member to provide the Tax Collector's Office with a cashier's check and a memorandum that falsely represented that the $200,000 he had diverted had been used to "provide liquidity for stablecoin project," that the "[p]roject has been delayed until further notice," and that the funds were returned.

14

p.     It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did cause Government Blockchain Systems to be established.

q.     It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did use interstate wires to purchase cryptocurrency mining machines by using his American Express card from the Tax Collector's Office.

r.     It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did set up a bank account at Fifth Third Bank in the name of Government Blockchain Systems for which he was the sole signatory.

s.     It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did divert $65,860 in Tax Collector's Office funds into the account that he controlled at Fifth Third Bank for Government Blockchain Systems.

t.     It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did obtain $68,087.46 from a contractor with the Tax Collector's Office, which was deposited into the account that JOEL MICAH GREENBERG controlled at Fifth Third Bank for Government Blockchain Systems.

u.     It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did cause a "Joint Venture Agreement" to

15

be executed that falsely represented that the Joint Venture was involved in the research and development of blockchain based systems and application for private and public sector use and that Government Blockchain Systems and the contractor would maintain separate accounts which will contain their own capital contributions as may be used by the Joint Venture, when, in truth and in fact, as the defendant then and there well knew, the funds were not maintained in separate accounts and JOEL MICAH GREENBERG used most of the funds to benefit himself, including by using some of the funds to purchase cryptocurrency mining machines that he resold for a profit.

   v.   It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did use interstate and foreign wires to transfer funds from the Fifth Third account of Government Blockchain Systems to accounts at Entity B and another entity that were controlled by him, which funds JOEL MICAH GREENBERG used to purchase cryptocurrency for himself.

   w.   It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did use a portion of the cryptocurrency he had obtained by diverting funds from the Tax Collector's Office and Government Blockchain Systems to purchase cryptocurrency mining machines.

   x.   It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did establish an account on Amazon for Government Blockchain Systems to sell the cryptocurrency mining machines that he

had purchased with some of the funds from the Tax Collector's Office and Government Blockchain Systems.

      y.    It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did keep the proceeds that were received from sales of cryptocurrency machines that were made on Amazon.

      z.    It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did conceal and cover up his scheme, by:

      (1)    Failing to provide documentation related to his use of Tax Collector's Office funds;

      (2)    Falsely representing the purpose of Government Blockchain Systems to employees and auditors of the Tax Collector's Office; and,

      (3)    Falsely representing the cost of the cryptocurrency mining machines that he purchased to avoid having to provide additional details about those purchases.

      aa.    It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did use interstate wires in furtherance of the scheme and artifice to defraud, including by using interstate wires to send emails to employees of Entity A located outside of Florida, by using interstate wires to receive emails in the Middle District of Florida from employees of Entity A located outside of Florida, by using interstate and foreign wires to send funds from bank accounts located in the Middle District of Florida to accounts located outside of Florida, by using interstate wires to establish and maintain a seller account with Amazon, and by

processing credit card payments in the Middle District of Florida that were routed using servers located outside of Florida.

bb.    It was a further part of the scheme and artifice to defraud that JOEL MICAH GREENBERG would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme and the acts committed in furtherance thereof.

### D. **Interstate Wires**

8.    On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

**JOEL MICAH GREENBERG,**

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Interstate Wire |
|---|---|---|
| **ELEVEN** | November 8, 2017 | A credit card charge of $1,500 to purchase cryptocurrency using an American Express card of the Tax Collector's Office in the Middle District of Florida, which transaction was processed by a server located outside of Florida |
| **TWELVE** | December 4, 2017 | An interstate email from JOEL MICAH GREENBERG in the Middle District of Florida to an employee at Entity A located outside of Florida |

