1           **UNITED STATES DISTRICT COURT**
            **MIDDLE DISTRICT OF FLORIDA**
2               **ORLANDO DIVISION**

3                                    :
     **UNITED STATES OF AMERICA,**       :
4                                    :    Case No.:
             Plaintiff,              :    6:20-cr-00097-GAP-LRH
5                                    :
     v.                              :    Orlando, Florida
6                                    :    May 17, 2021
                                     :    10:00 A.M.
7    **JOEL MICAH GREENBERG,**           :
                                     :
8            Defendant.              :

9         **AMENDED TRANSCRIPT OF CHANGE OF PLEA HEARING**
            **BEFORE THE HONORABLE LESLIE R. HOFFMAN**
10              **UNITED STATES MAGISTRATE JUDGE**

11   APPEARANCES:

12   For the Plaintiff:          ROGER B. HANDBERG III
                                 JENNIFER M. HARRINGTON
13                               U.S. Attorney's Office
                                 400 West Washington Street
14                               Suite 3100
                                 Orlando, Florida 32801
15
     For the Defendant:          FRITZ J. SCHELLER
16                               Fritz Scheller, PL
                                 200 East Robinson Street
17                               Suite 1150
                                 Orlando, Florida 32801
18
                                 DAVID A. WEBSTER
19                               The Law Office of David
                                 A. Webster, PA
20                               1220 Commerce Park Drive
                                 Suite 207
21                               Longwood, Florida 32779

22   Court Reporter:             Heather Suarez, RPR, FCRR
                                 401 West Central Boulevard
23                               Suite 4600
                                 Orlando, Florida 32801
24                               heathersuarez.usocr@gmail.com

25   Proceedings recorded by mechanical stenography.
     Transcript produced by computer-aided transcription.

1            **P R O C E E D I N G S**

2       (Call to order of the court at 10:00 A.M.)

3            **THE COURTROOM DEPUTY:**  Case No. 6:20-cr-97, United

4    States of America v. Joel Micah Greenberg.

5            Counsel, please state your appearances for the

6    record.

7            **MR. HANDBERG:**  Good morning, Your Honor.

8    Roger Handberg on behalf of the United States.  With me is

9    Jennifer Harrington with the U.S. Attorney's Office.  Behind us

10   is Special Agent Alex Duda with the FBI and Special

11   Agent Nevada Gump with the Secret Service.

12           **THE COURT:**  Good morning.

13           **MS. HARRINGTON:**  Good morning.

14           **MR. SCHELLER:**  Good morning, Your Honor.

15   Fritz Scheller.  I'm here on behalf of Joel Greenberg.  He's

16   standing to my left.  Also present at counsel table is

17   Attorney David Webster.

18           **THE COURT:**  Good morning.

19           Good morning, Mr. Greenberg.

20           **THE DEFENDANT:**  Good morning.

21           **THE COURT:**  You can go ahead and sit down, sir.

22           Mr. Scheller, would you do me a favor and move one of

23   the microphones closer to your client.  Thank you.  This is --

24   while we have a court reporter here, it is also being audio

25   recorded.

1          So, Mr. Greenberg, I understand we're here today

2     because you wish to change your plea.  Is that correct?

3          **THE DEFENDANT:**  Yes.

4          **THE COURT:**  Okay.  And you can stay seated for the

5     duration of this.  I appreciate that.

6          So what we're going to do now is I'm going to have my

7     courtroom deputy place you under oath, and then we'll proceed.

8          (Defendant sworn.)

9          **THE COURTROOM DEPUTY:**  Please state your name for the

10    record.

11         **THE DEFENDANT:**  Joel Micah Greenberg.

12         **THE COURT:**  So, Mr. Greenberg, you've just taken an

13    oath to tell the truth, and what that means, sir, is you waive

14    your right to remain silent.  This proceeding, like I just

15    said, is being recorded, both audio recording and with a court

16    reporter.  Anything you say during this hearing can be used

17    against you, and if at any point it's determined that anything

18    you say today is determined to be untruthful or, for lack of a

19    better phrase, a lie, you could be subjecting yourself to

20    further prosecution for perjury or making a false statement.

21    Do you understand, sir?

22         **THE DEFENDANT:**  I do.

23         **THE COURT:**  Okay.  So what we're going to do here

24    today, sir, is in a minute I'm going to ask you a couple of

25    background questions.  Then the rest of the time is going to be

1    a series of yes-or-no or do-you-understand questions.

2          If at any point in time you don't understand what I'm

3    saying or you want to ask me a question, don't hesitate to stop

4    me.  You can ask me whatever you want, and I'll do my best to

5    answer it.  If I can't answer it, I'll tell you why.

6          And you also have your attorney, Mr. Scheller,

7    sitting next to you.  If at any point you want to talk to him

8    confidentially, just let me know, and you can do so for as long

9    as you need to.

10          Do you understand, sir?

11    **THE DEFENDANT:**  I do.

12    **THE COURT:**  Okay.  And then I just want to directly

13    address the members of the press that are here and in the

14    overflow room.  I just want to thank you all for your

15    cooperation, getting everybody seated today.  I know we're

16    under -- still under pandemic rules, so we got as many people

17    into the courtroom as we could.  And for those in the overflow

18    room, I appreciate your cooperation.

19          So, with that, is the United States prepared to

20    proceed?

21    **MR. HANDBERG:**  We are, Your Honor.

22    **THE COURT:**  Okay.  And, Mr. Scheller, the defense is

23    prepared to proceed?

24    **MR. SCHELLER:**  We are.

25    **THE COURT:**  Okay.  So what I wanted to do now,

1    Mr. Greenberg, is -- like I talked to you about, is those few

2    background questions, and the reason I ask those is just so

3    that I feel comfortable that you're aware of what's going on

4    and that you're competent to proceed.

5            So can you tell me your date of birth, please.

6            **THE DEFENDANT:**  February 4, 1985.

7            **THE COURT:**  Okay.  And how far have you gone in your

8    education, sir?

9            **THE DEFENDANT:**  College.

10           **THE COURT:**  Okay.  And is English your native

11   language?

12           **THE DEFENDANT:**  Yes, it is.

13           **THE COURT:**  Okay.  I'm going to ask you a yes-or-no

14   question.  In the last 48 hours, have you taken any drugs,

15   alcohol, or medication, including prescriptions?

16           **THE DEFENDANT:**  Yes.

17           **THE COURT:**  Okay.  Whatever those substances were, do

18   they impact your ability to understand what's going on here

19   today?

20           **THE DEFENDANT:**  They do not.

21           **THE COURT:**  Okay.  Those same substances -- have you

22   taken them today?

23           **THE DEFENDANT:**  I have.

24           **THE COURT:**  Okay.  Do they -- what you've taken

25   today, would that --

1          **THE DEFENDANT:**  I'm sorry.  I have not.

2          **THE COURT:**  You have not taken anything today.  Okay.

3     Thank you, Mr. Greenberg.

4          Now, my last question for you is do you have any

5     mental conditions or diseases that would impact your ability to

6     understand what's going on here today?

7          **THE DEFENDANT:**  I do not.

8          **THE COURT:**  Okay.  Thank you, sir.

9          So there's a couple housekeeping matters I need to go

10    through.

11         Mr. Greenberg, as the court security officer

12    announced, I'm what's called a United States magistrate judge.

