**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                 **Case No. 6:20-cr-97-GAP-LRH
(Forfeiture)**

**JOEL MICAH GREENBERG**

**UNITED STATES' MOTION FOR ENTRY
OF ORDER OF FORFEITURE**

The United States respectfully moves this Court, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Fed. R. Crim. P. 32.2(b)(2), to enter an order of forfeiture in the amount of $654,799.95, representing the amount of proceeds the defendant obtained as a result of the wire fraud scheme and conspiracy to commit offenses against the United States, which, upon entry, should become final as to the defendant.   In support thereof, the United States submits the following memorandum of law.

**MEMORANDUM OF LAW**

**I.**     **Statement of Facts**

1.     On March 30, 2021, a thirty-three count Third Superseding Indictment was returned, charging the defendant, in pertinent part, with a wire fraud scheme, in violation of 18 U.S.C. § 1343, and a conspiracy to commit

offenses against the United States (specifically, violations of 18 U.S.C. §§ 201, 287, 641 and 1343), in violation 18 U.S.C. § 371.   Doc. 90.   The Third Superseding Indictment also contained forfeiture allegations which notified the defendant that, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), among others, the United States would seek to forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to these violations.   *Id.* at 42-43.

2.   On May 14, 2021, the United States and the defendant entered into a plea agreement.   Doc. 105.   In paragraph 14 of his plea agreement, entitled "Forfeiture of Assets," the defendant agreed that he obtained $654,799.95 in proceeds as a result of the wire fraud scheme charged in Count Fourteen and the conspiracy charged in Count Twenty-Six.[1]   *Id.* at 13-14.

---

[1] While the defendant only pled to one substantive count of wire fraud, the United States is entitled to an order of forfeiture for the entire amount of the wire fraud scheme, not just the proceeds of the specific substantive count to which the defendant pled guilty. "When a scheme is charged, even though only certain substantive counts are proved, the proceeds of the scheme are forfeitable." *United States v. Clark,* 13-10034-CR, 2016 WL 361560, at *2 (S.D. Fla. 2016) (citing *United States v. Hasson*, 333 F.3d 1264, 1279–1280 (11th Cir. 2003)); *see also United States v. Venturella,* 585 F.3d 1013, 1015 (7th Cir. 2009) (forfeiture in fraud case "forfeiture is not limited to the amount of the particular mailing but extends to the entire scheme").

3.      On May 17, 2021, the defendant pled guilty to, among others, Counts Fourteen (wire fraud scheme, in violation of 18 U.S.C. § 1343) and Twenty-Six (conspiracy to commit offenses against the United States, in violation of 18 U.S.C. § 371) of the Third Superseding Indictment.   Doc. 106. On June 3, 2021, the Court accepted the plea of guilty and adjudicated the defendant guilty.   Doc. 115.   The defendant is scheduled to be sentenced on November 18, 2021.   Doc. 119.

## II.  <u>Applicable Law</u>

The United States is entitled to an order of forfeiture against the defendant, pursuant to 18 U.S.C. § 981(a)(1)(C). The United States may civilly forfeit, pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds of any "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).   A "specified unlawful activity," under 18 U.S.C. § 1956(c)(7), includes bribery (18 U.S.C. § 201) and theft of government property (18 U.S.C. § 641), or a conspiracy to commit such offenses (18 U.S.C. § 371).   A "specified unlawful activity" under section 1956(c)(7) also includes any offense listed in section 1961(1), which, in turn, includes any violation of sections 1343 (wire fraud), or a conspiracy to commit wire fraud (18 U.S.C. § 371).

3

Although § 981(a)(1)(C) is a civil forfeiture statute, 28 U.S.C. § 2461(c) authorizes the criminal forfeiture of any property that can be forfeited civilly, using the procedures for the criminal forfeiture and disposition of property set forth in 21 U.S.C. § 853.

For cases in which a defendant no longer has the actual dollars or property traceable to proceeds in her possession, or the government cannot locate those assets, the obligation to forfeit simply takes the form of an order of forfeiture in favor of the United States. *See United States v. Padron*, 527 F.3d 1156, 1161-62 (11th Cir. 2008). Rule 32.2(b)(1) provides that, where the government seeks an order of forfeiture, the Court must determine the amount of money that the defendant will be ordered to pay.

