**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**Case No.:   6:20-cr-00097-GAP-LHP-1**

UNITED STATES OF AMERICA,

        Plaintiff,                  Orlando, Florida
                                 November 30, 2022
        v.                 9:29 a.m. - 10:35 a.m.

JOEL MICAH GREENBERG,

        Defendant.
_____/

**TRANSCRIPT OF PRESENTENCING HEARING**
**BEFORE THE HONORABLE GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

**APPEARANCES:**

| | |
|---|---|
| **Counsel for the Government:** | Roger Bernard Handberg, III |
| | Amanda Sterling Daniels |
| | Jennifer Michele Harrington |
| | Chauncey Arthur Bratt |
| | United States Attorney's Office |
| | 400 West Washington Street |
| | Suite 3100 |
| | Orlando, Florida  32801 |
| | |
| **Counsel for Defendant:** | Fritz J. Scheller |
| | Fritz Scheller, PL |
| | 200 East Robinson Street |
| | Orlando, Florida  32801 |
| | |
| Court Reporter: | Nikki L. Peters, RMR, CRR, CRC |
| | Federal Official Court Reporter |
| | 401 West Central Boulevard, Ste 4600 |
| | Orlando, Florida  32801 |
| | courttranscripts@outlook.com |

Proceedings recorded by mechanical stenography.
Transcript produced by Computer-Aided Transcription.

1                         **INDEX OF PROCEEDINGS**

2                                                        **PAGE**

3      Request for 10-Level Reduction by Ms. Daniels          5

4      Response by Mr. Scheller                               6

5      Rebuttal Argument by Ms. Daniels                      13

6      Scoring and Guidelines Range Computation              17

7      Modifications to Restitution Amounts                  28

8      Certificate of Reporter                               31

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        **P R O C E E D I N G S**

2           (Court called to order.)

3                 **THE COURT:**  Good morning, everyone.  Be seated,

4     please.

5                 Okay.  Lisa, call the case.

6                 **THE COURTROOM DEPUTY:**  This is in the matter of the

7     United States of America v. Joel Micah Greenberg, Case

8     No. 6:20-cr-97-GAP-LHP.

9                 **THE COURT:**  Okay.  And who's appearing for the

10    Government?

11                **MS. HARRINGTON:**  Good morning, Your Honor.  Jennifer

12    Harrington on behalf of the United States.  Also on behalf of

13    the United States is United States Attorney Roger Handberg and

14    Assistant United States Attorneys Chauncey Bratt and Amanda

15    Daniels.

16                **THE COURT:**  Thank you.

17                Are you sure you don't need a couple more?

18                Mr. Scheller, you're all alone over there.

19                **MR. SCHELLER:**  Well, I have two marshals over here,

20    so ...

21                **THE COURT:**  Okay.  Well, they're there for you,

22    obviously.

23                **MR. SCHELLER:**  Yes.  Exactly.  I think I'm in a

24    better posture anyways.

25                Fritz Scheller on behalf of Joel Greenberg.

4

1     Mr. Greenberg, who is standing to my right, to the Court's

2     left.

3               **THE COURT:**  All right.  Thank you.

4               We're here today -- this morning as sort of what I

5     call phase one of this sentencing proceeding.  I thought in

6     light of the rather complicated scoring and magnitude of this

7     proceeding, that it would be a good idea to have one session to

8     resolve any objections to the presentence report and to resolve

9     any pending motions before the actual sentencing tomorrow.  So

10    that's the purpose of today's proceeding.

11              There is a pending motion, which is the Government's

12    motion for downward departure based on Mr. Greenberg's

13    substantial assistance.  And that motion is at

14    Document Number 154, which has been filed in the public record.

15    And the Government is recommending a 10-level departure as a

16    result of Mr. Greenberg's cooperation.

17              The United States also filed a sealed supplemental

18    memorandum in connection with that motion filed at

19    Document 157.  And that document sets forth some additional

20    information or cooperation provided by Mr. Greenberg for other

21    people, other crimes that are still under investigation, and,

22    therefore, not subject to public disclosure.

23              And Mr. Greenberg's counsel filed a response at

24    Document 162, and I think another one at 165 and 171.  I kind

25    of lost track of all the filings.  But, in essence, that's

*United States District Court*
*Middle District of Florida*

1      where we are now with respect to the motion for downward

2      departure, which I'd like to go ahead and get resolved first,

3      and then we'll take a look at the scoring and the PSR to see if

4      there's any objection to the scoring.

5           So would the Government like to proceed with the 5K

6      and make any presentation beyond that which is contained in the

7      papers that I just referenced?