| Count | Date | Interstate Wire |
|---|---|---|
| **THIRTEEN** | December 12, 2018 | An interstate email from JOEL MICAH GREENBERG in the Middle District of Florida to an employee at Entity A located outside of Florida |
| **FOURTEEN** | December 20, 2018 | An interstate wire transfer of $200,000 from an account of the Tax Collector's Office at Florida Capital Bank in the Middle District of Florida to Entity A's bank account at Silvergate Bank located outside of Florida |
| **FIFTEEN** | September 20, 2019 | An interstate transfer of $5,000 from Government Blockchain Systems' account at Fifth Third Bank in the Middle District of Florida to JOEL MICAH GREENBERG's account at Entity B located outside of Florida |
| **SIXTEEN** | September 24, 2019 | An interstate transfer of $5,000 from Government Blockchain Systems' account at Fifth Third Bank in the Middle District of Florida to JOEL MICAH GREENBERG's account at Entity B located outside of Florida |
| **SEVENTEEN** | October 15, 2019 | An interstate transfer of $5,000 from Government Blockchain Systems' account at Fifth Third Bank in the Middle District of Florida to JOEL MICAH GREENBERG's account at Entity B located outside of Florida |
| **EIGHTEEN** | October 17, 2019 | An interstate transfer of $5,000 from Government Blockchain Systems' account at Fifth Third Bank in the Middle District of Florida to JOEL MICAH GREENBERG's account at Entity B located outside of Florida |
| **NINETEEN** | November 2, 2019 | An interstate wire from the Middle District of Florida to establish a seller account at Amazon, which was processed by a server located outside of Florida |

| Count | Date | Interstate Wire |
|-------|------|-----------------|
| **TWENTY** | January 27, 2020 | A credit card charge of $599.95 for an autographed Michael Jordan photograph using an American Express card of the Tax Collector's Office in the Middle District of Florida, which transaction was processed by a server located outside of Florida |

All in violation of 18 U.S.C. § 1343.

## COUNTS TWENTY-ONE THROUGH TWENTY-THREE
### (Illegal Monetary Transactions)

1.      The Grand Jury hereby realleges paragraphs one through five of Counts Eleven through Twenty of this Third Superseding Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

2.      On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

### JOEL MICAH GREENBERG,

did knowingly engage and attempt to engage in the monetary transactions described below in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, which property was, in fact, derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343, knowing that such transaction involved property and funds that were the proceeds obtained from a criminal offense, as follows:

20

| Count | Date | Transaction |
|---|---|---|
| **TWENTY-ONE** | December 29, 2017 | Transfer in and affecting interstate commerce of $100,000 by and through Fairwinds Credit Union originating in the Middle District of Florida to an account belonging to JOEL MICAH GREENBERG at Entity A |
| **TWENTY-TWO** | December 29, 2017 | Transfer in and affecting interstate commerce of 3.3334 in Bitcoin, such property having a value of greater than $10,000, originating in the Middle District of Florida by and through JOEL MICAH GREENBERG's account at Entity A to a cryptocurrency wallet controlled by JOEL MICAH GREENBERG |
| **TWENTY-THREE** | December 24, 2018 | Transfer in and affecting interstate commerce of 4.8249 in Bitcoin, such property having a value of greater than $10,000, originating in the Middle District of Florida by and through at account at Entity A in the name of the Tax Collector's Office that was controlled by JOEL MICAH GREENBERG to a cryptocurrency wallet controlled by JOEL MICAH GREENBERG |

In violation of 18 U.S.C. §§ 1957 and 2.

## COUNT TWENTY-FOUR
### (Stalking)

### A. Introduction

At times relevant to this Third Superseding Indictment:

1.     The defendant, JOEL MICAH GREENBERG, was the elected Tax Collector of Seminole County, Florida, in the Middle District of Florida.  JOEL MICAH GREENBERG used the mail, an interactive computer service, an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate commerce to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to a political opponent who is known to the Grand Jury and who worked at a school located in the Middle District of Florida (referred to herein as the "school employee").

2.     JOEL MICAH GREENBERG caused letters to be sent by the United States Mail to the school located in the Middle District of Florida where the school employee worked.  The letters falsely represented that they were being sent by an anonymous "very concerned student" of the school who had information that the school employee had engaged in sexual misconduct with a particular student, when in truth and in fact, as JOEL MICAH GREENBERG then and there well knew, the allegations were false.  The following is a redacted copy of the body of the false letter:

22

I am writing to you today to bring attention to something that I feel you should know about. I am a student at          , a proud          and I love my school, my teachers and classmates. I have been with the same group for a while now, (I am a          ) having been with many of my fellow classmates since elementary school. At the start of this school year, I was told by one of my very close friends, let's call him          , that he has been having a sexual relationship with Mr.          . This came as a complete shock to me but I tried to listen and understand what          was going through.          told me that he had recently "come out of the closet" to a few of his closest friends and family members. I don't judge my friend because I love him dearly. I do not want to see him get in any trouble. I remember a specific conversation with          where he told me that he mentioned his sexual orientation to Mr.          . After          told Mr.          that he believed he was a homosexual, Mr.          took          into a separate room where he told          that he also had his own struggles with the "sin of homosexual thoughts" and that Mr.          would help him to "Pray the gay away"