13    I'm not the judge that will impose sentence in this case.

14    That's the presiding district judge, Judge Presnell.  But what

15    I can do with your consent is I can do the rest of this

16    hearing, ask you those series of yes-or-no or do-you-understand

17    questions, and at the end of this hearing, if I feel that your

18    decision to change your plea was made knowingly, voluntarily,

19    and intelligently and that there's a factual basis to support

20    it, I would issue what's called a "report and recommendation"

21    to Judge Presnell recommending that he accept your change of

22    plea.  And if Judge Presnell accepts my report and

23    recommendation, it has the exact same effect as if we did this

24    entire hearing before Judge Presnell himself.  Do you

25    understand that, sir?

1          **THE DEFENDANT:**  I do.

2          **THE COURT:**  Okay.  I do have before me,

3    Mr. Greenberg, a notice regarding entry of a plea of guilty,

4    and it includes a consent where you declare your intention to

5    enter a plea of guilty and consent to a magistrate judge

6    conducting these proceedings.  Do you remember signing this

7    today, sir?

8          **THE DEFENDANT:**  I do.

9          **THE COURT:**  And, Mr. Scheller, is this your signature

10   as well?

11         **MR. SCHELLER:**  It is, Your Honor.

12         **THE COURT:**  Thank you.

13         So, Mr. Greenberg, do you consent to me conducting

14   your change of plea hearing today?

15         **THE DEFENDANT:**  I do.

16         **THE COURT:**  Okay.  The record will so reflect.

17         So now, Mr. Greenberg, what I wanted to do is go over

18   some of the rights that you currently have, and then we'll talk

19   about some of the rights you'd be waiving by changing your

20   plea.

21         The first right is the right to an attorney, and

22   that's going to stay with you regardless of whether or not you

23   change your plea today.  So you have the right to have an

24   attorney represent you in all proceedings in this case,

25   including anything that occurs inside the courthouse or outside

1   the courthouse, and you have the right to have an attorney

2   represent you at all times that you're questioned by law

3   enforcement.  You have the right to hire or retain an attorney

4   of your choosing, and if you cannot afford an attorney, you

5   have the right to ask the Court to appoint one to represent

6   you.  And, again, that right's going to stay with you

7   regardless of whether or not you change your plea.  Do you

8   understand that, Mr. Greenberg?

9           **THE DEFENDANT:**  I do.

10          **THE COURT:**  Okay.  So now let's talk about some of

11  the rights that you currently have while you maintain your plea

12  of not guilty.

13          So you have the right to be presumed innocent.  You

14  have the right to go to a speedy and public trial before a jury

15  of 12 persons.  They would have to unanimously find you guilty

16  in order for you to be convicted.  The United States would have

17  to prove your guilt, and that burden is called "beyond a

18  reasonable doubt."

19          You have the right to confront or cross-examine any

20  of the Government's witnesses if you went to trial.  You'd have

21  the right to challenge any of the Government's evidence,

22  including the manner in which that evidence was obtained.

23  You'd have the right to present your own witnesses and your own

24  defenses, and if any witnesses refused to appear voluntarily to

25  testify on your behalf, you'd have the right to ask the Court

1    to compel their attendance.  And then you'd have the right to

2    remain silent at trial, meaning you could choose whether or not

3    to testify.

4           Do you understand, Mr. Greenberg, that these trial

5    rights are rights that you currently have?

6           **THE DEFENDANT:**  I do.

7           **THE COURT:**  Any questions for me so far?

8           **THE DEFENDANT:**  I have none.

9           **THE COURT:**  Okay.  So by changing your plea today,

10   Mr. Greenberg, you're going to be waiving these rights.  There

11   will be no trial.  You will be waiving any defenses you have to

12   the charges; you'll be waiving your right to cross-examine or

13   confront any of the Government's witnesses; you'll be waiving

14   your right to challenge any of the evidence that the Government

15   has, including the manner in which they obtained that evidence;

16   you'll be waiving your right to compel any witnesses to testify

17   on your behalf at trial; and you'd be waiving your right to

18   remain silent.  Do you understand, Mr. Greenberg, that you're

19   waiving these rights by changing your plea today?

20          **THE DEFENDANT:**  I do.

21          **THE COURT:**  Okay.  The next proceeding that will

22   happen in your case after today, sir, would be your sentencing

23   hearing.

24          So the next thing I wanted to talk to you about,

25   Mr. Greenberg, is that -- I believe it's the third superseding

1    indictment.  You've been charged with various offenses, and

2    they're called "felonies," and by pleading guilty to felonies,

3    there are certain collateral consequences.  I just want to make

4    sure you understand that.

5         When you plead guilty to a felony, you're going to

6    lose certain civil rights.  You won't be able to vote.  You're

7    going to lose your right to hold public office, to serve on a

8    jury, and to own and possess a firearm, and you'll also be

9    prevented from obtaining or maintaining certain occupational

10   licenses.  And then, because one of the counts is a sex

11   offense, if you're deemed a sex offender, under law you'll be

12   required to register as a sex offender under both federal law

13   and possibly state law.  Do you understand, Mr. Greenberg,

14   these are some of the consequences of pleading guilty to a

15   felony?

16        **THE DEFENDANT:**  I do.

17        **THE COURT:**  Okay.  So then I do -- speaking of the

18   third superseding indictment, Mr. Handberg, do you have a copy

19   of the indictment?

20        **MR. HANDBERG:**  I do, Your Honor.

21        **THE COURT:**  And, Mr. Scheller, do you have a copy of

22   the indictment?

23        **MR. SCHELLER:**  I have one, Your Honor.

24        **THE COURT:**  You do not?

25        **MR. SCHELLER:**  I said I have one.

1          **THE COURT:**  Okay.  Thank you.

2          Mr. Greenberg, have you gone over your third

3   superseding indictment with your attorney?

4          **THE DEFENDANT:**  I have.

5          **THE COURT:**  Has he answered all questions you may

6   have about it?

7          **THE DEFENDANT:**  Yes.

8          **THE COURT:**  Okay.  Do you understand your indictment?

9          **THE DEFENDANT:**  I do.

10         **THE COURT:**  Okay.  I'm going to ask Mr. Handberg, the

11  assistant United States attorney, to summarize -- and I believe

12  we're talking about Counts 1, 8, 9, 14, 24, and 26.  I'm going

13  to ask that Mr. Handberg summarize those counts briefly and the

14  penalties that -- the maximum penalties you'll be facing, and I

15  just ask that you please pay attention.

16         Go ahead, Mr. Handberg.

17         **MR. HANDBERG:**  Thank you, Your Honor.  I'm going to

18  do them in the order in which they're in the third superseding

19  indictment.

20         The first count that Mr. Greenberg is pleading guilty

21  to is Count 1, which is sex trafficking of a child in which he

22  is alleged to have engaged in a commercial sex act, as that

23  term is defined by statute, with a child who was under the age

24  of 18 years of age.  In connection with that, there are a

25  number of instrumentalities of interstate commerce that

1    Mr. Greenberg used to facilitate that particular crime, and

2    it's set forth on pages 2 through 5 of the third superseding

3    indictment.