The defendant admitted that he has dissipated the criminal proceeds that he obtained from his offenses. Doc. 105 at 14. Because the United States could not locate the specific property constituting or derived from the proceeds the defendant obtained from the wire fraud scheme or conspiracy to commit offenses against the United States, the United States seeks an order of forfeiture against the defendant in the amount of $654,799.95, pursuant to Rule 32.2(b)(2). As the defendant has agreed, he obtained at least $654,799.95 in proceeds as a result of his participation in the wire fraud

4

scheme and the conspiracy to commit offenses against the United States.   If the Court finds that at least $654,799.95 was obtained by the defendant, and that he has dissipated those proceeds, then it is appropriate for the Court to enter an order of forfeiture against the defendant in that amount pursuant to Rule 32.2(b)(2).

III.   **Factual Basis**

The defendant, Greenberg, admitted in the Factual Basis of the Plea Agreement that he was elected as Seminole County Tax Collector in 2016, and started in office on or about January 3, 2017.   During his tenure as Tax Collector and after his arrest on June 23, 2020, Greenberg committed multiple federal criminal offenses.   Factual Basis at 28.

**Wire Fraud Scheme (Count 14)**

With respect to the wire fraud scheme to which he pled guilty, after assuming office as the Tax Collector, Greenberg used his access to the accounts and funds of the Tax Collector's Office to engage in a scheme to defraud that enabled him to deprive the Tax Collector's Office and Seminole County of the use and benefit of those funds. *Id.* at 38-70.

One of the focuses of Greenberg's fraud scheme related to his desire to acquire cryptocurrency for himself. *Id.* at 39. Starting in February 2017,

Greenberg obtained a series of American Express credit cards in the name of the Tax Collector's Office and used those cards to purchase thousands of dollars of personal items, including cryptocurrency for himself.   These purchases violated the Tax Collector Office policy. *Id.* In 2017, the Tax Collector's Office paid for a number of personal cryptocurrency purchases that Greenberg made using his Tax Collector's Office American Express corporate card, including at least one charge for $1,500 in November 2017 (Count 11). *Id.* at 39.

In 2018, Greenberg defrauded the Tax Collector's Office out of another $200,000 that he used for additional cryptocurrency purchases for his own personal benefit.   *Id.* at 51.   This time, he set up an account at Entity A in the name of the Seminole County Tax Collector's Office.   *Id.* He was the sole user on the account and the only one from the Tax Collector's Office with access to the account.   *Id.*   To fund the account, Greenberg told the Chief Financial Officer that he would like to invest "between $100k and $200k" in a fund.   *Id.*   When the CFO asked what the investment was, Greenberg lied about the investment, knowing that the real purpose for which he was seeking the funds was to purchase cryptocurrency for himself.   *Id.* at 51-52.   On about December 20, 2018, at Greenberg's direction, the CFO used interstate

wires to transfer $200,000 to the bank for the Entity A account of the Tax Collector's Office located outside of Florida (Count 14). *Id.* at 52.   Greenberg quickly spent the $200,000 in multiple purchases of cryptocurrency.   *Id.*

In 2019, Greenberg purchased additional cryptocurrency for himself using Tax Collector funds. *Id.* at 58. For this part of the scheme, he used an entity that he helped to establish by the name of Government Blockchain Systems, LLC.   *Id.* Greenberg opened an account at Fifth Third Bank in the name of Government Blockchain Systems and made himself the sole signatory.   *Id.* at 58-59.   Greenberg deposited a check from the Tax Collector's Office's Florida Capital bank account into the Government Blockchain Systems' Fifth Third Bank account in September 2019, and then used interstate and foreign wires to transfer most of those funds to accounts that he used to purchase cryptocurrency, including at least four transfers of $5,000, each, in September and October 2019, to an account at Entity B that he controlled (Counts 15-18). *Id.* at 59. The cryptocurrency ended up in wallets that belonged to Greenberg. *Id.* at 60.

Greenberg also used his purchases of cryptocurrency equipment to conceal other purchases he made for his own personal benefit.   For example, on about January 27, 2020, he used his American Express card from the Tax

Collector's Office to purchase an autographed Michael Jordan photograph for $599.95 (Count 20). *Id.* at 69.