8           **MS. DANIELS:**  Yes, Your Honor.  But the United States

9      would rest on the filings.  As Your Honor has stated, the

10     United States is requesting a 10-level reduction.

11          **THE COURT:**  If you're going to say more than just

12     hello, can you go --

13          **MS. DANIELS:**  Yes.

14          **THE COURT:**  -- to the podium, please.

15          **MS. DANIELS:**  Yes.  I apologize, Your Honor.

16          So as Your Honor has stated and as the United States

17     has stated in our filings, we are requesting a 10-level

18     reduction to the defendant's offense level.  After considering

19     the totality of the defendant's efforts at providing

20     assistance, the United States submits to Your Honor that the

21     10-level reduction in the defendant's offense level is a fair

22     and just outcome in this case.

23          As Your Honor has stated, we have provided a detailed

24     accounting of the defendant's assistance in both our public and

25     sealed filings, and at this time we would rest on those filings

1      in support of our request.

2              Thank you, Your Honor.

3              **THE COURT:**  All right.  Thank you.

4              Mr. Scheller.

5              **MR. SCHELLER:**  Thank you.  May it please the Court?

6              **THE COURT:**  Sure.

7              **MR. SCHELLER:**  Your Honor, I assume then -- I know

8      there was a number of pleadings.  I just want to verify that

9      you've read, obviously, my response that was filed in the

10     public record to the Government's 5K, my sealed memorandum that

11     was in response to the Government's own sealed memorandum.  And

12     then after consultation with the Government Monday and Tuesday,

13     yesterday I filed a supplement under seal, which the Court

14     granted.

15             The -- the reason for that, obviously --

16             **THE COURT:**  I granted the seal.

17             **MR. SCHELLER:**  The sealing of it, yes.  I'm sorry.

18             **THE COURT:**  I made a list here.  I've looked at

19     Document Number 162, 165, and 171.  I think those are your

20     filings.

21             **MR. SCHELLER:**  Yes.

22             **THE COURT:**  I've read them.

23             **MR. SCHELLER:**  Okay.  All right.  Well, I'll rely on

24     those.  But, Your Honor, I think the essential gist in all my

25     filings and throughout the filings is that 10 levels is --

1    while I appreciate the Government's request, 10 levels is not

2    adequate in this case.  And what has become apparent or has

3    been established through the pleadings and over the last two

4    years is that Mr. Greenberg has cooperated in four major areas.

5    I would define them as public corruption, bribery, and

6    kickbacks, obviously the SBA fraud, the area of election fraud,

7    which has been a significant issue, especially in Florida, and

8    as to the issue of sex crimes involving a number of other

9    individuals in Florida and nationally.

10           This cooperation started in Sem- -- Mr. Greenberg's

11   cooperation started in Seminole County, but it encompasses

12   activities in Tallahassee, Broward County, and to a certain

13   extent Washington, D.C.  The significance of his cooperation is

14   underscored by the fact that he has cooperated with various

15   offices of the DOJ, obviously in the Middle District of Florida

16   and in Washington, D.C.  He's also cooperated with the state

17   attorney's office in Seminole County and will be cooperating

18   with the FDLE regarding activities in Seminole County.

19           Through the course of his cooperation, he's

20   identified and assisted in investigations of approximately 24

21   individuals.  As you will see from the plea agreement, Your

22   Honor, there's a number of individuals that are referred to not

23   by name but in the different counts in Mr. Greenberg's

24   statements of fact.  And so there's at least seven individuals

25   that he's cooperated against in the realm of public corruption,

1    three in the context of SBA fraud, 10 in the context of

2    election fraud, and this includes ghost candidates and improper

3    funding, and approximately eight men in the area of sex crimes.

4            Now, that obviously comes out to more than 24

5    individuals.  There's a lot of crossover in this case.  And

6    while these are discrete categories, it's part of a larger

7    activity or scheme.  That is why Mr. Greenberg's cooperation

8    was so valuable.

9            Of the individuals, the 24 or so that I've named or

10   referred to, five have been charged.  Three have been

11   convicted.  One defendant passed away while his case was

12   pending.  That was Mr. Adamczyk.  And the fifth, Mike Shirley,

13   is awaiting trial.

14           There are multiple individuals that will be charged

15   in the context of the SBA fraud, and I suspect the other

16   schemes.

17           The extent of his cooperation is underscored by the

18   significant amount of effort he made over the course of the two

19   years.  He participated in at least 15 proffers with the

20   Government, both in person and in writing.  He provided

21   information, which I provided to this Court under seal, in

22   approximately 35 to 40 emails with attachments.  And these

23   attachments were significant documents, Your Honor, as you saw,

24   probably, from your review.

25           He gave access to all his computers, his

1    communication devices.  He provided documents to the

2    Government.  He provided financial records, social media posts,

3    receipts from hotels and Uber trips.