Towards the end of August,          told me that he has performed oral sex on Mr.          three times while at school and that twice Mr.          has performed oral sex on him after school. The last conversation I had with          about his relationship with Mr.          ,          said that he and Mr.          has engaged in anal sex and that Mr.          used a cell phone to record it. I told          that I thought this was very wrong and that he should not be doing this with a teacher. I know          's Facebook password and was able to find a conversation that Mr.          and          had at the beginning of the school year. Mr.          has been acting very odd this year. He's not the same person I knew last year and I don't know what he has going on in his personal life, but I feel it is my duty and obligation to report this to you. I hope that you will treat this matter with great concern, I am also going to send a copy of this to law enforcement. I am very scared to come forward, I know          would be made fun of or even worse, blamed for what Mr.          has done to him. I know you are a man of integrity Mr.          , I trust you will do the right thing.

Sincerely,

A very concerned student at

3.     JOEL MICAH GREENBERG caused a Twitter account to be set up using the name and photograph of the school employee.   JOEL MICAH GREENBERG caused postings to be made using that account that represented that the school employee was a segregationist and in favor of white supremacy, when in truth and in fact, as JOEL MICAH GREENBERG then and there well knew, JOEL MICAH GREENBERG caused the Twitter account to be established without the school employee's knowledge, consent, or authorization.   The Internet was used to establish the Twitter account and to make the postings for that account, which included the following:

| Date | Posting |
|------|---------|
| 11/2/2019 | I'm running for office to keep #seminolecounty white and segregated. It's time we take back out county! |
| 11/2/2019 | I'm proud of America!! Red WHITE AND blue. WHITE. |
| 11/2/2019 | This is great. Just don't become a Jew like your kids have. |

4.    JOEL MICAH GREENBERG caused a Facebook account to be set up that claimed to belong to a "very concerned teacher" at the school located in the Middle District of Florida where the school employee worked.   JOEL MICAH GREENBERG caused postings to be made using that account that alleged that the school employee had engaged in sexual misconduct with a student, when in truth and in fact, as JOEL MICAH GREENBERG then and there well knew, the allegations were false.  The Internet was used to establish the Facebook account and to make the postings for that account, which included the following:

| Facebook Postings |
|-------------------|
| "I am a teacher at [the school].  I post this today to make the public aware that Mr. [school employee] has had several accusations of sexual misconduct made against him over the last two years.  These complaints are within his personnel file at the school.  [The school] has long kept accusations such as these hush hush, for many teachers and for many years now.  This needs to be made known. –A very concerned teacher at [the school]." |
| "[The school employee] is being investigated for multiple sexual misconduct allegations against students at [the school].  Call HR and ask for his file. You will see the reports. This main is a hypocrite and should NOT be around children." |
| "Multiple accusations have been made against him. These include rape of a male student who came to Mr. [school employee] to seek counsel on the student's sexuality. Mr. [school employee] told the student he had his own sinful |

> homosexual thoughts and they would together pray the gay away. This evolved into several sexual interactions even one involving a video of the sexual encounter. This must be made known. He is a sham."

5.    Facebook and Twitter were each an interactive computer service, an electronic communication service, and an electronic communication system of interstate commerce.  The Internet was a facility of interstate commerce.

## B. <u>Course of Conduct</u>

6.    Beginning on or about a date unknown to the Grand Jury, but not later than on or about October 10, 2019, and continuing through and including on or about November 15, 2019, in the Middle District of Florida, and elsewhere, the defendant,

### JOEL MICAH GREENBERG,

with the intent to harass and intimidate another person, that is, the school employee, did knowingly use the mail, an interactive computer service, an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate commerce to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to a person, that is, the school employee.

In violation of 18 U.S.C. §§ 2261A(2), 2261(b)(5), and 2.