4          The penalties for sex trafficking of a child are as

5    follows:  It's punishable by a minimum mandatory term of

6    imprisonment of ten years up to life in prison, a fine of

7    $250,000, a term of supervised release of not less than

8    five years up to life, a special assessment of $100, and,

9    additionally, a 5,000-dollar special assessment that can be

10   imposed on any non-indigent defendant convicted of that

11   particular offense.  So that's Count 1 of the third superseding

12   indictment.

13         Mr. Greenberg is also charged in Count 8.  Counts 8

14   and 9 both relate to his production of false identification

15   documents, in particular, driver's licenses.  In Count 8 it's

16   alleged that he produced a fake Puerto Rico driver's license

17   using the identity of an individual, EJCC; and the driver's

18   license had that person's personal information and

19   Mr. Greenberg's photograph, that license being found in

20   Mr. Greenberg's possession on June 23, 2020, during the

21   execution of a federal search warrant.  It was found in his

22   wallet.

23         That particular crime is punishable by a maximum

24   sentence of up to 15 years in federal prison, a fine of

25   $250,000, a term of supervised release of 3 years, and a

1   special assessment of $100.

2          The other violation that's related to the production

3   of a fake driver's license is in Count 9.  In that particular

4   case, Mr. Greenberg is alleged to have taken the personal

5   information of a person by the -- with the initials of RZ and

6   used it to make a fake driver's license knowing that that

7   person, in fact, was a real person.  This is a violation of

8   aggravated identity theft.  And, again, this particular

9   license, as set forth in the factual basis, was found in

10  Mr. Greenberg's wallet on June 23, 2020, during the execution

11  of the federal search warrant.

12         That particular violation of Title 18, United States

13  Code, Section 1028(a) is punishable by a minimum mandatory term

14  of imprisonment of two years, which shall be consecutive to the

15  sentence for any other count of conviction, a fine of $250,000,

16  a term of supervised release of one year, and a special

17  assessment of $100.

18         **THE COURT:**  Mr. Handberg, let me stop you right

19  there.

20         Mr. Greenberg, with respect to Counts 1, 8, and 9, do

21  you understand the charges as they were just summarized?

22         **THE DEFENDANT:**  I do.

23         **THE COURT:**  Do you understand the maximum penalties

24  as they were just summarized?

25         **THE DEFENDANT:**  I do.

1          **THE COURT:**  Okay.  Go ahead, Mr. Handberg.

2          **MR. HANDBERG:**  Thank you, Your Honor.

3          The next count is Count 14.  It is one of the wire

4     fraud counts that is alleged in the indictment.  It relates to

5     Mr. Greenberg's time as the Tax Collector in Seminole County

6     where he is alleged to have used his position to engage in a

7     scheme to defraud his office and Seminole County of funds by

8     use of false and fraudulent pretenses, in particular, using his

9     position to use government funds to purchase cryptocurrency for

10    himself, to mine cryptocurrency for himself, to operate a

11    business out of the Tax Collector's Office for which he

12    benefited, and also to make some credit card charges that

13    benefited himself personally using Tax Collector Office funds.

14          And he's pleading guilty, in particular, to Count 14,

15    which is an interstate wire transfer of $200,000 from an

16    account at the Tax Collector's Office at Florida Capital Bank

17    in the Middle District of Florida to a bank account at

18    Entity A, at Silvergate Bank, located outside of Florida on or

19    about December 20, 2018.  As further set out in the factual

20    basis, this particular transaction was used by Mr. Greenberg to

21    then purchase cryptocurrency for himself in a personal

22    capacity.

23          And that's alleged to be a violation of Title 18,

24    United States Code, Section 1343, which is the wire fraud

25    statute, which is punishable by a maximum sentence of up to

1      20 years in federal prison; a fine of $250,000 or twice the

2      gross gain caused by the offense or twice the gross loss caused

3      by the offense, whichever is greater; a term of supervised

4      release of 3 years; and a special assessment of $100.

5              The next count in the indictment Mr. Greenberg is

6      pleading guilty to is the stalking count in Count 24.  What

7      this count alleges is that Mr. Greenberg engaged in a course of

8      conduct to cause substantial emotional distress to someone who

9      had -- was running against him in an election.  This person

10     worked at a school, and Mr. Greenberg did a number of things.

11     He created some fake letters that falsely accused that

12     individual of engaging in sexual misconduct at the school where

13     he worked, and Mr. Greenberg also created a Twitter account to

14     make some postings that falsely represented that person was a

15     segregationist in favor of white supremacy and then also used a

16     Facebook account that Mr. Greenberg set up to try to give

17     further publicity to the false allegations about the sexual

18     misconduct by the particular individual, all of which was false

19     and untrue, as Mr. Greenberg knew.

20             And that's alleged to be a violation of Title 18,

21     United States Code, Section 2261(a)(2) and 2261(b)(5).  That

22     violation -- the stalking violation carries a maximum sentence

23     of five years' imprisonment, a fine of $250,000, a term of

24     supervised release of three years, and a special assessment of

25     $100.

1          The final count that Mr. Greenberg is pleading guilty

2     to is Count 26.  This relates to a conspiracy to submit false

3     claims to the Small Business Administration to steal government

4     property, to engage in wire fraud, and to bribe a public

5     official, in particular, an employee at the Small Business

6     Administration.  This is alleged to have occurred slightly

7     before and then after the time that Mr. Greenberg was on

8     pretrial release in this case, and it is alleged that he used

9     false and fraudulent pretenses about some businesses associated

10    with him.  Those false and fraudulent presentences inflated the

11    amount of revenues those companies had and falsely represented

12    that they were impacted by COVID when, in fact, the two

13    businesses actually had been administratively dissolved and

14    were not in operation.  So this is alleged to be a violation of

15    the conspiracy statute, Section 371 of Title 18.  There's a

16    number of overt acts that are also alleged.

17         Because Mr. Greenberg committed this crime while he

18    was on pretrial release, he is subject to enhanced penalties.

19    Normally, the penalty would be 5 years in federal prison, but

20    because he was on pretrial release, it's increased to a maximum

21    sentence of 15 years' imprisonment; a fine of $250,000 or twice

22    the gross gain caused by the offense or twice the gross loss

23    caused by the offense, whichever is greater; a term of

24    supervised release of 3 years, and a special assessment of

25    $100.

1            Now, Mr. Greenberg, for some of the counts to which

2    he is pleading, is also going to be subject to mandatory

3    restitution as set forth on pages 7 and 8 of his plea

4    agreement.  He will be paying restitution to the minor victim

5    in Count 1 in an amount determined by the Court and the

6    probation office.  He'll be making restitution for the victim

7    in Count 8 and Count 9 in amounts as determined by the Court

8    and the probation office for those offenses.  He will also be

9    ordered to pay restitution to Seminole County and Seminole

10   County Tax Collector's Office for the wire fraud scheme charged

11   in Count -- Count 14 in an amount to be determined by the Court

12   and the probation office.  He'll be ordered to pay restitution

13   to the school employee, who was the victim of the stalking

14   count, Count 24.  And then he'll also be ordered to pay

15   restitution to the Small Business Administration for the

16   offense charged in Count 26 in an amount to be determined by

17   the Court and the probation office.