As Greenberg admitted, in total, he obtained at least $222,099.95 from this wire fraud scheme.   *Id* at 13.

### Conspiracy (Count 26)

In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act.   *Id.* at 74. In conjunction with an officially declared disaster by the United States Government, the CARES Act allowed for the Small Business Administration, an agency of the United States, to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic.   To qualify, a business had to be in operation prior to February 1, 2020.   *Id.*

Using the SBA online portal, EIDL applicants submitted personal and business information in support of each EIDL application, and they did not have to submit supporting documentation of any sort.   *Id.* at 74. The application included a jurat-like paragraph where the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.   *Id.* 74-75.

8

To evaluate EIDL applications, the SBA computer system used automation and system programming to quickly conduct checks of each application submitted by each applicant.   *Id.* at 76.   The SBA computer system performed checks of the applicant's credit worthiness and evaluated other elements of data furnished by the applicant to identify duplicative applications and indicators of fraudulent activity.   The SBA computer system also utilized the information furnished by the applicant to determine the dollar amount of the loan offer that the applicant may be extended, which included gross revenues in the 12-month period prior to the disaster, costs of goods sold during that same timespan, and loss of rental income.   If any aspect of the application did not pass the automated evaluation within the SBA computer system, the application's progress was stopped, and an electronic notification was sent to the applicant regarding the potential cause for the application to be halted.   The applicant was then given the opportunity to engage with the SBA and request reconsideration of the application.   The loan application evaluation system also was designed so that SBA employees, to include SBA Loan Specialists, could affect applications and manually change and override the system's actions if appropriate and necessary.   *Id.*

9

As identified in the Third Superseding Indictment, the "SBA Employee" was a resident of the Middle District of Florida and a "public official" as defined by 18 U.S.C. § 201(a)(1).   *Id.*   In or about May 2020, the SBA Employee began working for the U.S. Government as an SBA Loan Specialist.   *Id.* As an SBA Loan Specialist, the SBA Employee was responsible for processing home and business loans; making recommendations on collateral needed to secure loans; applying accepted financial procedures to analyze financial resources to determine an applicant's ability to repay requested loans; reviewing all pertinent facts needed to make eligibility determinations by analyzing such factors as the nature and cause of damage, intended use of proceeds, legislative and administrative loan limits, and disposition of insurance and other recoveries; ensuring loan files contain all pertinent documentation, to include conversations with applicants and written recommendations or justifications for conclusions; processing loan applications on web-based computer system; and responding orally and in writing to applicants or their representatives.   *Id.* at 76-77.   Because of COVID-19, the SBA authorized the SBA Employee to work from the SBA Employee's residence located in the Middle District of Florida.   *Id.* at 77.

The defendant conspired with the SBA Employee and another individual to submit false applications for EIDL loans and to pay the SBA employee bribes for her assistance in approving the fraudulent applications. *Id.* at 77-86.   As a result of this fraud, Greenberg received $432,700 in fraudulent EIDL proceeds.   *Id.* at 85.

IV.   **Conclusion**

WHEREFORE, the United States respectfully requests that this Court enter an Order of Forfeiture for the $654,799.95 in proceeds the defendant admits he fraudulently obtained as a result of his wire fraud scheme and conspiracy, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Rule 32.2(b)(2), Federal Rules of Criminal Procedure.

The United States further requests that, because the $654,799.95 in proceeds was dissipated by the defendant, the United States may seek, as a substitute asset, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), forfeiture of any of the defendant's property up to the value of the proceeds obtained.

As required by Rule 32.2(b)(4)(B), the United States further requests that the Court include the forfeiture when orally announcing the sentence, and include the forfeiture order in the judgment.   *See United States v. Kennedy*, 201 F.3d 1324, 1326 (11th Cir. 2000) and Fed. R. Crim. P. 32.2(b)(4)(A) and (B).

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By:   *s/Suzanne Nebesky*
Suzanne Nebesky
Assistant United States Attorney
Florida Bar No. 59377
400 North Tampa St., Suite 3200
Tampa, Florida 33602
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6220
E-Mail:       Suzanne.nebesky@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Fritz J. Scheller, Esquire

By:   s/Suzanne Nebesky
SUZANNE NEBESKY
Assistant United States Attorney

12