4         In Mr. Shirley's case, he actually provided the

5    critical receipt to the Government that will be used to show

6    that it was a kickback.

7         It is clear that his cooperation is truthful.  It was

8    corroborated by all the information he provided.  He was -- it

9    was corroborated by his documents, the financial records, and

10   multiple witnesses, including Mr. Ellicot and Ingersoll in

11   their proffers.  It's also been corroborated by the uncharged

12   defendants and witnesses in this case.  It's been corroborated

13   by the three guilty pleas in the case and the two other

14   charges -- cases that were charged.

15        And, of course, the Government, in filing the 5K, has

16   taken the position that Mr. Greenberg's cooperation was

17   truthful.

18        So against this backdrop, Your Honor, over the course

19   of the last two years and these multiple investigations and

20   these multiple charges and multiple convictions, how do we

21   judge an adequate departure in this case?  So the Government --

22   I submit to this Court the Government's request for 10 levels

23   may be the starting point, but it cannot be the sole criteria,

24   nor should it control this case or his guideline exposure for

25   two reasons.

1          The Government ultimately has control over the amount

2     they ask.  But they have further control over the prosecutions

3     they bring, the timing of those prosecutions.  They also have

4     exerted control in this case by requesting that the departure

5     not apply to the count carrying the aggravated identity theft.

6     So whatever departure this Court gives today as to the

7     guidelines, there's a consecutive two-year penalty that's been

8     added.  And so while the Government's actions may be well

9     intentioned, the bottom line, the ultimate result, is that they

10    have a significant amount of control.  In the plea agreement

11    they're going to ask for a guideline sentence.  With the filing

12    of the 5K, they're requiring a two-year consecutive to that

13    guideline sentence.

14          **THE COURT:**  Well, that's -- two years, in the scheme

15    of things, is not a lot of control.

16          **MR. SCHELLER:**  Two years on top?  It may not be a lot

17    of control, but it's a control over the sentence.  Because

18    whatever guideline sentence that they ask for, you're going to

19    add two years to that.

20          And so what I'm concerned about is the idea that we

21    should determine Mr. Greenberg's case by the outcome rather

22    than looking at what is the extent and nature and significance

23    of his cooperation.

24          And so while the Government -- and while I appreciate

25    what they have done in this case, ultimately, the control and

1    discretion with the filing of the 5K rests with this Court.

2    And that gives me some comfort or encouragement based on this

3    Court's practice with 5Ks.  So -- and there's two parts to

4    that.

5         First, this Court has always rewarded individuals for

6    contributing to investigations whether or not an indictment is

7    brought at the time of a defendant's sentencing.  And that's

8    important because I expect there will be two more indictments

9    coming in the next month or so, which will bring up his

10   cooperation to seven cases.

11        **THE COURT:**  Well, there's the possibility of a

12   Rule 35.

13        **MR. SCHELLER:**  Rule 35, as I pointed out to this

14   Court, is a very inferior alternative.  As this Court is aware

15   from my prior pleadings in the context of Rule 35s, the

16   departures are not as great as people who get the departures

17   under 5K.  And this is why the sentencing commission give a

18   much greater reduction than the person who gets a hybrid 5K and

19   Rule 35.

20        I would like to believe, and I have faith in the fact

21   that this Court took the position that we just didn't need to

22   have convictions, necessarily, to reward Mr. Greenberg for his

23   cooperation.

24        But here's a more, let me say, practical approach.

25        Joel [sic] Ellicot got four levels solely for Mike

1     Shirley, who hasn't pled guilty, four levels.  Mr. Greenberg

2     cooperated against Mike Shirley and actually gave the receipt

3     that's going to be critical evidence against Mike Shirley.  So

4     he's entitled to at least four levels for that.  But if we have

5     that precedent that you're awarding four levels just for that

6     case, then Mr. Greenberg should be getting four levels for

7     those other cases individually, including:  Keith Ingersoll,

8     who pled guilty; Teresa McIntyre, who pled guilty; Joel

9     Ellicot, who pled guilty; Jim Adamczyk, who was indicted but

10    hasn't pled guilty.

11         So we have a significant amount of cooperation in

12    Mr. Greenberg's case compared to Joel Ellicot.  And I would

13    submit to this honorable court that once you've provided four

14    levels for Joel Ellicot, justice and consistency demand that

15    Mr. Greenberg be treated the same way whatever the ultimate

16    guideline result is.  And if we're giving four levels to

17    Mr. Ellicot, he certainly is entitled to much more than the 10

18    levels just based on the fact that there's five cases that have

19    been brought as a result of Mr. Greenberg's cooperation and

20    another two that are going to be brought.  And I conferred with

21    one of those putative defendants' attorneys who's expecting an

22    information and plea agreement to come shortly.