## COUNT TWENTY-FIVE
### (Unlawful Use of Means of Identification of Another Person)

1.    The Grand Jury hereby realleges paragraphs one through five of Count Twenty-Four of this Third Superseding Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

2.    On or about November 2, 2019, in the Middle District of Florida, and elsewhere, the defendant,

**JOEL MICAH GREENBERG,**

did knowingly transfer, possess, and use in and affecting interstate commerce, without lawful authority, a means of identification of another person, specifically, the name of the school employee on a Twitter account, knowing that such means of identification belonged to an actual person, with the intent to commit, to aid and abet, and in connection with, any unlawful activity that constitutes a violation of Federal law, namely, a violation of 18 U.S.C. § 2261A(2), as charged in Count Twenty-Four of this Third Superseding Indictment.

In violation of 18 U.S.C. §§ 1028(a)(7), 1028(b)(2), and 2.

## COUNT TWENTY-SIX
### (Conspiracy to Bribe a Public Official, Submission of a False Claim, Theft of Government Property, and Wire Fraud)

#### A. Introduction

At times relevant to this Third Superseding Indictment:

1.    In or about January 2017, JOEL MICAH GREENBERG assumed office as the elected Seminole County Tax Collector.   JOEL MICAH GREENBERG

26

resigned from his position as the Seminole County Tax Collector on or about June 24, 2020, after his arrest by federal agents on or about June 23, 2020.  On or about June 23, 2020, JOEL MICAH GREENBERG had his initial appearance in *United States v. Joel Micah Greenberg*, Case No. 6:20-cr-97-Orl-GAP-LRH, in the United States District Court for the Middle District of Florida.  JOEL MICAH GREENBERG was released pursuant to an order in that case dated June 23, 2020, which order notified JOEL MICAH GREENBERG of the potential effect of committing an offense while on pretrial release.

2.      Greenberg Media Group, Inc. (Greenberg Media) was a corporation that was first registered by JOEL MICAH GREENBERG with the Florida Department of State in or about 2012.  DG3 Network, Inc. (DG3 Network) was a corporation that was first registered by JOEL MICAH GREENBERG with the Florida Department of State in or about 2014.  Prior to February 2020, Greenberg Media and DG3 Network were administratively dissolved.   On or about June 28, 2020, JOEL MICAH GREENBERG filed reinstatements with the Florida Department of State for Greenberg Media and DG3 Network.

3.      The Small Business Administration (SBA) was an agency of the United States.

4.      The "SBA Employee" was a resident of the Middle District of Florida and a "public official" as defined by 18 U.S.C. § 201(a)(1).  In or about May 2020, the SBA Employee began working for the U.S. Government as an SBA Loan Specialist.  As an SBA Loan Specialist, the SBA Employee was responsible for processing home

27

and business loans; making recommendations on collateral needed to secure loans; applying accepted financial procedures to analyze financial resources to determine an applicant's ability to repay requested loans; reviewing all pertinent facts needed to make eligibility determinations by analyzing such factors as the nature and cause of damage, intended use of proceeds, legislative and administrative loan limits, and disposition of insurance and other recoveries; ensuring loan files contain all pertinent documentation, to include conversations with applicants and written recommendations or justifications for conclusions; processing loan applications on web-based computer system; and responding orally and in writing to applicants or their representatives. Because of COVID-19, the SBA authorized the SBA Employee to work from her residence located in the Middle District of Florida.

5.      In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. In conjunction with an officially declared disaster by the United States Government, the CARES Act allowed for the SBA to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic.   To qualify, a business had to be in operation prior to February 1, 2020.

6.      Using the SBA online portal, EIDL applicants submitted personal and business information in support of each EIDL application, and they did not have to submit supporting documentation of any sort.  The application included a jurat-like paragraph where the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.

28

7.      The application process involved filling out assorted data fields relating to the size of the affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in the 12 months prior to the date of the disaster (January 31, 2020).  This information furnished by the applicant was then used by SBA application evaluation systems to calculate the principal amount of money the small business was eligible to receive in the form of an EIDL.

8.      In addition to applying for an EIDL, an applicant could request and then receive up to $10,000 in an EIDL Cash Advance Grant based on the number of employees claimed.  The EIDL Cash Advance Grant was disbursed in amounts of $1,000 per claimed employee.  Any EIDL Cash Advance Grant funding that was received by an applicant based on the number of claimed employees did not need to be repaid to the SBA if the loan application was ultimately denied by the SBA, or if the applicant declined the EIDL that was offered by the SBA at a later date.