18           And then, finally, he's also going to be subject to

19   forfeiture for some of the assets and property that he obtained

20   during the course of his scheme, and on pages 13 through 17 of

21   his plea agreement, there's the forfeiture section, which

22   includes that some of the assets he's going to be forfeited are

23   $654,799.95 in proceeds that he admits he obtained as a result

24   of the commissions of the offense to which he's pleading

25   guilty.  And that plea agreement further breaks that down

1    between the wire fraud count and then the conspiracy count in

2    Count 26.

3              And then, finally, Your Honor's already covered the

4    sexual offender registration and notification requirement.

5              So those are the penalties I think he's subject to.

6         **THE COURT:**  Thank you, Mr. Handberg.

7              Mr. Greenberg, with respect to Counts 14, 24, and 26,

8    do you understand the counts as they were just summarized?

9         **THE DEFENDANT:**  I do.

10        **THE COURT:**  Do you understand the maximum penalties

11   you're facing with respect to those three counts as they were

12   just summarized?

13        **THE DEFENDANT:**  I do.

14        **THE COURT:**  Do you understand your restitution

15   provision as it was just summarized?

16        **THE DEFENDANT:**  I do.

17        **THE COURT:**  Do you understand your forfeiture

18   provision as it was just summarized?

19        **THE DEFENDANT:**  I do.

20        **THE COURT:**  Okay.  So now what I wanted to talk to

21   you about is the sentencing guidelines, Mr. Greenberg.  Have

22   you spoken to your attorney about the United States Sentencing

23   Guidelines and how they may apply to your case?

24        **THE DEFENDANT:**  I have.

25        **THE COURT:**  Has he answered all questions you may

1      have about that?

2              **THE DEFENDANT:**  Yes, he has.

3              **THE COURT:**  Okay.  So I'm not going to go over them

4      in great detail, or we'd be here all day, but there are just a

5      couple of points I wanted to highlight for you.  The first is

6      that as Judge Presnell determines an appropriate sentence in

7      your case, he'll look at the United States Sentencing

8      Guidelines, and what they do is they come up with a chart.

9      They look at your criminal history, and they look at the

10     offenses, and they're put into categories, and it comes up with

11     a sentencing range, a low end and a high end.

12             But in addition to looking at the guidelines,

13     Judge Presnell will have the benefit of an additional document,

14     and that's called a "presentence investigation report."  That's

15     prepared by the United States Probation Office.  They'll talk

16     with you.  They'll talk with your attorneys.  They'll talk with

17     the United States Attorney's Office and with various other

18     people, and they'll prepare a report that's going to include

19     information such as your personal history, personal

20     characteristics, your criminal history, if any.  It'll talk

21     about the nature and circumstances of the various offenses and

22     come up with a recommendation to Judge Presnell of a guideline

23     range as well.  So Judge Presnell will have that.

24             You'll have an opportunity to review that report

25     prior to your sentencing hearing.  You and your attorney can

1    object, file any objections you may have to anything in that

2    report that you disagree with.  And then, of course, at your

3    sentencing hearing, both you and your attorney, Mr. Scheller,

4    will have an opportunity to speak to Judge Presnell directly.

5              Do you understand everything I've said so far,

6    Mr. Greenberg?

7              **THE DEFENDANT:**  I do.

8              **THE COURT:**  Okay.  So then what I want to make sure

9    you definitely understand is that the guidelines are just that.

10   They're guidelines.  They're advisory, meaning Judge Presnell

11   does not have to accept any of these recommendations or

12   guidelines.  He can fashion a sentence that he determines is

13   appropriate of his own choosing.  And, in particular, if

14   Judge Presnell were to impose a sentence that's higher than

15   what you think you're going to get or Mr. Scheller thinks

16   you're going to get or even the United States Attorney's Office

17   thinks you're going to get, that will not be a basis for you to

18   withdraw your plea of guilty.  Do you understand that,

19   Mr. Greenberg?

20             **THE DEFENDANT:**  I do.

21             **THE COURT:**  Okay.  Then the other thing I wanted to

22   just point out is, in addition to getting all that information,

23   Judge Presnell himself is going to look at those same factors.

24   He's going to look at your personal history, your criminal

25   history, the nature and circumstances of -- surrounding the

1   various offenses.  He'll also look at the need to impose a

2   sentence that reflects the seriousness of the offenses.  So

3   those are all some of the factors that Judge Presnell will look

4   at.

5           The other thing I wanted to mention is you may have

6   heard -- in various state criminal systems, there's something

7   called "parole" where, if you get sentenced to a term of

8   imprisonment, you get out early on parole.  The federal system

9   does not have parole.  So if you were sentenced to a term of

10  imprisonment, you will be getting out early on parole.  Do you

11  understand that, Mr. Greenberg?

12          **THE DEFENDANT:**  I do.

13          **THE COURT:**  Okay.  Any questions for me so far?

14          **THE DEFENDANT:**  I don't have any.

15          **THE COURT:**  Okay.  So now I wanted to talk to you

16  about your plea agreement.

17          Mr. Handberg, do you have the original?

18          **MR. HANDBERG:**  I do, Your Honor.

19          **THE COURT:**  All right.  Will you do me a favor and

20  then --

21          And, Mr. Scheller, do you have a copy?

22          **MR. SCHELLER:**  I do -- excuse me.  I do, Your Honor.

23          **THE COURT:**  Okay.  And is that a fully executed copy?

24          **MR. SCHELLER:**  It is.

25          **THE COURT:**  Okay.

1        **MR. SCHELLER:**  It is the one filed with the Court on

2    Friday.

3        **THE COURT:**  Okay.  Perfect.

4        So, Mr. Handberg, would you please go to page 20- --

5    I think it's -- yeah, 24, and can you confirm your signature,

6    Ms. Harrington's signature, and Ms. Thomas's signature.

7        **MR. HANDBERG:**  Yes.  And I signed on behalf of

8    Ms. Thomas.

9        **THE COURT:**  Okay.  And, Mr. Scheller, will you please

10   confirm for me that's your signature on page 24.

11       **MR. SCHELLER:**  It is, Your Honor.

12       **THE COURT:**  And, Mr. Greenberg, is that your

13   signature on page 24?

14       **THE DEFENDANT:**  It is.

15       **THE COURT:**  And now I want you to take a minute --

16   and it's going to take a few minutes because it's a big

17   document.  Would you please go through all 86 pages and confirm

18   those are your initials on every single page.

19       **THE DEFENDANT:**  Yes, they are.

20       **THE COURT:**  Thank you, Mr. Greenberg.

21       Have you read your entire plea agreement, all 86

22   pages?

23       **THE DEFENDANT:**  I have.

24       **THE COURT:**  Have you had an opportunity to talk to

25   Mr. Scheller about your plea agreement?

1          **THE DEFENDANT:**  Yes, I have.

2          **THE COURT:**  Has he answered any questions you may

3     have about it?

4          **THE DEFENDANT:**  Yes, he has.

5          **THE COURT:**  Do you understand your plea agreement?

6          **THE DEFENDANT:**  I do.

7          **THE COURT:**  Okay.  Other than what's in the plea

8     agreement, Mr. Handberg, are there any offers floating around

9     out there that I should be aware of?

10          **MR. HANDBERG:**  No, Your Honor.  This was the only

11     offer.

12          **THE COURT:**  Thank you, Mr. Handberg.

13          Mr. Scheller, is that your understanding as well?

14          **MR. SCHELLER:**  Yes, that's correct.

15          **THE COURT:**  Thank you.