23         So, Your Honor, 10 is wholly inadequate in this case.

24    It's inconsistent with this Court's approach.  It's

25    inconsistent with the precedent set in Mr. Ellicot's case.

1          The bottom line is you've had an individual, for two

2     years who has met with the Government time and time again, has

3     made a consistent effort, 40 emails, 15 proffers, significant

4     documents that this Court has reviewed.  And the fact that the

5     Government may not have brought investigations in this case

6     should not be the determining factor.

7          Thank you, Your Honor.

8          **THE COURT:**  All right.  Thank you, Mr. Scheller.

9          Does the Government want to rebut that?

10         **MS. DANIELS:**  Thank you, Your Honor.

11         The most important thing for Your Honor to, I

12    believe, understand in this analysis is how the Government came

13    to its recommendation.  And the Government came to its

14    recommendation by considering this case individually and this

15    defendant's efforts at assistance in their totality.  So we

16    took a holistic view of everything the defendant has provided

17    for us.  And as the Court, I'm sure, read in the United States'

18    sealed filing, the defendant was given credit for cases that

19    are under investigation.

20         Additionally and lastly, the defendant -- I'm sorry,

21    the defense attorney in this case referenced the SBA fraud.

22    And the United States would just like to remind the Court that

23    the defendant was given credit for those other two cases in our

24    filing.  So we have considered all of those things in our

25    recommendation, and we believe that a 10-level reduction is the

1      most fair outcome in this case considering this defendant

2      individually.

3              **THE COURT:**  All right.  Thank you.

4              Well, these departure levels are difficult for a

5      district judge, primarily because there's -- the structure of

6      the law really gives us no formula, no basis to compute an

7      appropriate level of departure.  There are statistics available

8      nationwide that reflect how different districts view these

9      departures.  In some districts, cooperation typically results

10     in a reduction in a sentence range by 40 or 50 percent.  In

11     this district, the typical 5K departure range is, in my

12     experience, two to five levels.  And I think the one thing that

13     needs to be done is to be consistent with prior decisions in

14     terms of what is an appropriate level of departure.

15             The guidelines suggest, case law suggests, and logic

16     suggests that I'm trying to evaluate the extent of the

17     cooperation to the Government.  And the Government's view of

18     that is entitled to, I think, considerable deference because

19     it's the Government that is the beneficiary of that assistance.

20     And its view of an appropriate departure is important.

21             I would also note that I've sentenced well over a

22     thousand people in my 22 years up here.  I don't think I've

23     ever seen a 10-level departure, much less given one.  That

24     doesn't mean it's inappropriate here.  But what it does mean is

25     that the Government's recommendation of a 10-level reduction is

1    quite generous in view of the history of 5K1.1 departures in

2    this district over the past two decades.

3            I also believe, as represented by the Government,

4    that the 10-level departure is based on a holistic view of

5    Mr. Greenberg's cooperation, not only for those indictments

6    that have been filed and for the guilty pleas and -- as well as

7    the ones that are to be filed.

8            One of the problems that I have, of course, is that

9    this proceeding has been going on for a considerable period of

10   time.  The Government has had a lot of time to -- it seems to

11   me, with the resources available to the Government, they've had

12   a lot of time to conclude some of these other investigations

13   and proceed with them, and they haven't.  Why they haven't, I

14   don't know.  I'm not privy to that, and I'm really not entitled

15   to that.  But it is concerning to me that notwithstanding a

16   long period of cooperation, we still have, admittedly,

17   extensive investigations still ongoing with no end in sight.

18           So my determination of an appropriate reduction is

19   based upon my view that the Government has taken into account

20   not only what has been filed of record but also these other

21   investigations, these other people, these other crimes that are

22   being investigated and which the Government concedes has been

23   helpful to them, apparently not helpful enough to charge these

24   people yet, but that remains to be seen.  And there is a

25   procedure -- Rule 35 -- for additional reduction in sentence

1    for cooperation after sentencing.

2           Mr. Scheller doesn't think that's an adequate remedy,

3    but it is, nevertheless, a remedy that's available that I have

4    granted in the past and will consider in the future.

5           Mr. Scheller, in his papers and at the conclusion of

6    his remarks, put forth a theory that I haven't seen before, and

7    a theory that I reject, and that is some sort of stacking

8    theory, that because I gave one of the other defendants four

9    levels, Mr. Greenberg should get four levels for that as well.

10   And that stacking theory has no precedent in my experience here

11   over the past 22 years.  I'm not aware of any case law that

12   supports that theory.  And it's inconsistent with the

13   Government's obligation to take a holistic view of the

14   cooperation, which it has done, because it would result in

15   double counting.