9.      Pursuant to the provisions governing the EIDL program, loan proceeds had to be used by that business on certain permissible expenses.  The EIDL (working capital) loans had to be used by the afflicted business to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

10.     To evaluate EIDL applications, the SBA computer system used automation and system programming to quickly conduct checks of each application submitted by each applicant.  The SBA computer system performed checks of the

29

applicant's credit worthiness and evaluated other elements of data furnished by the applicant to identify duplicative applications and indicators of fraudulent activity. The SBA computer system also utilized the information furnished by the applicant to determine the dollar amount of the loan offer that the applicant may be extended, which included gross revenues in the 12-month period prior to the disaster, costs of goods sold during that same timespan, and loss of rental income. If any aspect of the application did not pass the automated evaluation within the SBA computer system, the application's progress was stopped, and an electronic notification was sent to the applicant regarding the potential cause for the application to be halted. The applicant was then given the opportunity to engage with the SBA and request reconsideration of the application.

11.    The loan application evaluation system also was designed so that SBA employees, to include SBA Loan Specialists, could affect applications and manually change and override the system's actions if appropriate and necessary.

12.    The "Recruiter Conspirator" was a friend of JOEL MICAH GREENBERG.

### B. Conspiracy

13.    Beginning at a time unknown to the Grand Jury, but beginning at least by in or about June 2020, and continuing thereafter through and including in or about July 2020, in the Middle District of Florida, and elsewhere, the defendant,

**JOEL MICAH GREENBERG**

did knowingly and willfully combine, conspire, confederate, and agree with the SBA Employee, the Recruiter Conspirator, and others known and unknown to the Grand Jury:

      a.    To commit bribery, by directly and indirectly, corruptly giving, offering, and promising anything of value to any public official, and offering and promising any public official to give anything of value to any other person and entity, with intent to influence such public official to commit and aid in committing, colluding in, and allowing, any fraud, and making opportunity for the commission of any fraud, on the United States, in violation of 18 U.S.C. § 201(b)(1)(B);

      b.    To commit the crime of submitting a false, fictitious, and fraudulent claim, by making and presenting to any department and agency of the United States, any claim upon and against the United States, and any department and agency thereof, knowing such claim to be false, fictitious, and fraudulent, in violation of 18 U.S.C. § 287;

      c.    To commit theft of government property, by knowingly and willfully embezzling, stealing, purloining, and converting to the defendant's use and the use of another, more than $1,000 of money and a thing of value of the United States and the SBA, a department and agency of the United States, that is, proceeds from EIDLs, with intent to deprive the United States and the SBA of the use and benefit of the money and thing of value, in violation of 18 U.S.C. § 641; and,

      d.    To commit wire fraud, by knowingly and with intent to defraud devising and intending to devise a scheme and artifice to defraud, and for obtaining

money and property, by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing the aforesaid scheme and artifice to defraud, knowingly transmitting and causing to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## C. **Manner and Means**

14. The manner and means of the conspiracy included the following:

a. It was part of the conspiracy that JOEL MICAH GREENBERG, the SBA Employee, the Recruiter Conspirator, and other co-conspirators known and unknown to the Grand Jury would and did unlawfully devise and execute a scheme and artifice to defraud the SBA of money and property by means of materially false and fraudulent pretenses, representations and promises.

b. It was a further part of the conspiracy that JOEL MICAH GREENBERG, the SBA Employee, the Recruiter Conspirator, and other co-conspirators known and unknown to the Grand Jury would and did obtain money, and attempt to obtain money, from the SBA through submission of false applications for EIDLs.

c. It was a further part of the conspiracy that JOEL MICAH GREENBERG would and did reinstate two corporations, Greenberg Media and DG3 Network, that had been administratively dissolved for the purpose of applying for EIDLs.

   d. It was a further part of the conspiracy that JOEL MICAH GREENBERG, the SBA Employee, and other co-conspirators known and unknown to the Grand Jury would and did prepare and submit applications for EIDLs for businesses associated with JOEL MICAH GREENBERG that contained false and fraudulent pretenses, representations and promises that related to material facts, including, but not limited to, the following:

     (1) False claims that the businesses were in operation prior to February 2020;

     (2) False claims as to the revenues that the businesses had earned during the twelve-month period prior to the date of the disaster; and,