16          So, Mr. Greenberg, I'm going to go over a few

17     provisions from here.  I'm not going to go over every single

18     provision, but I just want to make sure you understand that by

19     signing the plea agreement and initialing every page and our

20     discussion here today, you're agreeing to abide by your plea

21     agreement -- every single page, every single paragraph, every

22     single word.  Do you understand that, sir?

23          **THE DEFENDANT:**  I do.

24          **THE COURT:**  And do you agree to abide by your plea

25     agreement?

1          **THE DEFENDANT:**  Yes, I do.

2          **THE COURT:**  Okay.  So what I'm going to do -- and

3    I'll tell you the pages I'm going over so you can follow along

4    with me if you want.  The first provision I'm going to go over

5    with you, sir, is -- well, let me just make one thing for the

6    record.

7          Mr. Handberg, I just want to make sure.  I don't know

8    if I said this yet.  I know we're talking about Counts 1, 8, 9,

9    14, 24, and 26, in the third superseding indictment.  It's my

10   understanding that at the sentencing hearing, the United States

11   will move to dismiss all other counts including in the previous

12   versions of the indictments.

13         **MR. HANDBERG:**  That's correct.

14         **THE COURT:**  Okay.  Thank you.

15         And, Mr. Scheller, that's your understanding as well?

16         **MR. SCHELLER:**  It is.

17         **THE COURT:**  Okay.  So what I'm going to do,

18   Mr. Greenberg, is let's start on page 8 of your plea agreement,

19   and it's paragraph 9, and it's entitled "Guideline Sentence."

20   And what it's saying here, Mr. Greenberg, is that at the

21   sentencing hearing, the United States is going to recommend

22   that you be sentenced within the guidelines range and that --

23   the main thing I want to point out to you is that you

24   understand that that recommendation is just that.

25   Judge Presnell does not have to accept that recommendation, and

1    if Judge Presnell does not accept that recommendation, that

2    will not be a basis for you to withdraw your plea of guilty.

3    Do you understand that, Mr. Greenberg?

4             **THE DEFENDANT:**  I do.

5             **THE COURT:**  Okay.  Then, on the very next page --

6    it's page 9, paragraph 10, acceptance of responsibility -- what

7    it's saying here, Mr. Greenberg, is that at the sentencing

8    hearing, assuming there is no new negative information

9    discovered about you, the United States is going to recommend

10   to Judge Presnell a three-level downward adjustment in your --

11   in your range for acceptance of responsibility.  But, again,

12   what I want to make sure you understand is that's just a

13   recommendation.  Judge Presnell does not have to accept it, and

14   if he does not accept it, that will not be a basis for you to

15   withdraw your plea of guilty.  Do you understand that,

16   Mr. Greenberg?

17            **THE DEFENDANT:**  I do.

18            **THE COURT:**  Okay.  Then, on the bottom of page 9 --

19   and it goes over to page 11 -- there is a substantial

20   assistance cooperation provision, and what it's saying here is

21   that if any cooperation is completed prior to sentencing, the

22   United States will consider whether it qualifies as substantial

23   assistance to ask Judge Presnell for an additional reduction in

24   your sentence at the sentencing hearing.  If the cooperation is

25   completed after your sentencing hearing, the United States

1    agrees to consider whether or not your cooperation qualifies

2    for a post-judgment motion to reduce your sentence.  But I want

3    to make sure you understand that the determination of whether

4    or not any cooperation you make qualifies as substantial

5    assistance -- that decision rests entirely with the

6    United States.  They have full discretion, and if they choose

7    not to file a motion, that will not be a basis for you to

8    withdraw your plea of guilty.  Do you understand that,

9    Mr. Greenberg?

10            **THE DEFENDANT:**  I do.

11            **THE COURT:**  Okay.  And then the next provision I

12   wanted to go over just very briefly with you is on page 13,

13   paragraph 14, and that's the forfeiture provision.  It goes

14   over to page 17.  I just want to make sure you've read your

15   forfeiture provision and you understand it, sir.

16            **THE DEFENDANT:**  I have.

17            **THE COURT:**  Okay.  And you understand it, sir?

18            **THE DEFENDANT:**  I do.

19            **THE COURT:**  Okay.  Then, if you go to page 17,

20   paragraph 15, it's the sex offender registration and

21   notification.  I just want to make sure you understand that you

22   will have to register and keep your registration current in --

23   in the location of your residence, your employment, and, if you

24   go to school, at your location of any school.  And you

25   understand that if you don't comply with those obligations, you

1    could be subjecting yourself to further prosecution.  Do you

2    understand that, Mr. Greenberg?

3          **THE DEFENDANT:**  I do.

4          **THE COURT:**  Okay.  Then there is a restitution

5    provision that we have gone over briefly already.  Do you

6    understand your restitution provision, Mr. Greenberg?

7          **THE DEFENDANT:**  Yes, I do.

8          **THE COURT:**  Okay.  Then the next thing I wanted to go

9    over with you is on page 20, paragraph 6, sentencing

10   recommendations.  And what it's saying here is that you've

11   executed this plea agreement and you've agreed to be a party to

12   it.  The United States Attorney's Office has executed this plea

13   agreement, but Judge Presnell and the Court have not.  So I

14   know I'm being repetitive, but any of these recommendations,

15   particularly with respect to a sentence you should receive,

16   Judge Presnell does not have to accept any of those

17   recommendations, and if he does not accept those

18   recommendations, that will not be a basis for you to withdraw

19   your plea of guilty.  Do you understand that, sir?

20         **THE DEFENDANT:**  I do.

21         **THE COURT:**  Okay.  Then the next provision is on the

22   next page, page 21, paragraph 7.  It's your waiver of right to

23   appeal sentence, and what it's saying here, Mr. Greenberg, in

24   sum is that by entering into this plea agreement and going

25   through this hearing today, you're waiving your right to appeal

1    your sentence except for four narrow bases, and those are if

2    Judge Presnell imposes a sentence that exceeds the guideline

3    range, you can appeal; if Judge Presnell imposes a sentence

4    that exceeds the statutory maximum, you can file an appeal; if

5    Judge Presnell imposes a sentence that violates the Eighth

6    Amendment to the United States Constitution, you can appeal; or

7    if the United States files an appeal, then you may also appeal.

8    But other than those four narrow bases, you're otherwise

9    waiving your right to appeal your sentence.  Do you understand

10   that, Mr. Greenberg?

11           **THE DEFENDANT:**  I do.

12           **THE COURT:**  Okay.  Mr. Handberg, are there any other

13   provisions of the plea agreement before we get to the factual

14   basis that you would like me to go over with Mr. Greenberg?

15           **MR. HANDBERG:**  No, Your Honor.

16           **THE COURT:**  Mr. Scheller, are there any other

17   provisions of the plea agreement you'd like me to go over with

18   your client?

19           **MR. SCHELLER:**  No.

20           **THE COURT:**  Okay.  Thank you.

21           So what we've done so far, Mr. Greenberg, is we've

22   gone over the rights that you have, the rights that you'll be

23   giving up if you change your plea today, the consequences of

24   pleading guilty to a felony.  We've talked about the charges

25   that you may be pleading guilty to and the maximum penalties

1    that you may be facing, talked about the sentencing guidelines

2    and how they may apply, and we've talked about your plea

3    agreement.  Any questions for me about anything we've gone over

4    so far, sir?