16           Take, for example, a five-person conspiracy with,

17   let's say, Mr. Greenberg at the top.  And, you know, say he

18   scores, you know, at a level 20, and he gets four levels for

19   the other four coconspirators, four or five levels, it would

20   mean that each of the coconspirators is sentenced and

21   Mr. Greenberg would -- even though being the head of the

22   conspiracy, would get no punishment whatsoever.  That just

23   doesn't make sense.  So I admire Mr. Scheller's ingenuity, but

24   the stacking theory simply doesn't work.

25           So I spent a lot of time thinking about this and

*United States District Court*
*Middle District of Florida*

1    reading these papers.  And in light of the history in this

2    district, as well as my understanding of the process and the

3    way it works, I believe the 10 levels is an adequate departure

4    for what we know about Mr. Greenberg's cooperation.  And I

5    would note that it is a significant, substantial departure

6    based on the history of departures in this district.  I don't

7    have any empirical evidence, but I'm fairly certain that 10

8    levels is at least in the top 1 percent of all the departures

9    that have been given.  And 10 levels, I think, takes into

10   account a significant, substantial, holistic view of

11   Mr. Greenberg's cooperation.

12          So I'll grant the Government's motion and depart 10

13   levels for those reasons.

14          The next thing that we need to do is look at the

15   scoring in the PSR and, hopefully, resolve any objections to

16   it.

17          So the presentence report is at Document 152.  It's

18   almost 100 pages long.  I've read it all.  The scoring begins

19   on page 43.  And because we have various crimes here, the

20   guidelines have a grouping formula.  And probation has grouped

21   these into five groups.  And the way the process works is that

22   the group containing the highest score becomes the baseline,

23   and then there's an adjustment for the additional crimes.  And

24   that's the way this is scored.  So I want to go through these

25   groups and then see where we end up and see if there are any

1    objections to them.

2            The first group, group one, contains scoring for

3    Counts 14 and 26.  And we have a base offense level of -- for

4    group one of seven, an additional 14 levels for the loss

5    amount, an additional two levels for sophisticated means, and

6    two levels for Mr. Greenberg's role in the offense, and three

7    levels for obstruction of justice, for an adjusted offense

8    level of 28.

9            So is there any objection to that scoring?

10           **MS. HARRINGTON:**  No objection, Your Honor, from the

11   Government.

12           **MR. SCHELLER:**  No objection, Your Honor.

13           **THE COURT:**  Okay.  Group two is the sex trafficking

14   of a minor, and that's Count 1 of the indictment.  And I think

15   the indictment here is the third-amended indictment.

16           We have a base of 30, plus two based on the use of a

17   computer, to wit, cell phones, another two levels based on the

18   commission of a sexual act, and another two levels for

19   obstruction of justice.  So we get a total offense level of 36.

20           Mr. Scheller had, I think, previously objected to the

21   computer enhancement.

22           Mr. Scheller, do you wish to be heard on that?

23           **MR. SCHELLER:**  Your Honor, I raised it in the context

24   of a variance argument.  It technically applies under the

25   guidelines.  I think it's an irrational enhancement.  I know

1    Judge Dalton often grants it as a variance, so -- in many of

2    his cases.  But it technically applies.  I raised it -- I'll

3    raise it under the 3553 factors tomorrow.

4         **THE COURT:**  Okay.  I assume that would be the

5    appropriate procedure.  I agree with you that it is --

6    technically, it is properly scored.  It's also something I can

7    take into account with my *Booker* discretion under the 3553(a)

8    factors tomorrow.  And the issue is that in today's world we

9    hardly do anything without a cell phone.  And Mr. Scheller's

10   argument is that that should not be an enhancement because of

11   that.  Does that basically state your position?

12        **MR. SCHELLER:**  That is correct.

13        **THE COURT:**  All right.  Thank you.

14        So I assume the Government has no objection to that

15   adjusted offense level?

16        **MS. HARRINGTON:**  That's correct, Your Honor, just to

17   the scoring we do not have any objection.

18        **THE COURT:**  And then group three is the aggravated

19   identity theft in Count 9 that requires, as Mr. Scheller noted,

20   a two-year consecutive sentence to the other counts.  I'm not

21   aware of any basis to object to that scoring other than the --

22   the discretionary aspect of it Mr. Scheller referred to in his

23   prior comments.  But I want to make sure there's no objection

24   to the group three, aggravated identity theft, Count 9, scoring

25   of 24 months consecutive to the other counts.

1          **MS. HARRINGTON:**  No objection, Your Honor.

2          **THE COURT:**  Mr. Scheller?

3          **MR. SCHELLER:**  No objection.

4          **THE COURT:**  And then group four is the stalking

5     count.  We have a base of 18.  And then there's a two-level

6     enhancement for the pattern of activity involved, and that

7     gives an adjusted offense level of 20.