     (3) False claims as to the number of employees employed by the businesses.

   e. It was a further part of the conspiracy that JOEL MICAH GREENBERG and the Recruiter Conspirator would and did give, offer, and promise to pay money to the SBA Employee for her assistance in preparing the applications for EIDLs for JOEL MICAH GREENBERG and his companies and the processing of EIDLs for them.

   f. It was a further part of the conspiracy that the SBA Employee would and did demand, seek, receive, accept, and agree to receive and accept money from JOEL MICAH GREENBERG to pay her for her assistance in preparing the applications for EIDLs for their businesses and the processing of EIDLs for them.

g.     It was a further part of the conspiracy that JOEL MICAH GREENBERG would and did cause applications for EIDLs for Greenberg Media and DG3 Network to be submitted to the SBA that falsely represented that he was not "presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction."

h.     It was a further part of the conspiracy that JOEL MICAH GREENBERG would and did falsely represent in the Loan Authorization and Agreement for his EIDL in the name of "Joel Greenberg" that "[t]here has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan.  (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)," when, in truth, and in fact, as JOEL MICAH GREENBERG then and there well knew, he had been arrested for a felony on June 23, 2020.

i.     It was a further part of the conspiracy that JOEL MICAH GREENBERG, the SBA Employee, and other co-conspirators known and unknown to the Grand Jury would and did falsely represent that JOEL MICAH GREENBERG had not agreed to pay any fees to anyone for assistance in completing the application.

j.     It was a further part of the conspiracy that JOEL MICAH GREENBERG would and did falsely represent that "Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.)

34

for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application."

k.     It was a further part of the conspiracy that JOEL MICAH GREENBERG would and did falsely represent that he would use all the proceeds of the EIDLs solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter, with the exception of a $100 Uniform Commercial Code handling fee.

l.     It was a further part of the conspiracy that the SBA Employee would and did use her access to the SBA's computer systems and her access to EIDLs to manipulate the status of EIDLs to trigger the system to extend funding for EIDLs submitted for the benefit for JOEL MICAH GREENBERG.

m.     It was a further part of the conspiracy that JOEL MICAH GREENBERG, the SBA Employee, the Recruiter Conspirator, and other co-conspirators known and unknown to the Grand Jury would and did use portions of the money that was obtained as a result of devising and executing the conspiracy and scheme and artifice to defraud for their own personal use.

n.     It was a further part of the conspiracy that JOEL MICAH GREENBERG, the SBA Employee, the Recruiter Conspirator, and other co-conspirators known and unknown to the Grand Jury would and did use interstate wires in furtherance of the conspiracy and scheme and artifice to defraud, including by submitting applications for EIDLs to the SBA, by using interstate wires to receive emails from the SBA, and by using interstate wires to send emails to each other.

o. It was a further part of the conspiracy that JOEL MICAH GREENBERG, the SBA Employee, the Recruiter Conspirator, and other co-conspirators known and unknown to the Grand Jury would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

### D. Overt Acts

15. In furtherance of and to affect the objectives of the conspiracy, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

a. On or about June 19, 2020, in the Middle District of Florida, the Recruiter Conspirator texted JOEL MICAH GREENBERG to refer him to the SBA Employee to obtain a loan from the SBA.

b. On or about June 19, 2020, JOEL MICAH GREENBERG and the SBA Employee talked on the telephone about an EIDL for JOEL MICAH GREENBERG.

c. On or about June 19, 2020, in the Middle District of Florida, JOEL MICAH GREENBERG sent an email to the SBA Employee with a copy of his personal 2018 tax return.

d. On or about June 20, 2020, in the Middle District of Florida, an individual acting on behalf of JOEL MICAH GREENBERG and at the direction of the SBA Employee submitted an application for an EIDL for JOEL MICAH GREENBERG that falsely represented that his business was impacted by COVID-19,

36

that his gross revenues for the 12 months prior to the date of the disaster were $161,535, that he had $135 in cost of goods sold, that he lost $135,000 in rents for rental properties, and that he had two employees.

      e.    On or about June 24, 2020, in the Middle District of Florida, JOEL MICAH GREENBERG executed a Loan Authorization and Agreement that falsely represented that "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter" and that "[t]here has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)."