5              THE DEFENDANT:  No.

6              THE COURT:  Okay.  Do you understand everything we've

7    gone over so far?

8              THE DEFENDANT:  I do.

9              THE COURT:  All right.  Then, Mr. Greenberg, I'm

10   going to ask you directly, with respect to Count 1, how do you

11   plead?

12             THE DEFENDANT:  Guilty.

13             THE COURT:  As to Count 8, how do you plead?

14             THE DEFENDANT:  Guilty.

15             THE COURT:  As to Count 9, how do you plead?

16             THE DEFENDANT:  Guilty.

17             THE COURT:  As to Count 14, how do you plead?

18             THE DEFENDANT:  Guilty.

19             THE COURT:  As to Count 24, how do you plead?

20             THE DEFENDANT:  Guilty.

21             THE COURT:  As to Count 26, how do you plead?

22             THE DEFENDANT:  Guilty.

23             THE COURT:  And just for the record, those are all

24   the counts from the third superseding indictment.

25             Okay.  So, Mr. Greenberg, in order for me to accept

1    your plea and make that report and recommendation to

2    Judge Presnell that he accept your plea, I need to find that

3    there's a sufficient factual basis to support your plea.  So

4    what we're going to do now is we're going to look at the back

5    of your plea agreement, and it starts on page -- well, there's

6    a factual basis attached.  I think it starts on page 28, and

7    what I'm going to do is I'm going to go one count at a time.

8              And, Mr. Scheller, just for your purposes, what I

9    plan on doing is going through the pages for each count and

10   then do the personalization of elements for that count, and

11   then we'll go to the next one so that we don't get too

12   confused.

13             Any objection to me doing that, Mr. Handberg?

14             **MR. HANDBERG:**  No, Your Honor.

15             **THE COURT:**  Okay.  So some of my pages are upside

16   down, so just give me one second.

17             Okay.  So on Count 1, Mr. Greenberg, the factual

18   basis starts on page 28, and it goes over to page 32.  Have you

19   read those pages, Mr. Greenberg?

20             **THE DEFENDANT:**  Yes, I have.

21             **THE COURT:**  Do you understand them?

22             **THE DEFENDANT:**  I do.

23             **THE COURT:**  Do you admit that the facts listed on

24   page 28 to 32 -- do you admit those are the facts as to

25   Count 1?

1          **THE DEFENDANT:**  I do.

2          **THE COURT:**  Do you admit that these are the facts of

3     what you actually did?

4          **THE DEFENDANT:**  I do.

5          **THE COURT:**  Mr. Scheller, any objection or

6     corrections to any of the facts on pages 28 to 32?

7          **MR. SCHELLER:**  No, Your Honor.

8          **THE COURT:**  Okay.  Mr. Handberg, are there -- before

9     I get to the personalization of elements, are there any other

10    questions with respect to the factual basis as to Count 1 you'd

11    like me to ask Mr. Greenberg?

12         **MR. HANDBERG:**  No, Your Honor.

13         **THE COURT:**  Okay.  So what I'm going to do now --

14    it's on page 25.  We have what's called a "personalization of

15    elements," Mr. Greenberg, and what's done there is for each

16    count, it's broken down the essential elements into yes-or-no

17    questions.  So I'm going to ask you those as to Count 1.

18         So on Count 1, Mr. Greenberg, did you knowingly

19    recruit, entice, harbor, transport, provide, obtain, advertise,

20    maintain, patronize, or solicit by any means the individual

21    identified in the indictment?  Yes or no?

22         **THE DEFENDANT:**  Yes.

23         **THE COURT:**  Did you do so having had a reasonable

24    opportunity to observe the individual identified in the

25    indictment or knowing or in reckless disregard of the fact that

1 the person had not attained the age of 18 years and would be

2 caused to engage in a commercial sex act?  Yes or no?

3    **THE DEFENDANT:**  Yes.

4    **THE COURT:**  Was the individual identified in the

5 indictment a person who had attained the age of 14 years but

6 had not attained the age of 18 years?  Yes or no?

7    **THE DEFENDANT:**  Yes.

8    **THE COURT:**  Were your acts in or affecting interstate

9 or foreign commerce?  Yes or no?

10    **THE DEFENDANT:**  Yes.

11    **THE COURT:**  Okay.  Now we're going to go to Counts 8

12 and 9.  The factual basis for those counts is set forth on

13 pages 32 through -- well, let's just go with Count -- 32

14 through 38.

15    Is that correct, Mr. Handberg?

16    **MR. HANDBERG:**  It is, Your Honor.

17    **THE COURT:**  Thank you, sir.

18    So on pages 32 through 38, Mr. Greenberg, we have the

19 factual basis for Counts 8 and 9.  Have you read those pages,

20 sir?

21    **THE DEFENDANT:**  I have.

22    **THE COURT:**  Do you understand those pages?

23    **THE DEFENDANT:**  I do.

24    **THE COURT:**  Do you admit that the facts as laid out

25 on pages 32 through 38 are the facts of Counts 8 and 9?

1              **THE DEFENDANT:**  Yes.

2              **THE COURT:**  Do you admit that those are the facts of

3    what you actually did?

4              **THE DEFENDANT:**  Yes.

5              **THE COURT:**  Any objection to the facts as laid out on

6    pages 32 through 39, Mr. Scheller?

7              **MR. SCHELLER:**  No, Your Honor.

8              **THE COURT:**  Okay.  Any other questions you would like

9    me to ask Mr. Greenberg -- excuse me.  To 38.

10             Any other questions, Mr. Handberg, you would like me

11   to ask Mr. Greenberg as to those facts?

12             **MR. HANDBERG:**  No, Your Honor.

13             **THE COURT:**  Thank you.

14             So now we're going to go back and do the

15   personalization of elements again, Mr. Greenberg, on Count 8,

16   and we'll do 8 and 9 one right after the other.

17             On Count 8, Mr. Greenberg, did you knowingly produce

18   an identification document, authentication feature, or false

19   identification document?  Yes or no?

20             **THE DEFENDANT:**  Yes.

21             **THE COURT:**  Did you do so without lawful authority?

22   Yes or no?

23             **THE DEFENDANT:**  Yes.

24             **THE COURT:**  Was the production of the identification

25   document, authentication feature, or false identification

34

1    document in or affecting interstate or foreign commerce, or was

2    the identification document or false identification document

3    transported in the mail in the course of production?  Yes or

4    no?

5              **THE DEFENDANT:**  Yes.

6              **THE COURT:**  And on Count 9 did you knowingly --

7    Mr. Greenberg, did you knowingly transfer, possess, or use

8    another person's means of identification?  Yes or no?

9              **THE DEFENDANT:**  Yes.

10              **THE COURT:**  Did you do so without lawful authority?

11    Yes or no?

12              **THE DEFENDANT:**  Yes.

13              **THE COURT:**  Did you do so during and in relation to a

14    felony violation of 18 U.S.C., Section 1028(a)(1)?  Yes or no?

15              **THE DEFENDANT:**  Yes.

16              **THE COURT:**  Did you know that the means of

17    identification belonged to an actual person?  Yes or no?

18              **THE DEFENDANT:**  Yes.

19              **THE COURT:**  Okay.  So now we're going to go on to

20    Count 14, and the factual basis starts at the bottom of

21    page 38, and it goes over to -- okay.  It goes from page 38 to

22    the top of page 70.