8               Any objection to that scoring?

9          **MS. HARRINGTON:**  No objection, Your Honor.

10          **MR. SCHELLER:**  No, Your Honor.

11          **THE COURT:**  And then Count -- group five pertains to

12     Count 8, and this involves the device-making equipment,

13     driver's license.  And we have a base of six.  And there's a

14     two-level enhancement -- I'm sorry, a six-level enhancement for

15     the use of the badge-making machine, the card stock, and

16     computer to produce these fake -- this fake driver's license

17     for the person referred to as E.J.C.C. in the presentence

18     report.  And that gives an adjusted offense level of 12.

19               Any objection to that scoring, Ms. Harrington?

20          **MS. HARRINGTON:**  No objection, Your Honor.

21          **THE COURT:**  Mr. Scheller?

22          **MR. SCHELLER:**  No.

23          **THE COURT:**  Okay.  So then we come to the adjusted

24     offense level under the multiple-count adjustment.  And the way

25     that works is we use the group two score of 36, which is based

1        on the sex trafficking count.  And for all of these other

2        offenses, we add one level.  And that brings it up to a 37.

3        And there's a chapter 4 enhancement of five levels, which

4        brings us to 42.  And subtracting three for acceptance of

5        responsibility, we end up with an offense level of 39.  And

6        Mr. Greenberg scores a criminal history category I.  And the

7        guideline -- the suggested imprisonment range under the

8        guideline for that is 262 to 327 months.  But I have granted

9        the Government's 5K motion for 10 levels.  So that would bring

10       it down to a 29-I, which is 87 to 108 months.  But we have to

11       add the 24 months on Count 9, which would produce a high end of

12       132 months.

13              So is there any objection to that grouping

14       consequence?

15              **MS. HARRINGTON:**  No objection, Your Honor.

16              **THE COURT:**  Mr. Scheller?

17              **MR. SCHELLER:**  Not as to the consequence.

18              May it please the Court?  I didn't understand your

19       last comment, the high end 132 months?  You add the 24 months?

20              **THE COURT:**  You can add it to both and get a range,

21       if you want.

22              **MR. SCHELLER:**  You could.

23              **THE COURT:**  It's 111 to 132.  I wasn't making a

24       decision.  I just looked at the high end.

25              **MR. SCHELLER:**  Slight fear at that point.

1          **THE COURT:**  You're correct.  That's the range.

2          **MR. SCHELLER:**  Thank you.

3          **THE COURT:**  Well, the parties have no objection to

4     that scoring.  But I have to tell you, I have a concern.

5     The -- the grouping in chapter 3D is intended to prevent an

6     excessive punishment by way of the Government's stacking of

7     related offenses.

8          For those of you in the audience, these are the

9     sentencing guidelines.  It's like a mid-size city's phone book.

10         And we're dealing here with chapter 3, part D,

11    multiple counts.  And it's clear from the introductory

12    commentary, as well as the guidelines I'll discuss, that this

13    grouping is intended to deal with substantially identical

14    offense conduct.  And it's done, as I indicated, in order to

15    prevent the Government from stacking related crimes in order to

16    arrive at an excessive sentence.  But here, we don't have any

17    related crimes.

18         If you look at 3D1.2, the very heading is:  "Groups

19    of Closely Related Counts."  And then 3D1.4 gives us the

20    formula for dealing with closely related counts.  And the

21    commentary at the end of 3D1.4 recognizes that this formula may

22    not work in certain cases.  They use the word "unusual

23    circumstances."  I think there's also in here, "exceptional

24    case."  This is, quite clearly, an exceptional case.

25         And the guideline says:  "An alternative method for

1    ensuring more precise adjustment could be done but was not

2    pursued because it was too complicated."

3         So I don't think the group scoring works here

4    because, in essence, the score would punish Mr. Greenberg for

5    the sex offense for which he's received considerable 5K1

6    departure, and only one level -- one level is scored for the

7    economic crimes, for the fake driver's license, for the

8    stalking, and that just doesn't work.

9         So what do we do about that?  Well, fortunately,

10   since *Booker* and its progeny, I have, I think, considerable

11   discretion to try to deal with this anomaly as part of my

12   3553(a) consideration tomorrow.  I bring this up because I

13   think the lawyers need to be aware of how I'm thinking about

14   this.  Because when I impose a sentence, I use the guidelines

15   as a benchmark and consider the 3553 factors in light of that

16   benchmark.  But here, this benchmark is somewhat questionable

17   for that reason.