      f.    On or about June 27, 2020, in the Middle District of Florida, the Recruiter Conspirator texted the SBA Employee asking the SBA Employee to set up another call with JOEL MICAH GREENBERG about additional applications for EIDLs.

      g.    On or about June 28, 2020, JOEL MICAH GREENBERG filed reinstatements for DG3 Network and Greenberg Media Group with the Florida Department of State.

      h.    On or about June 28, 2020, the SBA Employee submitted an application for an EIDL for DG3 Network that falsely represented that the company

had $475,000 in gross revenue for the 12 months prior to February 1, 2020, that its costs of goods sold during that period was $1,326, and that it had two employees.

           i.      On or about June 28, 2020, the SBA Employee submitted an application for an EIDL for Greenberg Media Group that falsely represented that the company earned $718,000 in revenue for the 12 months prior to the disaster, that its costs of goods sold during that period was $1,237, and that it employed 10 people.

           j.      On or about the following dates, each of which constitutes a separate overt act, in the Middle District of Florida, JOEL MICAH GREENBERG wrote checks payable to the Recruiter Conspirator that represented the Recruiter Conspirator's portion of the fraudulent applications that had been approved and funded:

           -- June 27, 2020, a $6,000 check with a memo line for "loan"

           -- July 26, 2020, a $5,000 check with a memo line of "Fee July"

           -- July 26, 2020, a $5,000 check with a memo line of "Fee August".

           k.      On or about July 17, 2020, in the Middle District of Florida, JOEL MICAH GREENBERG paid the SBA Employee $3,000 using CashApp.

           l.      On or about July 17, 2020, in the Middle District of Florida, JOEL MICAH GREENBERG executed a Loan and Authorization Agreement for the EIDL for DG3 Network.

m.     On or about July 17, 2020, in the Middle District of Florida, JOEL MICAH GREENBERG executed a Loan and Authorization Agreement for the EIDL for Greenberg Media Group.

All in violation of 18 U.S.C. §§ 371 and 3147(1).

## COUNT TWENTY-SEVEN
### (Bribery of a Public Official)

1.     The allegations contained in paragraphs one through twelve of Count Twenty-Six of this Third Superseding Indictment are hereby realleged and incorporated herein by reference.

2.     On or about the date set forth below, in the Middle District of Florida, and elsewhere, the defendant,

### JOEL MICAH GREENBERG

did, directly and indirectly, knowingly and corruptly give, offer, and promise anything of value to any public official and offer and promise a public official to give anything of value to any other person and entity, with intent to influence such public official to commit and aid in committing, colluding in, and allowing, any fraud, and making opportunity for the commission of any fraud, on the United States, as follows:

| Count | Date | Description |
|---|---|---|
| TWENTY-SEVEN | July 17, 2020 | $3,000 payment by JOEL MICAH GREENBERG to a company controlled by the SBA Employee |

In violation of 18 U.S.C. §§ 201(b)(1)(B) and 3147(1).

## COUNTS TWENTY-EIGHT THROUGH THIRTY
### (Submission of a False Claim)

1.      The allegations contained in paragraphs one through twelve of Count Twenty-Six of this Third Superseding Indictment are hereby realleged and incorporated herein by reference.

2.      On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

### JOEL MICAH GREENBERG,

did knowingly make and present to any department and agency of the United States, a claim upon and against the United States, and any department and agency thereof, knowing such claim to be false, fictitious, and fraudulent, as follows:

| Count | Date | Description |
|-------|------|-------------|
| TWENTY-EIGHT | June 20, 2020 | EIDL application for Joel Greenberg |
| TWENTY-NINE | June 28, 2020 | EIDL application for DG3 Network |
| THIRTY | June 28, 2020 | EIDL application for Greenberg Media |

In violation of 18 U.S.C. §§ 287 & 2, and 18 U.S.C. § 3147 (for Counts 29 and 30).

## COUNTS THIRTY-ONE THROUGH THIRTY-THREE
### (Theft of Government Property)

1.      The allegations contained in paragraphs one through twelve of Count Twenty-Six of this Third Superseding Indictment are hereby realleged and incorporated herein by reference.