23            So, Mr. Greenberg, let me ask you the same questions

24    again.  Have you read the factual basis as to Count 14 that

25    goes from page 38 to page 70?

1          **THE DEFENDANT:**  I have.

2          **THE COURT:**  Do you understand the factual basis on

3    those pages?

4          **THE DEFENDANT:**  Yes, I do.

5          **THE COURT:**  Have you had an opportunity to ask

6    Mr. Scheller any questions you may have about those pages?

7          **THE DEFENDANT:**  Yes, I have.

8          **THE COURT:**  Okay.  Do you admit that the facts as

9    laid out on pages 38 to 70 are the facts of your case?

10         **THE DEFENDANT:**  I do.

11         **THE COURT:**  Do you admit that these are the facts of

12   what you actually did?

13         **THE DEFENDANT:**  I do.

14         **THE COURT:**  Any objections to the facts as laid out

15   on pages 38 to 70, Mr. Scheller?

16         **MR. SCHELLER:**  There are not, Your Honor.

17         **THE COURT:**  Mr. Handberg, any other questions you

18   would like me to ask Mr. Greenberg with respect to the factual

19   basis?

20         **MR. HANDBERG:**  No, Your Honor.

21         I would like to point out that Mr. Scheller -- so

22   after Mr. Greenberg had initialed the plea agreement, there

23   were two places in the plea agreement -- on page 68 is the

24   first of these -- where I realized I had made a typographical

25   error, which has been interlineated with the correct term put

1    in.  And so in this case on page 68, it says, "After Greenberg

2    was indicted, the auditors attempted to find any of the

3    cryptocurrency machines" -- I had originally written "funds."

4    So that was a typo on my part, so we corrected that.

5           **THE COURT:**  Okay.

6           **MR. HANDBERG:**  And I checked with Mr. Scheller on

7    Friday and got his authorization to make that change.  So I

8    would just like to note that for the record.

9           **THE COURT:**  Thank you, Mr. Handberg.

10          Mr. Scheller, is that your understanding as well?

11          **MR. SCHELLER:**  Yes.  The defense agreed to that

12    change.

13          **THE COURT:**  Okay.  Thank you very much.

14          So with respect to Count 14, Mr. Greenberg, I'm going

15    to ask you those questions again, and that's on page 26, the

16    personalization of elements.  So, Mr. Greenberg, did you

17    knowingly devise or participate in a scheme to defraud or to

18    obtain money or property by using false pretenses,

19    representations, or promises?  Yes or no?

20          **THE DEFENDANT:**  Yes.

21          **THE COURT:**  Were the false pretenses,

22    representations, or promises about a material fact?  Yes or no?

23          **THE DEFENDANT:**  Yes.

24          **THE COURT:**  Did you act with the intent to defraud?

25    Yes or no?

1          **THE DEFENDANT:**  Yes.

2          **THE COURT:**  Did you transmit or cause to be

3   transmitted by wire some communication of interstate commerce

4   to help carry out the scheme?  Yes or no?

5          **THE DEFENDANT:**  Yes.

6          **THE COURT:**  Okay.  Now on to Count 24.  The factual

7   basis for Count 24 is set forth on page 70 through 74.

8   Mr. Greenberg, have you read the factual basis that's set forth

9   on pages 70 through 74 as to Count 24?

10          **THE DEFENDANT:**  Yes.

11          **THE COURT:**  Do you understand your factual basis on

12   those pages?

13          **THE DEFENDANT:**  I do.

14          **THE COURT:**  Okay.  Do you admit that these are the

15   facts as to Count 24?

16          **THE DEFENDANT:**  Yes.

17          **THE COURT:**  Do you admit that these are the facts of

18   what you actually did?

19          **THE DEFENDANT:**  I do.

20          **THE COURT:**  Mr. Scheller, any objection to the facts

21   as laid out on pages 70 through 74?

22          **MR. SCHELLER:**  There are no objections, Your Honor.

23          **THE COURT:**  Thank you.

24          Mr. Handberg, any other questions you would like me

25   to ask Mr. Greenberg as to those facts?

1          **MR. HANDBERG:**  No, Your Honor.

2          **THE COURT:**  Okay.  So back to the personalization of

3     elements, Mr. Greenberg -- and this is on page 27 if you want

4     to follow along.  Mr. Greenberg, did you use the mail, any

5     interactive computer service or electronic communication

6     service or electronic communication system of interstate

7     commerce, or any other facility of interstate or foreign

8     commerce to engage in a course of conduct?  Yes or no?

9          **THE DEFENDANT:**  Yes.

10         **THE COURT:**  Did the course of conduct cause, attempt

11    to cause, or reasonably be expected to cause substantial

12    emotional distress to a person?  Yes or no?

13         **THE DEFENDANT:**  Yes.

14         **THE COURT:**  Did you act knowingly and with the intent

15    to injure, harass, or intimidate another person?  Yes or no?

16         **THE DEFENDANT:**  Yes.

17         **THE COURT:**  Okay.  So then the last count to go over,

18    Mr. Greenberg, the factual basis starts on page 74, and it goes

19    over to page 86, I believe, and those are the facts as they

20    pertain to Count 26.  Have you read those facts on pages 74 to

21    86, Mr. Greenberg?

22         **THE DEFENDANT:**  Yes, I have.

23         **THE COURT:**  Do you understand those pages, sir?

24         **THE DEFENDANT:**  I do.

25         **THE COURT:**  Do you admit that these are the facts as

1    they pertain to Count 26?

2              **THE DEFENDANT:**  Yes, I do.

3              **THE COURT:**  Do you admit that these are the facts of

4    what you actually did?

5              **THE DEFENDANT:**  Yes, I do.

6              **THE COURT:**  Mr. Scheller, any objection to the facts

7    as laid out on pages 74 to 86?

8              **MR. SCHELLER:**  No, Your Honor.

9              **THE COURT:**  Mr. Handberg, any other questions you'd

10   like me to ask Mr. Greenberg as it pertains to the facts on

11   Count 26?

12             **MR. HANDBERG:**  No, Your Honor.  I would just point

13   out that this is a place where we made a correction on

14   Friday -- Mr. Scheller and I did -- on page 78, at which point

15   we scratched out "Greenberg's" and added "the recruiting

16   conspirator's."  In that particular context, it was actually

17   talking about how the recruiter conspirator had their own false

18   applications for these EIDL loans.  EIDL is E-I-D-L loans.

19             **THE COURT:**  Mr. Scheller, is that your understanding

20   as well?

21             **MR. SCHELLER:**  That is correct.

22             **THE COURT:**  Okay.  Thank you.

23             So, Mr. Greenberg, for the last time, on Count 26 I'm

24   going to ask you the personalization of elements.  Again, those

25   are on page 27.

1          So, Mr. Greenberg, did two or more persons in some

2     way agree to try to accomplish a shared and unlawful plan?  Yes

3     or no?

4               **THE DEFENDANT:**  Yes.

5               **THE COURT:**  Did you know the unlawful purpose of the

6     plan and willfully join in it?  Yes or no?

7               **THE DEFENDANT:**  Yes.

8               **THE COURT:**  During the conspiracy, did one of the

9     conspirators knowingly engage in or at least -- in at least one

10    overt act as described in the indictment?  Yes or no?