18        There's another way I can deal with this, and that's

19   under 5K2.0(a)(3), which recognizes there may be situations

20   where a departure is necessary because of a consideration that

21   is not accounted for in the guidelines.  And to my knowledge,

22   the guidelines do not have a precise basis to deal with

23   grouping unrelated crimes.  If there's some case law on

24   guidelines that do that, I would like to know about that by the

25   end of today.

1               So we have a situation where the parties are all in

2      agreement with something that I don't agree with.  And, like I

3      said, I think I have discretion to deal with it as long as I've

4      disclosed what my concern is.  And the lawyers can deal with it

5      as they deem fit tomorrow.  But I have serious concern about

6      the efficacy of the multiple-count adjustment in paragraph 216

7      of the presentence report.

8               I don't know if counsel wants to weigh in on that now

9      or what, but I'll give them the opportunity.

10              **MR. SCHELLER:**  May I have a moment, Your Honor, to

11     speak to counsel?

12              **THE COURT:**  Sure.

13              I tell you what.  Excuse me a second.  Can we just go

14     ahead and take a 15-minute break?

15              **MR. SCHELLER:**  Yes.  Thank you, sir.

16              **THE COURT:**  All right.  We'll be in recess for 15

17     minutes.

18         (Recess from 10:14 a.m. to 10:27 a.m.)

19         (Court called to order.)

20              **THE COURT:**  All right.  Be seated, please.

21              Okay.  Do you have any thoughts you wish to share?

22     Ms. Harrington?

23              **MS. HARRINGTON:**  Yes, Your Honor, just briefly.

24              We will certainly -- we understand Your Honor's point

25     with regard to the concerns over the count adjustment, and we

1          will certainly do case law research tonight to determine if

2          there is any case law supporting or discussing a departure as a

3          result of concerns over the grouping and the count adjustments.

4                   Other than that, Your Honor, we do believe, according

5          to the guideline and the formulation of the guideline, it is

6          scored accurately.  But we certainly understand the Court's

7          position, and we will do the research tonight to determine if

8          we can find any case law bearing a similar point.

9                   **THE COURT:**  Well, I -- you know, I don't know -- I

10         don't know if there is any case law.  But if you can find some,

11         that would be nice.  But, I guess, the only issue is whether my

12         concern changes either party's view of what I should do.

13         That's what's involved.  I mean, if you're comfortable with me

14         using the 29-I as the benchmark, okay.

15                  **MS. HARRINGTON:**  Your Honor, may I have a moment?

16                  **THE COURT:**  Sure.

17                  **MS. HARRINGTON:**  Thank you.

18                  **THE COURT:**  I'm not saying that I won't -- you know,

19         I'm not bound by any of this.  But I just need to know what the

20         parties' positions are.  And tonight is not going to help

21         because I spent a lot of time on this, and I need to know now

22         what your position is.

23                  **MS. HARRINGTON:**  Yes, Your Honor.

24              (Court was at ease.)

25                  **THE COURT:**  And consult with Mr. Scheller, if it's

1    helpful.

2              **MR. SCHELLER:**  Yes.  I was kept out of that little

3    mob.

4              **THE COURT:**  Well, let's be charitable.  It's a small

5    group.

6              **MR. SCHELLER:**  It's an intimidating group

7    nonetheless.

8         (Court was at ease.)

9              **MR. SCHELLER:**  Your Honor, just to clarify -- and I

10   guess I'm always plagued by the human condition of hope.  When

11   you were discussing this issue, was it -- was my reading

12   correct that you were thinking that the guidelines -- putting

13   aside the high guideline concerning the sex offense, that the

14   resulting 29-I was too low of a guideline and a departure

15   upward may be warranted?

16             **THE COURT:**  That would be the logical conclusion of

17   my comment, yes.  It doesn't mean I would necessarily do that.

18             **MR. SCHELLER:**  Right.

19        So with that in mind -- with that in mind, I think

20   29-I is entirely appropriate.  I think the Government agrees

21   with me.

22             **THE COURT:**  Okay.

23             **MR. SCHELLER:**  I'm sorry.  I shouldn't speak for

24   Ms. Harrington.

25             **MS. HARRINGTON:**  Your Honor, based on the plea

1    agreement and our belief that the guidelines are accurately

2    scored and the 29 is where the guidelines come out to, we would

3    not be moving or seeking a departure based on the adjustment.

4         **THE COURT:**  Okay.  Well, I thought it was -- I mean,

5    I didn't have to raise this today, but I thought it was

6    appropriate for me to, you know, put the cards on the table and

7    let you know a concern I had about this.

8         I haven't asked probation, but do you all have a

9    disagreement with me?

10        **PROBATION:**  (Shake heads.)

11        **THE COURT:**  Okay.