2.      On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

**JOEL MICAH GREENBERG,**

did knowingly and willfully embezzle, steal, purloin, and convert to the defendant's use and the use of another, more than $1,000 of money and a thing of value of the United States and the Small Business Administration, a department and agency of the United States, that is, proceeds from EIDLs, with intent to deprive the United States and the Small Business Administration of the use and benefit of the money and thing of value, as follows:

| Count | Date | Description |
|-------|------|-------------|
| **THIRTY-ONE** | June 26, 2020 | $132,900 in EIDL proceeds for JOEL MICAH GREENBERG deposited into his Fairwinds Credit Union account |
| **THIRTY-TWO** | July 21, 2020 | $149,900 in EIDL proceeds for DG3 Network deposited into Fairwinds Credit Union account of DG3 Network |
| **THIRTY-THREE** | July 21, 2020 | $149,900 in EIDL proceeds for Greenberg Media deposited into Fairwinds Credit Union account of Greenberg Media |

In violation of 18 U.S.C. §§ 641, 3147(1), and 2.

## FORFEITURE

1.     The allegations contained in Counts One, Four, Five, Seven, Eight, Eleven through Twenty, Twenty-One through Twenty-Three, Twenty-Five through Twenty-Seven, and Thirty-One through Thirty-Three are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(C), 982(a), 1028(b)(5), 1594, and 28 U.S.C. § 2461(c).

41

2.      Upon conviction of the violation of 18 U.S.C. § 1591 charged in Count One, the defendant shall forfeit to the United States of America, pursuant to 18 U.S.C. § 1594(d), any property, real or personal, used or intended to be used to commit or to facilitate the commission of the offense; and any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offense.

3.      Upon conviction of any of the violations of 18 U.S.C. § 1028 charged in Counts Four, Five, Seven through Eight, or Twenty-Five, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation, and pursuant to 18 U.S.C. § 1028(b)(5), any personal property used or intended to be used to commit the offense.

4.      Upon conviction of any of the violations of 18 U.S.C. § 1343 charged in Counts Eleven through Twenty, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

5.      Upon conviction of any of the violations of 18 U.S.C. § 1957 charged in Counts Twenty-One through Twenty-Three, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

6.      Upon conviction of the conspiracy to violate 18 U.S.C. §§ 201, 641 or 1343, all in violation of 18 U.S.C. § 371, charged in Count Twenty-Six, or

42

substantive violations of 18 U.S.C. § 201 or 641 charged in Counts Twenty-Seven or Thirty-One through Thirty-Three, respectively, the defendant shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

7.    The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of proceeds of (a) at least $222,099.95 that the defendant obtained as a result of his commission of the wire fraud offenses charged in Counts Eleven through Twenty; (b) at least $120,000.00 which was involved in the money laundering violations charged in Counts Twenty-One through Twenty-Three; and (c) at least $432,700.00 that the defendant obtained as a result of his participation in the conspiracy charged in Count Twenty-Six or his commission of theft of government property charged in Counts Thirty-One through Thirty-Three.

8.    If any of the property described above, as a result of any act or omission of the defendant:

   a.    cannot be located upon the exercise of due diligence;

   b.    has been transferred or sold to, or deposited with, a third party;

   c.    has been placed beyond the jurisdiction of the court;

   d.    has been substantially diminished in value; or

   e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to 18 U.S.C. § 853(p), as incorporated by 18 U.S.C §§ 982(b) and 1028(g),

and 28 U.S.C. § 2461(c).

A TRUE BILL,

_____
Foreperson

KARIN HOPPMANN
Acting United States Attorney

By:  _____
Jennifer M. Harrington
Assistant United States Attorney

By:  _____
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

By:  _____
Josephine W. Thomas
Assistant United States Attorney
Chief, Criminal Division

44

# UNITED STATES DISTRICT COURT
## Middle District of Florida
## Orlando Division

### THE UNITED STATES OF AMERICA

vs.

### JOEL MICAH GREENBERG

## THIRD SUPERSEDING INDICTMENT

Violations:
18 U.S.C. § 1591(a)
18 U.S.C. § 2722
18 U.S.C. § 1028(a)(7)
18 U.S.C. § 1028(a)(1)
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1343
18 U.S.C. § 1957
18 U.S.C. § 2261A(2)
18 U.S.C. § 371
18 U.S.C. § 201(b)(1)(B)
18 U.S.C. § 287
18 U.S.C. § 641

A true bill,

_____
Foreperson

Filed in open court this 30th day of March, 2021.

_____
Clerk

Bail   $_____