11              **THE DEFENDANT:**  Yes.

12              **THE COURT:**  Was the overt act committed at or about

13    the time alleged and with the purpose of carrying out or

14    accomplishing some object of the conspiracy?  Yes or no?

15              **THE DEFENDANT:**  Yes.

16              **THE COURT:**  Did you commit the offense while on

17    release pursuant to an order in United States v. Joel Micah

18    Greenberg, Case No. 6:20-cr-97-GAP-LRH, in the United States

19    District Court for the Middle District of Florida, which order

20    notified you of the potential effect of committing an offense

21    while on pretrial release?  Yes or no?

22              **THE DEFENDANT:**  Yes.

23              **THE COURT:**  Is the United States satisfied with the

24    colloquy with regards to the factual basis as to all counts?

25              **MR. HANDBERG:**  Yes, Your Honor.

1          **THE COURT:**  Mr. Scheller, is the defense satisfied?

2          **MR. SCHELLER:**  Yes.

3          **THE COURT:**  Okay.  So, Mr. Greenberg, we're almost

4     done.  I just have a few more questions for you.

5          By the way, I do find that there's a sufficient

6     factual basis based on my discussion with you to support your

7     plea of guilty as to Counts 1, 8, 9, 14, 24, and 26 in the

8     third superseding indictment.

9          So, Mr. Greenberg, are you pleading guilty today

10    freely and voluntarily and because you believe it is in your

11    best interest to do so?

12         **THE DEFENDANT:**  I am.

13         **THE COURT:**  Are you pleading guilty because you are

14    guilty?

15         **THE DEFENDANT:**  I am.

16         **THE COURT:**  Okay.  Has anyone threatened you, forced

17    you, or coerced you in any way to get you to plead guilty

18    today?

19         **THE DEFENDANT:**  No.

20         **THE COURT:**  Okay.  Has anyone made any promises to

21    you other than what's in your plea agreement to get you to

22    plead guilty today?

23         **THE DEFENDANT:**  No.

24         **THE COURT:**  Okay.  You're represented by your

25    attorney, Mr. Scheller.  Have you discussed your case fully

1      with him?

2              **THE DEFENDANT:**  I have.

3              **THE COURT:**  Have you had enough time to talk with

4      Mr. Scheller, and are you satisfied with the way he has

5      represented you so far?

6              **THE DEFENDANT:**  I am.

7              **THE COURT:**  Okay.  Has anyone coached you or

8      suggested you answer anything untruthfully today?

9              **THE DEFENDANT:**  No.

10             **THE COURT:**  Have you told the truth here today, sir?

11             **THE DEFENDANT:**  I have.

12             **THE COURT:**  Okay.  Is the United States satisfied

13     with the plea colloquy?

14             **MR. HANDBERG:**  Yes, Your Honor.

15             I would just like to point out two things.  One is

16     with respect to the plea agreement.  This is the entirety of

17     the agreement.  There are no sealed addendums or anything that

18     has been filed under seal.  This is the entire agreement.

19             You did cover, I think, this, but just to make sure,

20     in terms of his rights, in addition to the right against

21     compelled self-incrimination and the right to remain silent, he

22     also at trial would have the right to testify, so I think we

23     might want to just briefly cover that with him so he knows that

24     he would have that ability if he went to trial.

25             **THE COURT:**  Sure, Mr. Handberg.

1          So, Mr. Scheller, it's your understanding there's

2     nothing under seal that we need to address in any way, shape,

3     or form?

4          **MR. SCHELLER:**  That's correct, Your Honor.

5          Also, I just want to put on the record this plea

6     agreement represents the culmination of all plea negotiations

7     and plea offers in this case.  It's embodied in this agreement.

8          **THE COURT:**  Thank you very much, Mr. Scheller.

9          So, Mr. Greenberg, I think I went over this, but just

10    to be safe, I want to make sure you understand that by pleading

11    today, you're giving up your right to remain silent in terms of

12    if you didn't plead guilty, you could go to trial and you could

13    choose whether or not to testify at trial.  You could remain

14    silent, or you could take the stand.  But by pleading guilty

15    today, you've waived that right as well.  Do you understand

16    that, sir?

17         **THE DEFENDANT:**  I do.

18         **THE COURT:**  Okay.  Anything else, Mr. Handberg, you

19    would like me to go over with Mr. Greenberg?

20         **MR. HANDBERG:**  No, I don't think so.  I think we

21    covered the elements when you did the personalization, so I

22    think we're covered.

23         **THE COURT:**  All right.  Mr. Scheller, is there

24    anything else you'd like me to go over with your client?

25         **MR. SCHELLER:**  No, Your Honor.

1        **THE COURT:**  All right.  So, Mr. Greenberg, like I

2    said at the beginning of this hearing, I'm going to issue

3    what's called a "report" to Judge Presnell recommending that he

4    accept your plea of guilty to these six counts in the third

5    superseding indictment.  I'm going to make my report in

6    writing, but I'm going to go ahead and say my findings right

7    now just in case you hear anything that sounds weird and you

8    want to discuss it with me now.  But I want to make clear

9    you're going to have 14 days to file any objections to my

10   report if you so choose.  Do you understand that,

11   Mr. Greenberg?

12        **THE DEFENDANT:**  I do.

13        **THE COURT:**  Okay.  So I find that you, Joel Micah

14   Greenberg, are now alert and intelligent, that you understand

15   the nature of the charges against you and the possible

16   penalties, and that you appreciate the consequences of pleading

17   guilty.  I also find that the facts that the United States is

18   prepared to prove and which by your guilty plea you admit,

19   based on the factual basis attached to the plea agreement to

20   which there has been no objection, and my discussion here today

21   with you, sir, do state all of the essential elements of the

22   offenses to which you have pleaded guilty.  I further find that

23   your decision to plead guilty is freely, voluntarily,

24   knowingly, and intelligently made and that you have had the

25   advice and counsel of a competent attorney with whom you say

1    you are satisfied.

2         Do you agree with my findings, Mr. Greenberg?

3         **THE DEFENDANT:** I do.

4         **THE COURT:** Okay. Like I said, again, you'll have

5    14 days to file any written objections if you so choose. The

6    next proceeding in your case, Mr. Greenberg, will be your

7    sentencing hearing. I don't have a date for that, but

8    Judge Presnell will issue a notice of hearing in due course.

9    It's usually about 75 days from today, so that gives Probation

10   time to do their presentence report.

11        Is there anything else that we need to take up today

12   on behalf of the United States?

13        **MR. HANDBERG:** No, Your Honor. Thank you.

14        **THE COURT:** Mr. Scheller, anything else we need to

15   take up on behalf of Mr. Greenberg?

16        **MR. SCHELLER:** No.

17        **THE COURT:** Okay. I do know that Mr. Greenberg is in

18   custody, so I'll remand him back to the custody of the

19   United States Marshals. And, with that, we will be in recess.

20        **MR. SCHELLER:** Thank you, Your Honor.

21     (Proceedings concluded at 10:47 A.M.)

22

23

24

25

1                           -    -    -

2                    **CERTIFICATE OF REPORTER**

3        I certify that the foregoing is a correct transcript of the
         record of proceedings in the above-titled matter.
4

5        _____          05/17/2021
         Heather Suarez, RPR, FCRR                 Date
6        U.S. Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25