12        **MR. SCHELLER:**  If I may say, Your Honor, though, just

13   to address your concerns -- and I know we've -- if you look at

14   it, though, another way, that sex offense, as I argued in my

15   memo, really drives up the guidelines with the enhancements and

16   in probably one of the counts that's most defensible for him in

17   terms of the culpability of his conduct.  And so if all those

18   enhancements didn't apply, if that -- you know, all of the

19   seven levels weren't added, you would be getting a lot more --

20   the other counts would have been taken into account.  It's just

21   that the sex offense drives it so high.

22        **THE COURT:**  I think that's a very important

23   observation, and that would be what I would consider, among

24   other things, tomorrow when I look at this thing in the context

25   of 3553(a) factors.

1          **MR. SCHELLER:**  Thank you, Your Honor.

2          **THE COURT:**  All right.  Are there any other scoring

3     issues, motions, objections, complaints, observations that you

4     need to give me today?

5          **MR. SCHELLER:**  Your Honor, we thought this would be a

6     good time to address the restitution issue.  And I know

7     restitution will be part of the judgment.  But Ms. Harrington

8     and I have worked on that.  We wanted to give you the numbers

9     that will be on the restitution and the judgment tomorrow

10    because it's changed significantly from the presentence report.

11         **THE COURT:**  Yeah.  I've got a restitution order

12    already prepared, but it's probably not accurate.  So ...

13         **MR. SCHELLER:**  If you don't ...

14         So the restitution will be 433,700 to the Small

15    Business Administration.

16         **THE COURT:**  43370 --

17         **MR. SCHELLER:**  I'm sorry.  I'm sorry.  That's why I

18    asked Ms. Harrington to stand up here with me.

19         **THE COURT:**  Let her do it then.

20         **MR. SCHELLER:**  Yeah.  Thank you.

21         **MS. HARRINGTON:**  Your Honor, yes, it would be

22    $434,700 to the Small Business Administration.

23         And because of payments already made by Mr. Greenberg

24    to Seminole County, I believe the remaining restitution to

25    Seminole County is $109,716.12.  And that's presently in the

1    clerk's office.

2              **MR. SCHELLER:**  Yes.  That was --

3              **THE COURT:**  That's been paid, though, right?

4              **MR. SCHELLER:**  It's sitting in the clerk's office

5    pending the restitution order, the final judgment.  It will be

6    disbursed to Seminole County.  That was proceeds from the sale

7    of Mr. Greenberg's home.  It was turned over.

8              **THE COURT:**  And it was agreed between the parties

9    that that would satisfy any restitution obligation he has to

10   Seminole County?

11             **MR. SCHELLER:**  Yes.

12             **THE COURT:**  And that that money is in the registry of

13   the court?

14             **MR. SCHELLER:**  Yes.  Your Honor had signed an order

15   allowing presentencing deposit of restitution money.

16             **THE COURT:**  Okay.

17             **MS. HARRINGTON:**  And that is because there's been an

18   additional payment -- and I'll let you speak to the number of

19   that -- to Seminole County that has been made prior to this

20   hearing.

21             **THE COURT:**  Can you put all that together in one

22   order for me to review tomorrow and sign?

23             **MR. SCHELLER:**  Yes.

24             **THE COURT:**  Okay.

25             **MR. SCHELLER:**  Yes.  Yes.

1            THE COURT:  So then I don't have to do it.

2            MR. SCHELLER:  Yes.

3            MS. HARRINGTON:  Yes, Your Honor.

4            THE COURT:  Okay.  Thank you.

5            MR. SCHELLER:  Thank you.

6            THE COURT:  Mr. Handberg.

7            MR. HANDBERG:  Yes, sir.

8            THE COURT:  Good morning.

9            MR. HANDBERG:  Good morning.

10            THE COURT:  Do you have anything you'd like to add to

11      this proceeding?

12            MR. HANDBERG:  I do not, Your Honor.

13            THE COURT:  I like brevity.

14            MR. HANDBERG:  I try sometimes.  It's not a trait I

15      often have, but I try.

16            THE COURT:  It's not a trait any lawyer has often.

17            MR. HANDBERG:  Thank you, sir.

18            THE COURT:  Mr. Scheller, anything else from you?

19            MR. SCHELLER:  No, sir.

20            THE COURT:  All right.  We'll reconvene tomorrow at

21      9:30.

22         (Proceedings adjourned at 10:35 a.m.)

23

24

25

1                          **C E R T I F I C A T E**

2

3                I certify that the foregoing is a correct transcript

4        from the record of proceedings in the above-entitled matter.

5

6        November 30, 2022

7            s\  Nikki L. Peters
         _____
         Nikki L. Peters, RMR, CRR, CRC
8        Federal Official Court Reporter
         United States District Court
9        Middle District of Florida

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*Middle District of Florida*